Steven H. Sackmann, #00618
Sackmann Law Office
PO Box 409 - 455 E. Hemlock, #A
Othello, Washington 99344
(509) 488-5636 - phone
(509) 488-6126 - FAX

Toni Meacham, #35068
Attorney at Law
1420 Scooteney Rd
Connell, WA 99326
(509)488-3289

Attorneys Mensonides Dairy, LLC

Roger W. Bailey
Bailey & Busey PLLC
411 North 2nd Street
Yakima, Washington 98901
(509) 248-4282 - phone
(509) 575-5661 - fax

# UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE EASTERN DISTRICT OF WASHINGTON UNITED STATES

| In Re: | Ch 11 |
|---|---|
| **Art and Trijntje a/k/a Theresa Mensonides, husband and wife,** | Case No.: 18-01683-FLK11 |
| **and** | Case No: 18-01681-FLK11 |
| **MENSONIDES DAIRY, LLC** | **DISCLOSURE STATEMENT** |
| **Debtor.** | |

DISCLOSURE STATEMENT  -1

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Art and Trijntje a/k/a Theresa Mensonides, husband and wife,

and

MENSONIDES DAIRY, LLC

## I. INTRODUCTION & PLAN SUMMARY

This disclosure statement (the "Disclosure Statement") is filed in the chapter 11 cases of Mensonides Dairy, LLC ("Dairy") and Art and Trijntje a/k/a Theresa Mensonides ("Mensonides") (collectively the "Debtors"). This Disclosure Statement contains information about the Debtors and describes the Debtors' proposed Plan of Reorganization (the "Plan"). A full copy of the Plan is attached to this Disclosure Statement as Exhibit "1." Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

### A. Purpose of This Document

This Disclosure Statement describes:

- The Debtors and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan

DISCLOSURE STATEMENT  -2

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

11 U.S.C. §1125(b) PROHIBITS SOLICITATION OF AN ACCEPTANCE OR REJECTION OF A PLAN OF REORGANIZATION UNLESS A COPY OF THE PLAN OF REORGANIZATION OR A SUMMARY THEREOF IS ACCOMPANIED OR PRECEDED BY A COPY OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. A COPY OF THE PROPOSED PLAN OF REORGANIZATION IS ATTACHED AS EXHIBIT "1."

THIS DISCLOSURE STATEMENT HAS BEEN APPROVED AS CONTAINING ADEQUATE INFORMATION BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT ENTERED ON _____, AND ITS DISTRIBUTION TO THE HOLDERS OF CLAIMS AND EQUITY SECURITY INTERESTS IS AUTHORIZED BY THAT ORDER. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT, HOWEVER, DOES NOT CONSTITUTE A RECOMMENDATION OR ENDORSEMENT OF THE PLAN OF REORGANIZATION BY THE BANKRUPTCY COURT.

IN ORDER TO BE COUNTED FOR PURPOSES OF SATISFYING THE BANKRUPTCY CODE REQUIREMENTS YOUR BALLOT OF ACCEPTANCE OR REJECTION MUST BE RECEIVED AT THE ADDRESS INDICATED ON THE BALLOT NO LATER THAN 5:00 P.M. ON THE DAY OF _____ _____.

DISCLOSURE STATEMENT -3

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

PLEASE TAKE NOTE THAT THIS DISCLOSURE STATEMENT IS A COMBINED DISCLOSURE STATEMENT FOR MENSONIDES DAIRY, LLC AND ART AND TRIJNTJE A/K/A THERESA MENSONIDES. THIS IDENTICAL DISCLOSURE STATEMENT WITH ALL EXHIBITS IS BEING FILED IN THE BANKRUPTCY CASE OF EACH DEBTOR.

### B.    Summary of Plan.

The Debtors' Plan involves merging Dairy & Mensonides, which will operate as the Debtor under the Plan.  The Debtors' Plan establishes FOURTEEN (14) classes of creditors and equity security holders, which are as follows:

Class 1:            Administrative Claims – Professionals

Class 2:            Administrative Claims - Other

Class 3:            Claims of the Internal Revenue Service

Class 4:            Secured Claims of Northwest Farm Credit Services,

FLCA and Northwest Farm Credit Services, PCA  (collectively **"Farm Credit')**

Class 5:            Secured Claims of Ag Country Farm Credit Services

Class 6:            Secured Claims of AgCo Finance LLC

Class 7:            Secured Claims of Balboa Capital

Class 8:            Secured Claims of Deere

Class 9:            Claims of  Northland Capital Financial Services

Class 10:           Unsecured Claims

DISCLOSURE STATEMENT  -4

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| Class 11: | Secured Claims of Wells Fargo Home Mortgage |
| Class 12: | Unsecured Claims – Administrative Convenience |
| Class 13: | Claims Between Individual Debtors and the Dairy |
| Class 14: | Equity Security Holders |

The Plan proposes to pay all creditors in classes 1-13 in full, with interest, over time. The source of payments to creditors will be through the Debtors' continued business operations, changes in operations for immediate funding, the sale of property, and settling/obtaining a judgment in a lawsuit. The first twenty-four months of these operations is outlined in the Budget and Budget Assumptions, which are attached as Exhibits "2-3" hereto. These Budget projections show that the Debtors will be able to generate sufficient cash to fund its continuing operations as well as make payments to creditors as described below.

The Debtors believe that the payment of creditors under the terms of the Plan will generate more recovery for creditors than if the Debtors' cases were converted to chapter 7 and the Debtors liquidated their assets. The Debtors'

DISCLOSURE STATEMENT -5

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

liquidation analysis, which they believe supports this statement, is summarized in Exhibit "4" attached hereto.

## II.    DEBTORS' OPERATIONS, ASSETS & CLAIMS

### A.    Description and History of the Debtors' Business

1.    Art and Theresa Mensonides built their dairy at its current location in Mabton and started operation in 2002.  They initially milked approximately 4,300 cows three times per day.  In 2008, the Dairy switched to milking approximately 5,300 cows twice per day.  Mensonides live on-site, with their residence located within viewing distance of the barns. Mensonides also put the main office along with a scale to weigh commodities and cattle at the entrance of the Dairy. Feed is brought into the Dairy, stored, mixed, and fed within the confines of the Dairy operation. The Dairy has a top of the line milking parlor, with low stress handling facilities, and vet barn. To keep the Dairy as clean as possible, Mensonides have a manure management system that includes a separator, centrifuge and holding ponds, making this Dairy state of the art in manure management. The liquids are used on crops, and the solids are turned into bedding for the cows, and compost to

DISCLOSURE STATEMENT  -6

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

be sold on a commercial level, adding another category to the value added businesses that stem from this Dairy.

2.     Art Mensonides manages the Dairy. Art and his wife, Trijntje Mensonides, are the sole members of the LLC, and both are active in dairy management. The Dairy employs approximately 70 full-time employees. Mensonides have three daughters who are involved in the management and operation of the Dairy. Amy Mensonides works in the office. Joreen Mensonides works in HR. Kristyn Mensonides is a herdsman. The Mensonides also have one son-in-law working at the Dairy.  Auke Bruinsma has a separate farming entity which provides silage to the Dairy, and also acts as the farm manager for the Dairy itself. The farming operating consists of approximately 700 acres, raising feed for the Dairy, along with an additional 17 acres of vineyard. The vineyard is leased out to Auke Bruinsma on an annual basis for $500.00 per acre.

3.     The Dairy has a number of free stall barns and open lot pens where the cows are housed.  Each free stall barn has approximately 1,000 cows in it, consisting of pens of 500 cows on each side.  Each cow has a stall where it may lie down.  Every pen has a feed bunk in which the total mixed rations (TMRs) fed to

DISCLOSURE STATEMENT  -7

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

the cows are delivered by a feed truck. The cows are milked twice per day in a central parlor. The parlor is a double 50 which handles 100 cows at a time. It operates 22 hours per day. It is shut down for two hours each day for cleaning. In addition, the Dairy also has its own feedlot at a separate location to raise and breed the dairy heifers that will be transitioned into the milking herd. This allows the Dairy to be self-sufficient in its cattle raising practices, ensuring that both genetic quality and maximized heifer maturity is not left in the hands of third parties. The Dairy grows a portion of its own feed, inclusive of hay, triticale, and corn. The fields are usually double cropped. Corn, for silage, is harvested each year in August to early October. The Dairy has its own wells to irrigate, meaning it is not constricted by the use of Bureau water, maximizing crop rotation and growing season. The 17 acre vineyard helps to add diversity to the crops grown at this location. The Dairy is considered to be one of the cleanest and most well-run dairies in the Yakima Valley.

4.      Mensonides began having financial difficulties in 2015, after Agri-King's product "Silo-King" was added to approximately 52,000 ton of silage which was not palatable to the cattle. The cows did not like the strong vinegar

DISCLOSURE STATEMENT  -8

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

smell and taste and ate less feed than normal. As a result, milk production declined. In addition, the overall health of the dairy herd declined with a reduction in production of milk. The loss of production together with depressed milk prices which have continued to the present time rendered Mensonides unable to comply with Farm Credit's loan requirements and Farm Credit's insistence that they submit to a state court receivership. To avoid losing management control of the Dairy, Mensonides was forced to file this Chapter 11 proceeding.

5.     Mensonides are currently in a lawsuit, as plaintiffs, against defendant, Agri-King, over its product Silo-King, which Mensonides allege caused the silage issues, leading to the decline in the Dairy. Mensonides successfully defended two summary judgment proceedings and the case is set for trial on May 20, 2019. Mensonides have spent $334,967.76 to prepare this case and Mensonides seeks to recover damages of approximately $6,000,000.00 in this lawsuit. The Bankruptcy schedules included the lawsuit as an asset of the Bankruptcy Estate. The Dairy was also sued in Yakima County in a class action alleging that the Dairy failed to compensate employees for rest breaks, meal breaks, and pre, and post-shift work.

DISCLOSURE STATEMENT  -9

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Said lawsuit is covered under an insurance policy which has provided counsel to represent the Dairy in this matter.

6.     Northwest Farm Credit Services, FLCA and Northwest Farm Credit Services, PCA  (collectively "Farm Credit') are the two primary secured lenders to the Debtors. The relationship between Debtors and Farm Credit began on or about November 13, 2014. The Debtors' obligations to Farm Credit consist of loan agreements, security agreements, and mortgages on real property. The combined sum of the obligations owed to Farm Credit are approximately $28,985,541.32 as of the date of the filing. The Debtors' obligations to Farm Credit are documented by one or more loan agreements, security agreements, mortgages on real property and other loan documents. The claim is based upon: (a) a loan to obtain well drilling equipment  in the original principal amount of $840,000; (b) a line of credit for feed in the principal amount of $4,243,701.13;  (c) a  line of credit for the cows in the principal amount of $8,660,514.41; (d) a refinance of existing debt in the original principal amount of $13,420,000.00; and (e) a forbearance note in the original principal amount of $3,000,000.00.

DISCLOSURE STATEMENT  -10

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

7. Farm Credit's loans are cross collateralized and secured by substantially all of the assets of the Debtors, including cattle, milk checks, crops, farm products, inventory, accounts, receivable, equipment, and real property. Farm Credit's collateral includes assets of non-Debtor affiliated companies, such as A & T Drilling, LLC, solely owned by Art and Trijntje Mensonides. A & T Well Drilling, LLC was an entity started to allow Mensonides to drill wells at the Dairy to allow for beneficial use of all water rights at this location. A cost analysis was done which supported buying drilling equipment to allow for drilling to be done by Mensonides themselves. Once the well currently being drilled is complete, with an estimate of February 2019, the Plan proposes selling the well drilling equipment.

8. As of June 1, 2018, Debtors were alleged to be in default on the Farm Credit loans. Farm Credit called all of Debtors' obligations as due and payable, and made demand upon the Debtors to turn over all collateral securing Farm Credit's loans to Debtors, and further requested that Debtors allow a receiver to come in and operate the Dairy.

9. In addition to the secured obligations of Farm Credit, the Debtors have a variety of trade debts. The total of these debts is approximately $6,100,000.00.

DISCLOSURE STATEMENT -11

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

The largest part of this trade debt is made up of obligations owed by the Dairy for feed to keep the cattle in good shape and milking to their highest potential. Pre-bankruptcy filing, the Dairy was able to stay current on all Farm Credit payments, but at the expense of the trade vendors, who continued to supply feed and services to allow this Dairy to continue operations. The current budget allows for feed and services to be paid on a monthly basis, keeping these vendors current on post-bankruptcy obligations.

Mensonides also has a debt of $1,750,000.00 to FC Stone by reason of the Dairy's failure to make a margin call in relation to hedging. The Dairy has used hedging as a tool for many years to protect itself against extremes in the market. In June, 2018, while in the midst of these issues with Farm Credit, the milk price took a bump up resulting in the margin call from FC Stone. Directly following said bump, the tariff issues caused a sharp decline in milk prices, which the Dairy was not able to protect against because of the FC Stone margin call.

10. The Dairy real estate has been appraised by Farm Credit, with the appraisal values being used in the Bankruptcy schedules to determine a true and correct value of the Dairy operation. Said value of the Dairy puts the entire Dairy

DISCLOSURE STATEMENT -12

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

operation (inclusive of additional commercial property) at a value of approximately $53,000,000.00. In addition, Mensonides have a vacation home in Leavenworth that is planned to be marketed, with the funds used in these proceedings, as well as commercial property located in Yakima County that has been for sale. Mensonides also has well drilling equipment, which is cross-collateralized to FCS, which will be sold and funds applied per the Ch. 11 Plan. Mensonides are trying to free up capital by selling non-essential assets to pay down debt and allow for operating funds.

Mensonides Dairy LLC valuation based on Ch 11 Schedules:

| Property | Scheduled Value |
|---|---|
| 305 S Fisher Rd- Dairy Operation | $23,800,000.00 |
| Feedlot for heifers | $2,660,000.00 |
| All heifers under 15 months | $992,100.00 |
| Crops- feed for Dairy (harvested so not shown in Feed Inventory) | $-0- |
| Equipment based on a modified appraisal done between KeyBank and Art Mensonides | $4,735,904.80 |

Steven H. Sackmann
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| | |
|---|---|
| Milking cows and far off dry cows | $6,146,000.00 |
| Springers/Closeups, and heifers 15+ months of age | $2,874,000.00 |
| Feed Inventory on site | $2,328,554.00 |
| Feed Supplements | $50,000.00 |
| Compost Inventory | $100,000.00 |
| Darigold Contract | $-0- |
| Leavenworth Property | $1,250,000.00 |
| Commercial Property | $1,997,500.00 |
| Agri-King Lawsuit | $6,000,000.00 |
| Well Drilling Equipment | $640,000.00 |
| Investments from Co-ops (including Darigold) | $4,970,000.00 |
| GRAND TOTAL | $58,544,058.80 |

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

11.    Mensonides has considerable equity in this Dairy after all debts are paid in full. It is in the best interest of Mensonides and the Bankruptcy estate, to get top dollar for this Dairy, if it is ever sold (which is not part of the plan). Mensonides have also listed their commercial property located in Yakima County for sale, and had a viable offer for a partial sale.  Farm Credit objected to that sale. The potential buyer then withdrew their offer, which was a considerably higher per acre price than the appraisal completed by Farm Credit appraisers. Mensonides have now determined that the best way to resolve the commercial property sale is to proceed with a  deed in lieu of foreclosure ("DIL") granting the Debtor's Commercial Property to Farm Credit.  In exchange for the DIL the Debtor's shall receive a credit against the balance due under the Operating Loan in the amount of $2,380,000.00 (this represents $42,500/acre for 56 acres), per the terms of the Ch. 11 Plan.

Mensonides has researched potential listing agents and concluded that a National firm would give the best exposure and opportunity to allow this Dairy to be sold, if a sale needs to take place.  Preparation of a marketing plan is a back-up plan to protect against the potential for a further decline in the milk price for an

DISCLOSURE STATEMENT  -15

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

extended period of time. In the event the Dairy would need to be sold, and the Plan proposed is not feasible, getting a marketing plan into place offers protection to Mensonides as well as the creditors.

12.     After considering various options and firms, Debtors have retained and the Court has authorized AgriBusiness Trading Group to research and prepare a marketing plan.  While the Debtors' Plan is a reorganizational plan which relies on the Debtors' future operations to repay creditors, the Debtors believe it was prudent to retain AgriBusiness Trading Group so that they will be in a position to immediately market the dairy, should the need arise. The Plan allows the unsecured creditors to be paid in full over time without the sale of the Dairy.

13.     Debtors filed for Chapter 11 Bankruptcy relief on June 14, 2018. The cases were consolidated for ease of administration.

**B.     The Bankruptcy Cases.**

14.     Immediately upon filing for bankruptcy protection the Debtors filed a motion to use cash collateral to allow the Debtors to protect, preserve, operate their dairy as a going concern.  The Court entered an emergency order approving the use of cash collateral on June 19, 2018, a 2nd interim order approving the use of cash

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

collateral on September 14, 2018 ("Final Cash Collateral Order").  The Final Cash Collateral Order authorized the Debtors, subject to certain restrictions, to: (a) operate the dairy; (b) operate the heifer feedlot; (c) sell day old calves and continue culling; (d) grow and harvest crops for cattle feed; and (e) market the dairy operation.

15.    Up to the time of filing of the bankruptcy, the milk price had been lower than anticipated by those in the dairy industry.  Debtors are hopeful that they will receive an increase in milk price.  Milk Pricing Assumptions as used in the Budget for the plan are based upon current Darigold forecast (as of November 2018) with adjustments for the Dairy components. Darigold has posted price projections through the balance of 2018 and 2019. Price projections for 2020 are based on a five year historical average of Darigold pricing. Component pricing was based on the Dairy's actual historical components. This is the most accurate information available to forecast for Darigold clients. The Debtors' assumptions will be detailed and included on the Budgets which are attached hereto as Exhibit "2" and Exhibit "3."

DISCLOSURE STATEMENT  -17

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

16. Mensonides has operated and continues to operate the Dairy with the help of highly qualified experts. As of the date of this Disclosure Statement, the Dairy has operated within the Cash Collateral budget. The Dairy has brought together a highly qualified team of people which allows them to operate at top level.

> A) Dr. Scott Abbott is an expert on herd health and helps manage the cattle inventory and determine genetic selection criteria. Dr. Abbott visits the dairy and is the dairy's vet. Dr. Abbott has vast experience in the dairy industry.

> B) Dr. Tim Bodine, Ph.D. is a livestock nutritionist who works on the ration at the Dairy. Dr. Bodine is a partner in Northwest Research and Nutrition, LLC, and he monitors and makes feed recommendations based on the overall herd condition, nutritional requirements, milking ability, and ingredient availability.

> C) Stacey Odette is the Reproductive team leader at ABA Global, Inc. Ms. Odette advises on cattle breeding, conception rates, milking quantity, calf prices, and herd quality.

> D) Stuart Turner is the owner of Turner & Company, Inc. and is a State Certified Agronomist. Mr. Turner advises on growing crops on the dairy and crop values. Mr. Turner has knowledge on the timeline for harvesting the crops as well as any needed inputs for the growing

DISCLOSURE STATEMENT -18

Steven H. Sackmann
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

crops. Mr. Turner also advises the Dairy on environmental concerns and monitors water quality.

E)     Marnie Bodine is a partner in Bodine Consulting Services LLC, a company specializing in family business advising and family wealth advising for agriculture clients. Ms. Bodine advises on financial matters, helps with reporting,  as well as banking issues.

F)     Brian Newhouse is a partner in Alegria and Company, and is a CPA. Mr. Newhouse advises the Dairy on tax and accounting issues relating to the Dairy and works to compile the financial information needed to run the Dairy.

With the help of these experts, Debtors have operated the dairy within the projected budget through the course of the bankruptcy.  Notwithstanding the lower than expected prices, Debtors have been able to pay their costs and comply with the terms of the cash collateral orders entered by the Court.

17.     Pursuant to the Final Cash Collateral Order as well as the original loan documents, the Debtors have been required to provide certain financial reporting to Farm Credit, including balance sheets, income statements and budget vs. actual comparisons for each month of operations during the period covered by the Final Cash Collateral Order.   The Debtors have also filed monthly operating statements required by the Bankruptcy Code for the months of July 2018 – November, 2018.

DISCLOSURE STATEMENT  -19

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Copies of these monthly operating statements can be obtained from the Bankruptcy Court's website at http://www.waeb.uscourts.gov.

18. Mensonides have employed Bailey & Busey, PLLC as legal counsel. Dairy has employed Steven H. Sackmann and Toni Meacham as legal counsel.

19. The Debtors have obtained court approval to pay certain insiders compensation as a result of their work for the Debtors.

20. Mensonides have employed AgriBusiness Trading Group and Dairy has agreed to assume the executory contract with Calaway Company for feed purchase of $2,360,000.

### C. Assets & Liabilities of the Debtors.

21. The Debtors assets and liabilities are set forth in Debtors' bankruptcy schedules. Real property was appraised by Farm Credit and that appraisal was used to value the Dairy property and the Feedlot. The Commercial property located in Yakima County was listed for sale and had a viable offer to purchase 9.95 acres of the total parcel at a price of $42,500 per acre. The Debtors sought approval of the offer but an objection was filed by Farm Credit. The offer was then withdrawn. The offer amount has been used to value the Commercial property. Personal property

DISCLOSURE STATEMENT -20

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

(equipment, etc.) was appraised by KeyBank, Art Mensonides reviewed that appraisal and updated it, which is how the equipment was valued for the Bankruptcy schedules. Mensonides have a vacation home in Leavenworth, WA which was valued by the real estate agent to obtain a listing price. Feed inventory is a commodity which fluctuates due to being fed to the cattle. The cattle herd value also fluctuates with the market, however, John Top, owner of Toppenish Livestock valued the cattle herd based on his experience and knowledge, with said value being used in the Bankruptcy schedules. The chart with the assets is above in Article II(A)(10).

Current and long term liabilities have been compiled on a monthly basis in a compilation report which is filed with the Monthly Reporting Requirements in the Chapter 11 Bankruptcy. Said current and long term liabilities as of September 30, 2018 are summarized as follows:

DISCLOSURE STATEMENT  -21

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

|  | September 30, 2018 |
|---|---|
| Liabilities and Equity | |
| **Current liabilities** | |
| Accounts payable, post-petition | $272,965 |
| Payroll liabilities | 66,508 |
| Accrued expenses, post-petition | 311,929 |
| Accrued interest payable, post-petition | 556,167 |
| Total current liabilities | 1,207,569 |
| **Long-term liabilities** | |
| Real estate loans, net of unamortized debt issuance costs, pre-petition | 14,531,439 |
| Equipment and hedging loans, pre-petition | 2,117,753 |
| Line of credit - feed, pre-petition | 4,223,948 |
| Line of credit - cow, pre-petition | 8,591,831 |
| Pre-petition payables | 4,728,764 |
| Total long-term liabilities | 34,193,735 |
| Total liabilities | 35,401,304 |

22.    A few additional points are important to note with respect to the assets and liabilities of the Debtors are as follows:

22.1   The Debtors' 2018 crops are valued at replacement value/feed value as said crops are used in the operation of the dairy.

22.2   The scheduled value of the Commercial Property is based upon a Farm Credit Appraisal with a $1.5 million market value, or $27,000 per acre. The Debtors received and accepted an offer of $42,500 per acre for 9.95 acres, all cash

DISCLOSURE STATEMENT  -22

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

at closing. The sale would have increased the comparable sales price by $15,500.00 per acre for the remaining acres. After Farm Credit objected to the sale, the offer was rescinded. The Debtors believe that the true fair market value of the commercial property is between $40,000-$45,000/acre.

### D. Means of Implementing the Plan

23. The Debtors' Plan proposes a joint and combined plan of reorganization. On the Effective Date of the Plan (the "Effective Date") each of the Debtors shall assume responsibility for all of the payments called for by the Plan. The Debtors are sometimes referred to herein as the "Debtors" to reflect their joint actions after confirmation of the Plan.

23.1 The payments contemplated by the Plan will be funded through the operations and cash assets of the Debtors. The Debtors will assume and conduct all of the Debtors' dairy operations, farming, and sales operations from and after the Effective Date. The Debtors believe that cash flow generated from the combined operations of the Debtors will be sufficient to fund all of the Plan Obligations, after making operational changes described herein. The Debtors will make the following operational changes to allow the plan to fund:

DISCLOSURE STATEMENT -23

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

A) Mensonides Dairy (Dairy) will have an overall herd reduction to an average of 4,800 head of cattle milking twice daily, after which the Dairy will sell and replace livestock in the ordinary course of business, maintaining a milking herd of approximately 4800;

B) The reduction of the milking herd will allow Mensonides to sell lower producing milk cows and increase milk production from approximately 72 lbs. per cow per day to approximately 78 lbs. per cow per day. This production number is based on a nine-year running average of Mensonides Dairy monthly production for the higher producing cows;

C) The reduction of the milking herd will allow for a decrease in overall feed costs, dairy supplies and services, milk barn costs, and payroll reduced pro-rata with herd size;

D) Payroll will be reduced by approximately 7% due to the operational shift of milking two 10 hour shifts rather than three 8 hour shifts.

E) Farm Credit will be given possession of the commercial property, valued at $42,500.00 per acre for the total of approximately 56 acres. The total value of $2,278,000.00 will be applied to the first year of payments due to Farm Credit under this plan;

F) Cattle sale proceeds related to the reduction in herd size will be applied to outstanding administrative claims and then used for operations;

DISCLOSURE STATEMENT -24

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

G) When the well currently being drilled is completed, the well drilling equipment will be sold to satisfy the outstanding loan owed to Farm Credit, per the Ch 11 Plan. If the well drilling equipment cannot be sold for enough to satisfy the debt, the well drilling equipment will be abandoned to Farm Credit. If the well drilling equipment is sold for more than the debt, the excess funds will be used to pay plan payments;

H) Debtor also has a lawsuit against Agri-King. If settled or a judgment entered in favor of the Debtor, those funds will be applied 25% to the Unsecured Claims, 25% to Farm Credit Operating Line, and 50% for Dairy Operations ;

I) Debtor is currently attempting to sell the vacation home in Leavenworth. The asking price is $1,250,000.00 and the underlying debt owed to Wells Fargo is $203,401.31. Upon sale of the Leavenworth home, the equity will be applied as follows: 25% to the Unsecured Claims, 25% to Farm Credit Operating Line, and 50% for Dairy Operations.

J) The Debtor currently has accrued patronage dividends. The Patronage values are as follows :

|  | As of 09/30/2018 |
| --- | --- |
| Investment in NDA | 3,740,081.34 |
| Unissued Retains - NDA | 966,016.59 |
| Investment in Benton REA | 223,787.85 |
| Investment in Bleyhl | 70,880.25 |
| Investment in Land O'Lakes | 56,156.00 |
| Investment in All West/Select Sir | 39,434.90 |

DISCLOSURE STATEMENT -25

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Debtor does not control when patronage is received. Debtor has proposed in the plan that any patronage funds that are received be set off against any obligation owed to any co-op creditor and/or be allocated as follows: 25% to the Unsecured Claims, 25% to Farm Credit Operating Line, and 50% for Dairy Operations.

23.2    Post-Confirmation Operations. As of the Effective Date, and subject to the terms of the Plan, the Debtors, shall be free to operate the dairy and farm the properties which they own according to such terms and conditions as the Debtors may elect in their sole discretion.  In addition, after the Effective Date, the Debtor may, without limitation, enter into such leases, sub-leases or other agreements as the Debtors may deem desirable. Currently the Dairy property is owned personally by Art and Theresa Mensonides and leased to Mensonides Dairy, LLC. A second lease is for the vineyard to be leased to Auke Bruinsma. The Debtors shall not be required to obtain Court approval with respect to any of its post-confirmation operations.  As of the Effective Date, and subject to the terms of the Plan, the Debtors shall be authorized, without Court approval, to enter into any loan or financing agreements which the Debtors deem necessary or desirable in order to effectuate their operations; provided, that the repayment and collateral rights of Farm Credit under the Plan  and the repayment and collateral rights of the

DISCLOSURE STATEMENT  -26

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

other secured creditors under the Plan shall not be impacted by any such post-confirmation loan or financing agreements until such creditors are paid in full pursuant to the terms of the Plan.

23.3   Execution of Documents by Debtors.  To the extent they are not already obligated with respect to a Plan Liability, the Debtors shall execute such documents as any creditor/claimant/lessor may reasonably require in order to evidence the Debtor's obligation to such creditor/claimant/lessor under the Plan. Disputes with respect to the reasonableness of any such documents shall be resolved by the Bankruptcy Court after reasonable efforts to reach agreement by the parties.

23.4   Payment of Insider Compensation by Debtor.   The Debtor intends to continue employing insiders to perform services for the Debtors under the Plan.  The compensation to be paid to insiders prior to the Effective Date will be the amounts described in Exhibit "5."  Currently the insiders working at the Dairy are Auke Bruinsma, Amy Mensonides, Kristyn Mensonides, Joreen Bruinsma, Art and Theresa Mensonides. All insiders were originally disclosed on the Ch 11 Bankruptcy Schedules.  No insiders have been added since the date of

DISCLOSURE STATEMENT  -27

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

filing. Auke Bruinsma also grows corn silage and sells it to the Dairy, with pre-petition debt owed based on this transaction. The Ch. 11 plan proposes to pay Auke Bruinsma as an unsecured creditor.

Debtor may increase or decrease the salaries of insiders during the term of the Plan. In addition, the Dairy may make distributions to its members, Art and Theresa Mensonides, depending upon the financial performance of the Debtors. The Debtors shall not make distributions to insiders or members which would cause the Debtors not to be able to make the payments called for by the Plan.

### E.     Projected Operations of Debtor.

24.    The Debtors have prepared a 2019-2020 budget related to their combined operations ("Budget"). The Budget represents the Debtors' estimate of their combined operation from January, 2019 through December 2020 and lists the budget assumptions necessary for said projections (Exhibits "2-3"). The budget includes all plan payments. The Debtors believe and assert that the Debtors' projected budget will provide sufficient cash flow to allow the Debtors to fund their operations as well as to pay the Plan Liabilities, along with the operational

DISCLOSURE STATEMENT  -28

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

changes described herein.  The Debtors believe the Budget is representative of the Debtor's operations going forward under the Plan.   The term of the Plan is significantly longer than the 2019-2020 budget period.   However, the Debtors believe that operations in subsequent years will be substantially similar to those contained in the 2020 Budget.  While the prices and expenses are anticipated to vary from year to year, the projections contained in the Budget are based upon historical price information which the Debtors believe will be valid over time.

25.   Debtors' Budget projects that the Debtors' milk production will be approximately 78 lbs. of milk per cow based on historic averages of the top producing cows for this Dairy. The Dairy sells cull cows through Toppenish Livestock Market at market price, which is projected at  $156,000.00 per month, and day old calf sales projected at $10,638.00 per month. Dairy has a contract with Darigold ensuring sale of milk produced at this Dairy.  The milk price is based on current Darigold forecasts by month with adjustments for the historical component pricing that the Dairy receives.

26.   The Budget details the combined net income from operations for the period January 1, 2019 through December 21, 2020  (which is the income which

DISCLOSURE STATEMENT  -29

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

would be utilized to make projected plan payments in the years of the Plan). The combined net cash flow is projected to be approximately $5,712.956.00 for that period. This net income will be sufficient to make all payments called for by the Plan during the budget period. The Budget shows the projected payment obligations of the Debtors during the first twenty-four (24) months of the Plan. The projected plan payments in the first twenty-four months are approximately $5,023,997.00 not including any payments which may be realized through the assets described above (i.e. Leavenworth, Agri-King, Patronage, etc.) .

### G. Claims Against the Debtors.

27. The Debtors' Bankruptcy schedules were filed with the Court on July 12, 2018. Subsequently, a number of creditors filed claims against the Debtors. The deadline for filing proofs of claim was November 7, 2018. Claims are represented at the value listed in the Debtors' bankruptcy schedules, unless a creditor has filed a proof of claim, in which case the amount described in the proof of claim is used.

DISCLOSURE STATEMENT -30

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

28. Total secured claims against the Debtor are approximately $28,857,218.16 which is comprised largely of the secured claim of Farm Credit.

32. Total unsecured claims against the Debtors are approximately $6,624,953.68 including trade creditors claims of $4,871,540.98 and FC Stone debt of $1,753,412.70.

33. In addition to the claims reflected on below in the unsecured creditor's chart under Class 10 below, the Debtors have incurred certain administrative expenses in the form of attorneys' fees and costs which will be payable under the Plan. The Debtors do not know the exact amount of these fees and costs, however, Steven H. Sackmann and Toni Meacham are currently seeking approval of fees and costs of $160,493.30 and $76,920.00, respectively, calculated through October 15, 2018. Debtors have obtained authority to pay their legal counsel a portion of their attorneys' fees and costs on a monthly basis. Debtors have been paying these fees under the Final Cash Collateral Order and thus the attorneys' fees due on the Effective Date are not anticipated to be as significant as they might otherwise be. Debtors believe they are current in the payment of all pre-petition tax except for the IRS claim of $38,821.71. The Debtors believe they are current in the payment

DISCLOSURE STATEMENT -31

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

of all pre-petition and post-petition wage and employee benefit claims. The Debtors are not aware of any other administrative or priority claims which may be asserted against the Debtors.

34.     Leases- The following executory contracts and leases will be assumed by the Debtors under the Plan and will be deemed automatically assigned to the Debtors on the Effective Date:

34.1. Simplot and Debtors are parties to a Calf Breeding and Production Agreement dated 4/11/18.   Agreement will be assigned to the Debtors on the Effective Date.

34.2. Northland Capital and Debtors are parties to a Lease with Option dated on or about 2/29/16 for a period of 60 months. This piece of equipment is needed to make compost out of the Dairy manure. Composting of the manure allows for Dairy to recognize  a value added product that the Dairy can then market.  Debtors propose to assume the Northland Capital lease and assign the same to the Debtors on the Effective Date.

DISCLOSURE STATEMENT  -32

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

34.3 Auke Bruinsma is the Lessee on a vineyard owned by the Debtors on an annual basis at $500.00 per acre for 17 acres. Payment is due upon Mr. Bruinsma selling the crop. Debtors propose to assume the lease under the Plan.

34.4 Art and Theresa Mensonides are the owners of the real property used in the Dairy operation. Mensonides has a lease between themselves and the Dairy for use of the Dairy property. That lease is necessary for the ongoing operation of the Dairy and is proposed to be assumed under the Plan.

35. Insider & Related Party Claims. On the Petition Date, the Debtors owed money to certain Insiders (collectively "Insider Claims"). Said claims have been previously detailed, but to summarize, Auke Bruinsma, Debtors' son-in-law sold corn silage to the dairy pre-petition and will treated as an unsecured creditor under the Ch 11 Plan.

## III. THE DEBTOR'S PLAN

### A. Summary of Plan.

The Debtors' Plan establishes FOURTEEN (14) classes of creditors and equity security holders, which are generally as follows:

DISCLOSURE STATEMENT -33

Steven H. Sackmann
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Class 1:          Administrative Claims – Professionals

Class 2:          Administrative Claims - Other

Class 3:          Claims of the Internal Revenue Service

Class 4:          Secured Claims of Northwest Farm Credit Services,

FLCA and Northwest Farm Credit Services, PCA  (collectively **"Farm Credit')**

Class 5:          Secured Claims of Ag Country Farm Credit Services

Class 6:          Secured Claims of AgCo Finance LLC

Class 7:          Secured Claims of Balboa Capital

Class 8:          Secured Claims of Deere

Class 9:          Claims of  Northland Capital Financial Services

Class 10:         Unsecured Claims

Class 11:         Secured Claims of Wells Fargo Home Mortgage

Class 12:         Unsecured Claims – Administrative Convenience

Class 13:         Claims Between Individual Debtors and the Dairy

Class 14:         Equity Security Holders

DISCLOSURE STATEMENT  -34

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Under the Debtors' Plan, the Debtors believe that all creditors in Classes 1-13 will receive payment of one hundred percent (100%) of the principal amount of their claims as well as interest as described below (unless said claimant elects to be treated as an Administrative Convenience Claim). Class 14 claimants Art and Theresa Mensonides will retain their ownership interests in the Debtors and the Debtor.

### B.    Proposed Plan Treatment of Each Class of Claims.

**Class 1.   Administrative Expenses – Professionals.**

**(a)   Classification.**   Class 1 consists of all Allowed Claims of professionals entitled to priority under Section 507(a) of the Bankruptcy Code.

**(b)   Treatment.** The holder of a Class 1 Allowed Claim will receive cash in the full amount of such Allowed Claim on the later of: (a) fourteen (14) days after the Effective Date of the Plan; or (b) ten (10) days after the Court has entered an order approving such fees and costs in accordance with the Bankruptcy Code and Bankruptcy Rules.

**(c)   Non-impairment.** Class 1 is not impaired.

DISCLOSURE STATEMENT  -35

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**Class 2.  Administrative Claims – Non-Professionals**

(a)  **Classification**.  Class 2 consists of any administrative claims against the Debtors other than claims arising from the Debtor's employment of professionals pursuant to 11 U.S.C. §327.

(b)  **Treatment**.    The Debtor shall pay all Administrative Claims in full within one hundred twenty (120) days following the Effective Date of the Plan.

**Class 3.  Claims of the Internal Revenue Service.**

(a)  **Classification.**    The Class 3 Claim of the Internal Revenue Service consists of the pre-petition tax claims held by the Internal Revenue Service against the Debtors.

(b)  **Description.**    The Internal Revenue Service has filed a proof of claim against Mensonides Dairy, LLC and a claim against Art & Theresa Mensonides.  The claim against the Dairy is in the amount of $38,821.71.  The claim against Art & Theresa Mensonides results from the Internal Revenue Service assessing a 100% penalty against the individuals based upon non-payment by the Dairy.

DISCLOSURE STATEMENT  -36

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

(c) **Payment.** The Debtors shall pay the full amount of the IRS Claim against the Dairy, with interest at the rate provided for by the Internal Revenue Code no later than one hundred twenty (120) days from the Effective Date. Payment of the IRS Dairy claim shall also constitute payment in full of the IRS Claim against Art & Theresa Mensonides.

(d) **Release.** Upon full payment of the IRS Claim against the Dairy, the IRS shall, within thirty (30) days, release any liens, warrants or other notices which it has filed or recorded against the Debtors.

**Class 4.     Secured Claim of Northwest Farm Credit Services, FLCA and Northwest Farm Credit Services, PCA (collectively "Farm Credit')**

(a) **Classification and Description of Class 4 Claim**. The Class 4 Claim consists of the Allowed Secured Claim of Northwest Farm Credit Services, FLCA and Northwest Farm Credit Services, PCA (collectively "Farm Credit') pursuant to §506 of the Bankruptcy Code.

(b) **Basis for Claim:** Northwest Farm Credit Services, FLCA and Northwest Farm Credit Services, PCA (collectively **"Farm Credit")** has asserted

DISCLOSURE STATEMENT -37

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

a secured claim against the Debtors, in the amount of $28,985,541.32 (per Farm Credit's filed proof of claim), which includes principal, interest, default interest, attorneys' fees and other costs and charges. The Debtors' obligations to Farm Credit are documented by one or more loan agreements, security agreements, mortgages on real property and other loan documents. Farm Credit's loans are cross collateralized and secured by substantially all of the assets of the Debtors, including cattle, milk checks, crops, farm products, inventory, accounts, receivable, equipment, and real property.[1]   Farm Credit's collateral includes assets of non-Debtor affiliated companies, such as A & T Drilling, LLC, solely owned by Art and Trijntje Mensonides. The claim is based upon: (a) a loan to obtain well drilling equipment in the original principal amount of $840,000; (b) a line of credit for feed in the principal amount of $4,243,701.13; (c) a line of credit for the cows in the principal amount of $8,660,514.41; (d) a refinance of existing debt in the original principal amount of $13,420,000.00; and (e) a forbearance note in the original principal amount of $3,000,000.00. Copies of the loan, collateral, security and other documents existing prior to the filing of the Bankruptcy Case that

---

[1]      Farm Credit does not have a mortgage or lien against the Leavenworth Property.

DISCLOSURE STATEMENT -38

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

evidence the Farm Credit claim are attached to Farm Credit's proof of claim filed in each of the Debtors' cases, and are referred to herein as the **"Farm Credit Pre-Petition Loan Documents."**

The Debtors' obligations to Farm Credit are secured by substantially all of the real and personal property assets of the Debtors. In addition to the security interests and mortgage liens granted to Farm Credit under the Farm Credit Pre-Petition Loan Documents, Farm Credit was granted a post-petition lien and security interest against the Debtors' post-petition cash collateral assets as adequate protection for the use of Farm Credit's cash collateral during the pendency of the Bankruptcy Case.

(c)    **Treatment**. Farm Credit's secured claim, including interest, late charges, and legal fees shall be calculated as of the Effective Date, with notice of such calculation to be given to the Debtors, the U.S. Trustee, the Committee, and any other party requesting such notice. The amount of all interest, legal fees, late charges and other amounts which are due to Farm Credit as of the Effective Date shall be capitalized into the balance of Farm Credit's allowed secured claim **("Farm Credit Claim Balance").**

DISCLOSURE STATEMENT -39

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

(i) <u>Allocation of Farm Credit Claim:</u>   The Farm Credit Claim Balance shall be broken into a real estate loan of $19,845,000 **("Real Estate Loan")** and an operating loan equal to the difference between the Farm Credit Claim Balance and the Real Estate Loan **("Operating Loan")**.

(ii) <u>The Real Estate Loan:</u>   The balance of the Real Estate Loan shall be amortized over a period of twenty-five (25) years at an annual fixed interest rate of 3.55% per annum.   Commencing on the last day of the month following the month in which the Effective Date occurs, the Debtors shall commence making monthly payments of principal and interest on the Real Estate Loan in the amount of $102,344.00.   Unless otherwise provided for or excused pursuant to this Plan, subsequent payments of $102,344.00 shall be made on the last day of each subsequent month until the Real Estate Loan has been paid in full.

(iii) <u>The Operating Loan:</u>   The Operating Loan shall accrue interest at the rate of five percent (5%) per annum.   The Operating Loan shall be paid as follows: (a) For a period of twelve (12) months, commencing on the last day of the month following the month in which the Effective Date occurs (and continuing on the last day of each of the subsequent eleven (11) months), the

DISCLOSURE STATEMENT -40

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Debtors shall make monthly interest only payments on the Operating Loan **("Interest Only Payments")**; (b) Commencing on the last day of the month following the last Interest Only Payment, the Debtors shall make monthly payments of principal and interest on the Operating Loan in the amount of $100,000 until the Operating Loan is paid in full.

(iv)     Liquidation of Commercial Property: No later than ten (10) days after the Effective Date, the Debtors shall provide Farm Credit with a non-merger quitclaim deed in lieu of foreclosure **("DIL")** to the Debtor's Commercial Property. In exchange for the DIL the Debtor's shall receive a credit against the balance due under the Operating Loan in the amount of $2,380,000.00 (this represents $42,500/acre).

(v)     Liquidation of Well Drilling Equipment:     Within ten (10) days of the Effective Date, the Debtors shall list for sale the well drilling equipment that was financed by Farm Credit. The proceeds from the sale of the well drilling equipment shall be used to pay down the principal balance of the Operating Loan. The Debtor shall provide Farm Credit with five (5) days' written notice of any proposed sale of the well drilling equipment (which notice shall

DISCLOSURE STATEMENT -41

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

include a copy of any written purchase and sale agreement). Upon receipt of such notice, Farm Credit shall have the following options: (a) release its security interests and liens against the well drilling equipment and accept the Net Proceeds as payment under the Operating Loan; or (b) accept a quitclaim bill of sale to the well drilling equipment from the Debtors in exchange for a reduction in the principal balance of the Operating Loan in an amount equal to the sales price under the purchase and sale agreement being proposed by the Debtors.

(vi) <u>Liquidation of Excess Cows:</u> The Debtor's operational plan calls for the Debtors to reduce the size of their milking herd to 4,800 cows from its current levels. Upon the Effective Date, the Debtors shall commence selling cows and heifers **("Excess Cows")** to reduce the herd to 4,800 milking cows within six (6) months of the Effective Date. The Debtor shall consult with its experts as to the optimal timing as to when the sales of cattle should occur, however the herd shall be reduced to 4,800 milking cows within six (6) months of the Effective Date. The proceeds from the sale of the Excess Cows shall be used as follows to pay valid administrative claims against the Debtors on or after the Effective Date. The

DISCLOSURE STATEMENT -42

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

remaining proceeds from the Excess Cows shall be retained by the Debtor for use as operating capital.

(vii) <u>The Agri-King Lawsuit:</u> The Debtors shall be authorized to continue pursuing the Agri-King Lawsuit and to pay any costs related to the prosecution of such Agri-King Lawsuit under the Plan. The Debtors are authorized in their sole discretion to resolve and/or settle the Agri-King Lawsuit on such terms as the Debtors deem advantageous. Any net proceeds received by the Debtors from the resolution of the Agri-King lawsuit shall be paid as follows: (a) twenty-five percent (25%) of the net proceeds shall be paid to reduce the principal balance due on the Operating Loan; (b) twenty-five percent (25%) of the net proceeds shall be distributed to unsecured creditors on a pro rata basis; and (c) fifty percent of the net proceeds (50%) shall be retained by the Debtors for operational purposes.

(viii) <u>The Leavenworth Property:</u> The Debtor shall be authorized (but not obligated) to sell the Leavenworth Property under this Plan. In the event the Debtors sell the Leavenworth Property, the proceeds from the sale shall be used first to: (a) pay any commissions, taxes (including capital gains taxes), title insurance fees and other customary costs and fees of closing; and (b) to pay the full

DISCLOSURE STATEMENT -43

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

remaining balance of the Wells Fargo Home Mortgage secured claim. The net proceeds from the Leavenworth Sale shall be distributed as follows: (a) twenty-five percent (25%) of such net proceeds shall be paid to Farm Credit to pay down the Operating Loan (or the Real Estate Loan if the Operating Loan has been paid in full); (b) twenty-five percent (25%) of the net proceeds shall be distributed to unsecured creditors on a pro rata basis; and (c) fifty percent (50%) of the net proceeds shall be retained by the Debtors as working capital.

        (ix) <u>Sale or Disposition of Feedlot Property:</u>    The Debtor shall be authorized (but not obligated) to sell the Feedlot Property under this Plan. In the event the Debtors sell the Feedlot Property, the proceeds from the sale shall be used first to pay any commissions, taxes (including capital gains taxes), title insurance fees and other customary costs and fees of closing. The net proceeds from the Feedlot Property Sale shall be paid to Farm Credit to pay down the Real Estate Loan. The Debtor shall be authorized to lease the Feedlot Property during the term of the Plan. Any lease proceeds received by the Debtor shall be used by the Debtor for operational purposes.

DISCLOSURE STATEMENT -44

Steven H. Sackmann
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

18-01681-WLH11   Doc 265   Filed 11/26/18   Entered 11/26/18 20:39:20   Pg 44 of 93

(x)    Credit Against Payment Obligations:   In the event Farm Credit receives any payments from the sale, liquidation and/or settlement of: (a) the Leavenworth Property; (b) the Agri-King lawsuit; (c) the well drilling equipment, such payments shall be credited against the Debtors future obligations to make payments on the Operating Loan (but not the Real Estate Loan).  For example, if on December 31, 2020, Farm Credit receives $500,000 from the sale of the Leavenworth Property, the Debtors would be excused from making the next five (5) monthly payments (each in the amount of $100,000) due on the Operating Loan.   In the event Farm Credit receives any payments from the sale or disposition of the Feedlot Property, such payments shall be credited against the Debtors future obligations to make payments on the Real Estate Loan (but not the Operating Loan).  For example, if on December 31, 2020, Farm Credit receives $500,000 from the sale of the Feedlot Property, the Debtors would be excused from making approximately the next five (5) monthly payments (each in the amount of $102,344) due on the Real Estate Loan.

DISCLOSURE STATEMENT  -45

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

(xi)  **Prepayment:**  Notwithstanding any provision to the contrary in the Farm Credit Loan Documents, the Debtors may pre-pay the Operating Loan and/or the Real Estate Loan at any time without penalty or cost.

(xii)  Prepayment of Operating Loan:  The Debtor has the option of segregating and paying separately the Operating Loan.  If the Debtor elects to prepay the Operating Loan, Farm Credit shall be obligated to release all of its collateral except the Dairy Real Estate in exchange for full payment of the remaining balance of the Operating Loan.

(d)  **Additional Plan Provisions:**

(i)  Farm Credit's proofs of claim assert that Farm Credit is owed (as of November 15, 2018)  the sum of $28,985,541.32, which includes principal, interest, default interest, attorneys' fees, termination fees and other amounts provided for under the Farm Credit Pre-Petition Loan Documents. Additional amounts shall continue to accrue under the Farm Credit Pre-Petition Loan Documents between prior to confirmation of this Plan.

(ii)  Unless the parties have previously agreed upon the amount of the Farm Credit Claim Balance, Farm Credit shall deliver to the

DISCLOSURE STATEMENT  -46

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Debtors, the U.S. Trustee and to counsel for the Creditor's Committee, no later than five (5) days after the Effective Date, an itemized statement showing the balances Farm Credit contends the Debtors owe and which should be included as part of the Farm Credit Claim Balance (including separate classification of principal, interest, late fees, default interest, attorneys' fees, consultant charges or other amounts). Any interested party, including the Debtors shall have thirty (30) days to challenge the amount of the Farm Credit Claim Balance. In the event of a challenge, the Farm Credit Claim Balance shall be the amount determined by the Bankruptcy Court or otherwise agreed upon by the parties. Notwithstanding any dispute as to the Farm Credit Claim Balance, the Debtor shall make payments on the Operating Loan and Real Estate Loan pending resolution of any claims dispute.

(iii) Except as provided herein, the Farm Credit Claim Balance shall continue to be secured by any collateral described in the Farm Credit Pre-Petition Loan Documents. To the extent Farm Credit had a valid, perfected, first priority, pre-petition security interest in a category or type of the Debtor's assets, Farm Credit shall be granted under this Plan a first priority security interest and lien in all of the Debtors' and the Debtor's presently existing and after-acquired post-

DISCLOSURE STATEMENT -47

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

petition and post-confirmation assets of the same category or type. Notwithstanding the foregoing, nothing contained herein shall be deemed to grant Farm Credit a lien or security interest in (and Farm Credit shall not have such a lien or security interest): (a) any real estate upon which it did not hold a valid, perfected, first priority, pre-petition mortgage or lien; or (b) any patronage or similar dividends, rights or benefits which the Debtor may receive after the Effective Date, whether or not such dividends were subject to Farm Credit's pre-petition liens and security interests.

(iv)     After the Effective Date, the Debtors shall provide Farm Credit with the following financial reporting:

(a)     A proposed annual budget detailing the Debtors projected operations for each year under the Plan **("Budget")**.  The Budget shall detail the Debtors projected income and expenses as well as the assumptions underlying those projections.  The Budget shall be delivered to Farm Credit no later than December 15 of the year prior to the applicable budget period.  For example, the projected 2020 Budget would be provided no later than December 15, 2019.

DISCLOSURE STATEMENT  -48

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

(b)     Monthly CPA produced income statements shall be provided no later than the thirtieth (30th) day of the month following the period the income statement relates to.

(c)     All federal tax returns filed by the Debtor shall be provided to Farm Credit no later than thirty (30) days after the same have been filed with the Internal Revenue Service.

(d)     As of the Effective Date, but subject to the provisions allowing for a challenge to the Farm Credit Claim Amount (as provided above) the Debtors will acknowledge that they have no claims, defenses or offsets to the Farm Credit Claim Amount.

(v)     On the Effective Date, and with respect to the Debtors only, all defaults under the Farm Credit Pre-Petition Loan Documents shall be deemed either waived or cured, and Farm Credit shall thereafter have the rights granted to it under this Plan.

(e)     Impairment.    Pursuant to Section 1124 of the Bankruptcy Code, Class 4 is impaired.

DISCLOSURE STATEMENT  -49

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**Class 5.   Secured Claim of Ag Country Farm Credit Services.**

(a)   **Classification.**      The Class 5 Claim consists of the Allowed Secured

Claim of Ag Country Farm Credit Services pursuant to §506 of the Bankruptcy

Code.

(b)   **Basis for Claim:**   Ag Country Farm Credit Services **("ACFCS")**

extended a purchase money for the Debtors to purchase chillers for the milk barn

and a 624J John Deere Loader.   The Debtor has listed the total amount of the

ACFCS claim to be $89,864.02. No proof of claim has been filed by ACFCS at this

time.

(c)   **Treatment.**  ACFCS's secured claim, including interest, late charges,

and legal fees shall be calculated as of the  Effective Date. The amount of all

interest, legal fees, late charges and other amounts which are due to ACFCS as of

the Effective Date shall be capitalized into the balance of ACFCS's allowed

secured claim **("ACFCS Claim Balance").**   The ACFCS Claim Balance shall be

divided into two (2) claims, a) one for the 624J John Deere Loader, which shall

accrue interest at the rate of  zero percent (0%) per annum from the Effective Date

until paid in full; and b) one for the Chillers, which shall accrue interest at the rate

DISCLOSURE STATEMENT  -50

of three point one five percent (3.15%) per annum from the Effective Date until paid in full, which are the contracted interest rates for these pieces of equipment. The ACFCS Claim Balance shall be paid as follows: (a) $8,564.62 per month through March 1, 2019, at which point the 624J John Deere Loader will be paid in full; and (b) remaining quarterly payments of $5,362.48 will continue until the ACFCS Claim Balance is paid in full. The ACFCS Claim Balance shall continue to be secured by the liens provided for in ACFCS's pre-petition loan documents.

(d) **Additional Provisions.** Upon full payment of the ACFCS Claim Balance, ACFCS shall release any lien or security interest it may have against the Debtor's assets.

(e) **Cure of Defaults.** All defaults in respect of the ACFCS Claim Balance shall be deemed cured as of the Effective Date.

(f) **Prepayment.** The Debtor may prepay any or all the principal amount of the ACFCS Claim Balance, and any such prepayment shall be credited against the payments next due under this Plan.

(g) **Impairment.** Class 5 is impaired.

**Class 6.** **Secured Claim of AgCo Finance LLC.**

DISCLOSURE STATEMENT -51

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**(a)** **Classification.** The Class 6 Claim consists of the Allowed Secured Claim of AgCo Finance LLC pursuant to §506 of the Bankruptcy Code.

**(b)** **Basis for Claim.** AgCo Finance LLC **("AgCo")** provided purchase money financing for the purchase of a Massey Ferguson baler. AgCo filed a proof of claim on July 17, 2018 with a pre-petition balance of $35,949.33.

**(c)** **Treatment.** AgCo's secured claim, to the extent any balance remains due at confirmation, including interest, late charges, and legal fees shall be calculated as of the Effective Date. The amount of all interest, legal fees, late charges and other amounts which are due to AgCo as of the Effective Date shall be capitalized into the balance of AgCo's allowed secured claim **("AgCo Claim Balance").** The AgCo Claim Balance shall accrue interest at the zero percent (0%) per annum from the Effective Date until paid in full. After confirmation the Debtor shall continue to the payments to AgCo as called for by the AgCo pre-petition loan documents until the AgCo Claim Balance is paid in full. The AgCo Claim Balance shall continue to be secured by the liens provided for in AgCo's pre-petition loan documents.

DISCLOSURE STATEMENT -52

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**(d)     Additional Provisions.**   Upon full payment of the AgCo Claim Balance, AgCo shall release any lien or security interest it may have against the Debtor's assets.

**(e)     Cure of Defaults.**   All defaults in respect of the AgCo Claim Balance shall be deemed cured as of the Effective Date.

**(f)     Prepayment.**     The Debtor may prepay any or all the principal amount of the AgCo Claim Balance, and any such prepayment shall be credited against the payments next due under this Plan.

**(g)     Impairment.**     Class 6 is not impaired.

**Class 7.**            **Secured Claim of Balboa Capital**

**(a)     Classification.**     The Class 7 Claim consists of the Allowed Secured Claim of Balboa Capital pursuant to §506 of the Bankruptcy Code.

**(b)     Basis for Claim.**   The Claim of Balboa Capital results from Balboa financing a Custom Corn Grinder; 75 HP Motor; Mill Stand; Frequency Drive 230/460 Roll Feeder; 2 spare 12x52 Roll pair; 2 spare 220 Bearing Housing Assembly; and C-30HDG Mayco grout pump and accessories **("Balboa Collateral")**.  Balboa has filed a motion for relief from the automatic stay in which

DISCLOSURE STATEMENT  -53

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

it contends that the balance due under the contract is $167,507.67. Balboa Capital claims a security interest and lien in Balboa Collateral to secure the balance due under Balboa's pre-petition loan documents. Debtors claim that the Balboa Collateral is necessary for an effective reorganization.

(c) **Treatment.** The Balboa claim shall be divided into a secured and unsecured portion. The Balboa Secured Claim shall be equal to Forty Thousand and no/100 United States Dollars ($40,000.00) (which the Debtor contends is the value of the Balboa Collateral **("Balboa Secured Claim")**. The remainder of Balboa's claim shall be treated as an unsecured claim and shall be dealt with in Class 10 of the Plan. The Balboa Secured Claim shall accrue interest at the rate of six percent (6%) per annum from the Effective Date. The Debtor shall make monthly payments on the Balboa Secured Claim, commencing on the last day of the month following the date in which the Effective Date occurs, in the amount of Five Thousand and no/100 Dollars ($5,000) until the Balboa Secured Claim is paid in full.

(d) **Additional Provisions.** Balboa's lien and security interest in the Balboa Collateral shall continue until the Balboa Secured Claim is paid in full.

DISCLOSURE STATEMENT -54

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Upon payment of the Balboa Secured Claim in full, Balboa shall release its security interests and liens in the Balboa Collateral.

**(e) Cure of Defaults.** All defaults with respect to the Balboa Secured Claim shall be deemed cured as of the Effective Date.

**(f) Prepayment.** The Debtor may prepay any or all of the principal amount of the Balboa Secured Claim, and any such prepayment shall be credited against the payments next due on the Balboa Secured Claim under this Plan.

**(g) Impairment.** Pursuant to Section 1124 of the Bankruptcy Code, Class 7 is impaired.

**Class 8. Secured Claim of John Deere Construction & Forestry Company.**

**(a) Classification.** The Class 8 Claim consists of the Allowed Secured Claim of John Deere Construction & Forestry Company **("Deere")**. pursuant to §506 of the Bankruptcy Code.

**(b) Basis for Claim.** Deere's claim results from a retail installment contract dated on or about September 29, 2017 for a John Deere 724K Loader

DISCLOSURE STATEMENT -55

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**("Deere Collateral")** for $243,000.00. Deere has filed a proof of claim on August 7, 2018 in the amount of $213,111.12. Deere claims a security interest and lien in the Deere Collateral to secure the balance due under Deere's pre-petition loan documents. Deere moved for relief from the stay or alternatively adequate protection with respect to the Deere Collateral. The Debtors and Deere have entered into a stipulation which provides that Debtors shall resume the monthly payments of $7,611.11 beginning October, 2018 (See Docket No. 203).

**(c)    Treatment.** Deere's secured claim, including interest, late charges, and legal fees shall be calculated as of the Effective Date and Deere shall provide the Debtors with notice of its calculations within five (5) days after the Effective Date. The amount of all interest, legal fees, late charges and other amounts which are due to Deere as of the Effective Date shall be capitalized into the balance of Deere's allowed secured claim **("Deere Claim Balance").** The Deere Claim Balance shall not accrue interest from the Effective Date until paid in full. The Deere Claim Balance shall be paid as follows: (a) commencing on the last day of the month following the month in which the Effective Date occurs, the Debtor shall make monthly payments to Deere in the amount of $7,611.11 until the Deere Claim

DISCLOSURE STATEMENT  -56

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Balance is paid in full. **(d)** **Additional Provisions.** Until paid in full the Deere Claim Balance shall continue to be secured by the Deere Collateral pursuant to the terms of the Deere pre-petition loan documents.

**(e)** **Cure of Defaults.** All defaults in respect of the Deere Claim Balance shall be deemed cured as of the Effective Date.

**(f)** **Prepayment.** The Debtors may prepay any or all of the principal amount of the Deere Claim Balance, and any such prepayment shall be credited against the payments next due under this Plan.

**(g)** **Impairment.** Pursuant to Section 1124 of the Bankruptcy Code, Class 8 is impaired.

**Class 9** **Claims of Northland Capital Financial Services**

**(a)** **Classification.** The Class 9 Claim consists of the Allowed Claim of Northland Capital Financial Services **("NCFS")** resulting from an equipment lease with option to purchase between NCFS and Debtors **("NCFS Lease")**.

DISCLOSURE STATEMENT -57

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**(b)  Basis for Claim.**  The Debtors were current on payments due under the NCFS Lease on the Petition Date and remain current on the payments post-petition.

**(c)  Treatment**.  The Debtors will assume the NCFS Lease which have not previously expired upon the Effective Date.  To the extent any defaults exist under the NCFS Lease on the Effective Date, the Debtors shall cure such defaults within thirty (30) days of the Effective Date.

The terms of the NCFS Lease shall continue in full force and effect after assumption by the Debtors and the Debtors shall continue making post-confirmation payments to NCFS according to the terms of the NCFS Lease.  The Debtors shall retain their right to exercise the option to purchase contained in the NCFS Lease according to the terms of the NCFS Lease.

**(d)  Impairment.**  Class 9 is not impaired.

**Class 10.  Unsecured Claims**

**(a)  Classification.**  Class 10 includes all unsecured claims against the Debtors as of the Petition Date **("Unsecured Creditor Claims")**.  Unsecured

DISCLOSURE STATEMENT  -58

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Creditor Claims shall not include any post-petition interest, attorneys' fees or other charges, whether or not such amounts were provided for in pre-petition agreements with the Debtor.

(b)     **Treatment.** The Unsecured Creditor Claims shall be totaled as of the Effective Date. After the Debtors have resolved any objections or challenges to the Unsecured Creditor Claims, in accordance with the provisions of this Plan, each unsecured creditor will be deemed to have a pro rata share of the Unsecured Creditor Claims balance based upon the percentage that such unsecured creditor's claim bears to the total Unsecured Creditor Claims. Unsecured Creditor Claims shall bear interest at the rate of two percent (2%) per annum from the Effective Date until paid in full. Unsecured Creditor Claims shall be paid as follows:

(i)     <u>Timing of Payments.</u>    Unsecured Creditor Claims shall be paid in full in ten (10) annual installments (each an **"Installment"**), with the first Installment due one (1) year from the Effective Date and additional Installments made on the same date of each subsequent year under the Plan. The amount of each Installment shall depend upon the funds received by the Debtor in the previous year which are either: (i) Earmarked Funds (as defined below); or (b)

DISCLOSURE STATEMENT  -59

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Fifty Percent (50%) of Operational Profits (as defined below) from operations during the twelve (12) months prior to the making of the applicable Installment payment available from the Debtor's net cash flow from operations during the year preceding the applicable Installment payment, as described below.

(ii)  Earmarked Funds. The following amounts shall be deemed funds earmarked for distribution to unsecured creditors **("Earmarked Funds")**: (a) twenty-five percent of the net proceeds from the sale of the Leavenworth Property; (b) twenty-five percent of the net proceeds from the settlement or resolution of the Agri-King lawsuit; and (c) twenty-five percent of any dividends or distributions resulting from the Debtor's equity/patronage in any co-op, including Darigold **("Patronage Distributions")** which are not off set against debt owed a co-op creditor.

(iii)  Operational Profits.  For purposes of the Plan **"Operational Profits"** shall consist of the Debtor's actual net cash flow for the previous twelve (12) month period as determined by the Debtor's regular certified public accountants.  The Debtor's projected net cash flow for 2019 is described in Exhibit "2" to the Debtor's Disclosure Statement.  The Debtor's projected net cash flow

DISCLOSURE STATEMENT  -60

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

for the remaining years of the Plan is described in Exhibit "2" to the Debtor's Disclosure Statement.  Operational Profits shall not include any amounts received or retained by the Debtor as working capital from: (a) the sale of the Leavenworth Property; (b) the sale of the Excess Cows; (c) the resolution of the Agri-King lawsuit; (d) the Debtor's share of Patronage Distributions; and/or (e) the Debtor's retention of Operational Profits from previous years.

(iv)  <u>Installment Payments.</u>  Each Installment payment shall be distributed by the Debtor to unsecured creditors on a pro rata basis.   The amount of each Installment Payment shall be equal to the sum of: (a) any Earmarked Funds the Debtor received in the previous twelve (12) months; plus (b) fifty percent of the Debtor's Operational Profits generated in the previous twelve (12) months *less* any amounts the Debtors must reserve from the Operational Profits in order to fund anticipated operating or capital expenses of the Debtors in future years *provided however* that the Debtor shall use its own accumulated working capital (as opposed to Operational Profits) for such operating or capital expenditures if economically possible.

DISCLOSURE STATEMENT  -61

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

(v) <u>Final Payment Date.</u> Notwithstanding the payment provisions contained above, the balance of the Unsecured Creditor Claims shall be paid in full no later than eleven (11) years from the Effective Date.

**(c) Explanation.** The Debtor shall provide unsecured creditors with an explanation of how the amount of each Installment has been calculated and such calculation shall be included with the annual Installment payment made to unsecured creditors.

**(d) Impairment.** Class 10 is impaired.

**Chart of Unsecured Creditors:**

| CREDITOR | AMOUNT | CLAIM/SCHEDULE |
|---|---|---|
| ABS Global, Inc. | $20,000.00 | Schedule |
| Ace Hardware | $1,366.61 | Schedule |
| Ag Health Laboratories | $18,624.33 | Schedule |
| Agri-Service | $7,606.48 | Schedule |
| Animal Health International | $41.43 | Schedule |
| APEX, LLC | $179,412.75 | Claim 11/6/18 |

DISCLOSURE STATEMENT -62

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| | | |
|---|---|---|
| Aramark Uniform and Apparel, LLC | $4,761.54 | Claim 7/30/18 |
| Archer Daniels Midland | $116,618.19 | Claim 11/6/18 |
| Auke Bruinsma Insider | $56,756.52 | Schedule |
| Balboa Capital Corporation | $127,507.67 | Claim 11/6/18 |
| Bank of America | $185,471.01 | Schedule |
| Bleyhl Farm Service, Inc. | $165,078.85 | Schedule |
| Blue Mountain Hay, LLC | $154,556.40 | Claim 9/20/18 |
| Bodine Consulting | $2,500.00 | Schedule |
| Bovine Vet Services | $13,412.60 | Schedule |
| Calaway Company | $541,946.78 | Claim 6/26/18 |
| Capital One | $45,049.12 | Claim 7/30/18 |
| CapStone Commodities | $11,445.25 | Schedule |

DISCLOSURE STATEMENT  -63

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| | | |
|---|---|---|
| Cargill Animal Nutrition | $5,697.23 | Schedule |
| Central Machinery Sales Inc. | $2,043.60 | Schedule |
| Cliff's Septic | $348.00 | Schedule |
| Commodities Plus II | $1,860.00 | Schedule |
| Commodity Specialists Company | $78,284.75 | Claim 8/19/18 |
| Dairy Vet Management | $14,459.55 | Schedule |
| Daritech, Inc. | $98,593.83 | Schedule |
| Davis Pump | $3,641.63 | Schedule |
| Environmental Technologies | $25,177.35 | Schedule |
| FC Stone, Inc. | $1,753,412.70 | Claim 11/7/18 |
| Fastenal | $5,516.95 | Claim 10/19/18 |
| Gordon Trucking | $7,428.66 | Claim 9/5/18 |
| Granger Industrial Supply | $245.35 | Schedule |

DISCLOSURE STATEMENT  -64

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| | | |
|---|---|---|
| HF Hauff Company | $210.41 | Schedule |
| Husch and Husch Fertilizer | $15,568.48 | Claim 6/21/18 |
| K & U Auto Parts | $1,988.06 | Schedule |
| Lansing Vermont | $405,521.00 | Claim 10/19/18 |
| Loewen Welding and Mfg. Ltd | $20,025.00 | Schedule |
| Lower Valley Machine Shop, Inc. | $13,455.23 | Schedule |
| Motion Industries | $18,114.54 | Claim 7/2/18 |
| MWI Animal Health | $105,683.67 | Claim 6/20/18 |
| O'Reilly | $4,683.10 | Schedule |
| Occupational Health | $2,128.00 | Schedule |
| Orange Dairy Service | $149,808.04 | Schedule |
| Oxarc, Inc. | $269.79 | Schedule |
| Pacific Power | $1,121.47 | Claim |

DISCLOSURE STATEMENT -65

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| | | 11/2/18 |
|---|---|---|
| Pape Machinery | $3,483.95 | Claim 8/13/18 |
| Pape Machinery | $2,200.07 | Claim 8/31/18 |
| Pioneer Enterprises | $54,655.18 | Claim 10/19/18 |
| Randell Equipment | $330.69 | Schedule |
| RDO Equipment | $30,490.59 | Claim 7/3/18 |
| Rogers Machinery Company, Inc. | $1,859.21 | Schedule |
| Safety Kleen Systems | $291.79 | Schedule |
| South Dakota Soybean Processors | $42,909.17 | Claim 8/23/18 |
| Stop Claims Corp | $800.00 | Schedule |
| Sunnyside Hardware | $2,188.70 | Claim 10/8/18 |
| Sunnyside New Holland, | $1,718.56 | Claim |

DISCLOSURE STATEMENT  -66

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| | | |
|---|---|---|
| Inc. DBA Burrows Tractor | | 7/3/18 |
| Tallgrass Commodities | $173,128.65 | Claim 11/7/18 |
| Taylor Electric | $4,371.18 | Schedule |
| Tire Factory | $8,268.86 | Schedule |
| Tony Harris Farms, Inc. | $6,510.00 | Schedule |
| United Telephone Company | $86.33 | Claim 8/8/18 |
| US Commodities | $37,757.09 | Claim 7/25/18 |
| Valley Auto Parts | $603.94 | Schedule |
| Valley Spray | $323.70 | Schedule |
| Valmont Northwest Inc. | $1,491.11 | Schedule |
| Vet-Ex | $397,300.87 | Schedule |
| Western Scale | $426.21 | Schedule |
| Western States Equipment Company | $860.66 | Claim 8/13/18 |
| Western Stockman (Simplot) | $1,143,333.05 | Claim 10/16/18 |

DISCLOSURE STATEMENT -67

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

| | | |
|---|---|---|
| Westway Feed Products, LLC | $107,134.95 | Claim 7/10/18 |
| Whitby Farms | $146,405.95 | Claim 8/22/18 |
| White's Hauling | $53,640.42 | Schedule |
| Wolfkill Feed and Fertilizer | $14,940.88 | Claim 8/24/18 |
| Total | $6,624,953.68 | |

**Class 11          Secured Claim of Wells Fargo Home Mortgage**

(a)    **Classification.**    The Class 11 Claim consists of the Allowed Secured Claim of Wells Fargo Home Mortgage pursuant to §506 of the Bankruptcy Code.

(b)    **Basis for Claim:**    Wells Fargo Home Mortgage **("Wells Fargo")** made a loan to allow Debtors to buy a vacation home in Leavenworth, WA. Debtors has listed the total amount of the claim to be $203,401.31. No proof of claim has been filed by Wells Fargo at this time.

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**(c)    Treatment.**   Wells Fargo's secured claim, including interest, late charges, and legal fees shall be calculated as of the  Effective Date, with notice of such calculation to be given to the Debtors.  The amount of all interest, legal fees, late charges and other amounts which are due to Wells Fargo as of the Effective Date shall be capitalized into the balance of Wells Fargo's allowed secured claim **("Wells Fargo Claim Balance").**   The Wells Fargo Claim Balance shall accrue interest at the non-default contractual rate provided in the Wells Fargo loan documents from the Effective Date until paid in full.    The Wells Fargo Claim Balance shall be paid as follows: (a) the Debtors shall continue making monthly payments to Wells Fargo in the amount of $1,476.98 until the Wells Fargo Claim Balance is paid in full.  Alternatively, in the event the Debtors elect to sell the Leavenworth Property, Wells Fargo shall be paid in full at closing of such sale.

**(d)    Additional Provisions.** The Wells Fargo Clam Balance shall continue to be secured by Wells Fargo's pre-petition lien against the Leavenworth Property.

**(e)    Cure of Defaults.** All defaults in respect of the Wells Fargo Claim Balance shall be deemed cured as of the Effective Date.

DISCLOSURE STATEMENT  -69

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**(f)** **Prepayment.** The Debtor may prepay any or all the principal amount of the Wells Fargo Claim Balance, and any such prepayment shall be credited against the payments next due under this Plan.

**(g)** **Impairment.** Class 11 is not impaired.

### Class 12        Unsecured Creditors – Administrative Convenience

**(a)** **Classification.** The Class 12 Claims consist of unsecured creditors who: (a) have allowed claims of less than $10,000.00 and have elected to be included in the Administrative Convenience Class; and (b) have agreed, pursuant to the provisions described below, to reduce their allowed unsecured claims to $10,000 and have elected to be included in the Administrative Convenience Class.

**(b)** **Basis for Claims.** The Class 12 Claims are based upon Administrative Convenience.

**(c)** **Treatment.** Within one hundred twenty (120) days of the Effective Date, any unsecured creditor may give written notice to the Debtor that: (i) it has an allowed unsecured claim of less than $10,000 and elects to be included in the Administrative Convenience Class; or (ii) it has an allowed unsecured claim of

DISCLOSURE STATEMENT  -70

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

more than $10,000 that it will voluntarily agree to reduce to $10,000 for purposes of being included in the Administrative Convenience Class. Any unsecured creditor who elects to be included in the Administrative Convenience Class will receive payment from the first Installment paid to unsecured creditors in an amount equal to fifty percent (50%) of the allowed amount of its claim up to a maximum of $5,000.00. Administrative Convenience Claims shall be paid prior to any payments to unsecured creditors in Class 10.

(d) **Impairment.** Pursuant to Section 1124 of the Bankruptcy Code, Class 12 is impaired.

### Class 13     Claims Between Individual Debtors and the Dairy.

(a) **Classification.** Class 13 consists of any claims between the Individual Debtors and the Dairy. The Debtors are not aware of any such claims but to the extent such claims do exist they shall be extinguished upon the Effective Date. Class 13 does not include any claims between the Debtors and Auke Bruinsma, who is the son in law of the Individual Debtors. The claims of Auke Bruinsma against the Debtors shall be dealt with as Class 10 Unsecured Claims. In

DISCLOSURE STATEMENT -71

Steven H. Sackmann
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

addition, the Debtors will separately deal with assumption of the existing vineyard lease between the Individual Debtors and Auke Bruinsma in Section VII, below.

**(b)** **Basis for Claims.** The Class 13 claims, to the extent they exist, are based upon transfers between the Individual Debtors and the Dairy in order to support the Dairy operations.

**(c)** **Treatment.** The Class 13 Claims, to the extent they exist, will be eliminated upon the Effective Date.   The Class 13 Claims shall not receive any distributions under the Plan.

**(d)** **Impairment.** Class 13 is impaired but shall not be entitled to vote under the Plan.

**Class 14.     Equity Claims.**

**(a)** **Classification.**     Class 14 includes the claims of equity security holders Art & Theresa Mensonides in Mensonides Dairy, LLC.

**(b)** **Basis for Claims.** Art and Theresa Mensonides own 100% of the shares and membership interests in the Dairy.

DISCLOSURE STATEMENT  -72

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

**(c)    Treatment.** Art and Theresa Mensonides will retain their ownership interests in Mensonides Dairy, LLC without payment of money under the Plan.

## C.    Provisions Applicable to All Claims.

Except as indicated below, the following provisions shall be applicable to all classes of claims under the Plan:

C.1    Prepayment.  Notwithstanding any other provision of the Plan or the provisions of any creditor's loan documents/contracts, the Debtors may prepay any Claim, or portion thereof, dealt with in the Plan, without penalty at any time.  Any partial pre-payment shall be credited to the next due payment(s).

C.2    Notice of Default & Opportunity to Cure.  With respect to the payment and treatment of all Allowed Claims of all Claimants, and notwithstanding any other provision of the Plan or the provisions of any creditor's loan documents, the Debtors shall not be deemed to be in default under the terms of the Plan unless the creditor asserting such default provides (1) the Debtors with written notice of the alleged default, and (2) thirty (30) days opportunity to cure such default.  In the event the Debtors fail to: (i) cure the alleged default during the

DISCLOSURE STATEMENT  -73

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

thirty (30) day cure period; or (ii) file a motion with the Bankruptcy Court contesting the alleged default during the thirty (30) day cure period, then such creditor shall be authorized to take such action to enforce their obligations as such creditors have under applicable non-bankruptcy law. Failure of the debtor to contest or cure the default during the applicable cure period shall not constitute a waiver of any of the Debtor's claims or defenses against such creditor.

C.3    Financial Covenants.    Notwithstanding any other provisions of the Plan or of any creditor's loan documents or agreements, the  Debtors shall not be in default under the Plan based upon the failure of the Debtors to meet or satisfy any financial covenants or financial benchmarks contained in any creditor's loan documents or agreements.

C.4    Financial Reporting.    Except as provided above with respect to Farm Credit and notwithstanding any other provisions of the Plan or of any creditor's loan documents or agreements, the Debtor shall not be required to provide any financial reporting to any creditor.

### D.    Claims Objections.

The Plan provides that

DISCLOSURE STATEMENT  -74

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

D.1    The Debtor will have ninety (90) days from the Effective Date to object to Claims in Classes 3-13.

D.2    To the extent the Debtor does not object to a Class 3-13 within the time frames described above, the claim shall be an Allowed Claim in the amount: (a) of the proof of claim as filed by the Claimant; or (b) in the case that no proof of claim was filed, in the amount scheduled by the Debtor.

D.3    The Debtor shall retain under the Plan all of its rights to object to Administrative Claims, other than those Administrative Claims which have been approved by the Court.

D.4    Payments to Holders of Disputed Claims.   In the event the Debtor files an Objection to a Claim, no distribution shall be made on account of such Claim until such time as the Court has entered a Final Order allowing or disallowing such Claim.   However, until the Debtor's Objection to a Claim has been resolved, the Debtor shall segregate funds in an amount sufficient to pay such Disputed Claimant the amount the Disputed Claimant would have been entitled to receive if such Disputed Claim was an Allowed Claim.   Upon resolution of any such Disputed Claim, the Debtor shall distribute funds to such Disputed Claimant

DISCLOSURE STATEMENT  -75

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

to the extent that the resolution of the Objection results in the Disputed Claim becoming an Allowed Claim.

D.5 **Payments to Claimants Against Whom Bankruptcy Claims Exist.** To the extent that a payment would otherwise be due to a creditor in any Class, and the Debtor has or intends to assert a Bankruptcy Claim against such creditor, no payment to such creditor shall be made in accordance with §502(d) until such Bankruptcy Claims are resolved. This Section D.5 does not apply to the Class 4 Claim of Farm Credit.

D.6 **Farm Credit Balance.** Unless the parties have previously agreed upon the amount of the Farm Credit Claim Balance, Farm Credit shall deliver to the Debtors, the U.S. Trustee and to counsel for the Creditor's Committee, no later than five (5) days after the Effective Date, an itemized statement showing the balances Farm Credit contends the Debtors owe and which should be included as part of the Farm Credit Claim Balance (including separate classification of principal, interest, late fees, default interest, attorneys' fees, consultant charges or other amounts). Any interested party, including the Debtors shall have thirty (30) days to challenge the amount of the Farm Credit Claim Balance. In the event of a

DISCLOSURE STATEMENT -76

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

challenge, the Farm Credit Claim Balance shall be the amount determined by the Bankruptcy Court or otherwise agreed upon by the parties. Notwithstanding any dispute as to the Farm Credit Claim Balance, the Debtor shall make payments on the Operating Loan and Real Estate Loan pending resolution of any claims dispute.

### E. Preference and Avoidance Actions.

Any Bankruptcy Claims owned by the Debtors as of the Petition Date shall be transferred to the Debtor upon the Effective Date. Under the Plan, the Debtors reserve all of their rights to bring preference actions or other Bankruptcy Claims, except that the Debtors shall not assert any preference actions or other Bankruptcy Claims against Farm Credit, which is an oversecured creditor. The Debtor does not anticipate bringing any preference or other avoidance actions at this time, against any creditors or other parties, and notes that the Plan contemplates payment in full to all creditors. Because the Plan contemplates payment in full, the pursuit of Chapter 5 claims like would not be of benefit to the estate.

### F. Payments to Creditors Under the Plan.

All of the Payments to Creditors under the Plan will be made by the Debtor.

DISCLOSURE STATEMENT -77

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

## G. Executory Contracts and Unexpired Leases

Under the Plan, any leases or executory contracts which have not been previously assumed or rejected, will be assumed and assigned to the Debtors on the Effective Date. A list of the leases to be assumed by the Debtor are described in this Disclosure Statement.

## H. Tax Consequences of Plan

Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.

Debtors has substantial net operating loss carryforward which will be sufficient to insulate the Debtor (and its members Art and Theresa Mensonides) from any federal income tax which is due in the first several years of the Plan. In subsequent years if the Debtor is profitable it will have sufficient funds in order to pay any federal income taxes associated with such profits. All taxes resulting from the operation of the Debtor shall be reported on the personal income tax return of Art and Trijntje a/k/a Theresa Mensonides. Art and Trijntje a/k/a Theresa

DISCLOSURE STATEMENT -78

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Mensonides will be obligated to pay any federal income taxes related to the operations of the Debtor.

THE FOREGOING DESCRIPTION OF FEDERAL TAX CONSEQUENCES IS INTENDED MERELY AS AN AID FOR CREDITORS, AND NEITHER THE DEBTORS NOR THEIR COUNSEL ASSUME ANY RESPONSIBILITY IN CONNECTION WITH THE INCOME TAX LIABILITY OF ANY SUCH CREDITORS. CREDITORS ARE URGED TO OBTAIN ADVICE FROM THEIR OWN ACCOUNTANTS OR ATTORNEYS REGARDING THE TAX CONSEQUENCES OF THE PLAN.


### IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder

DISCLOSURE STATEMENT  -79

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

## A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtors believe that the following classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

| | |
|---|---|
| Class 4: | Secured Claims of Northwest Farm Credit Services, FLCA and Northwest Farm Credit Services, PCA (collectively "Farm Credit') |
| Class 5: | Secured Claims of Ag Country Farm Credit Services |
| Class 7: | Secured Claims of Balboa Capital |

DISCLOSURE STATEMENT -80

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Class 8:          Secured Claims of Deere & Company and
                  Deere Credit, Inc.

Class 10:         Unsecured Claims

Class 12:         Unsecured Claims – Administrative Convenience

The Debtors believe that the following classes are unimpaired or not entitled to vote and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

Class 1:          Administrative Claims – Professionals

Class 2:          Administrative Claims – U.S. Trustee Fees z

Class 3:          Claims of the IRS

Class 6:          Secured Claims of AgCo Finance LLC

Class 9:          Lease Claims of Northland Capital Financial Services

Class 11:         Secured Claims of Wells Fargo Home Mortgage

Class 13:         Claims Between Individual Debtors and the Dairy

Class 14:         Equity Security Holders

## 1.   What Is an Allowed Claim or an Allowed Equity Interest?

DISCLOSURE STATEMENT  -81

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtors have scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is Not Entitled to Vote

DISCLOSURE STATEMENT -82

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is

DISCLOSURE STATEMENT -83

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in Section.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

DISCLOSURE STATEMENT -84

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

## 2. Treatment of Non-Accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

## C. Liquidation Analysis

The Plan proposes to pay all creditors in Classes 1 – 13 in full, as described in the Plan. To that extent, the recovery to be received by creditors under the Plan

DISCLOSURE STATEMENT -85

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

is necessarily at least as much as such creditors would recover if this case were converted to chapter 7.

As can be seen from Section II.C. of this Disclosure Statement, Debtors' total liabilities do not exceed the Debtors' total scheduled assets. Debtors' scheduled assets in a Fair Market Value analysis total $58,544,058.80.

Liabilities based on the compilation report as of September 30, 2018, are $35,401,304.00, meaning that assets exceed debts by approximately $23,142,754.80 as of September 30, 2018. Debtors believe that the September 30, 2018 financial statements represent an accurate representation of the liabilities, but because the assets are shown at a historic adjusted cost basis under US Generally Accepted Accounting Principles, certain fair market value adjustments to the assets need to be made. These adjustments have been made to the scheduled Dairy asset values.

Debtors have done a liquidation Analysis of Dairy assets only assuming a sale of the Dairy as a going concern and assuming a sale with a loss of the dairy production base. Using this liquidation analysis, it is clear that if a sale of assets is needed, selling the dairy with the production base as a going concern would be

DISCLOSURE STATEMENT -86

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

necessary to get the creditors any type of payment. The liquidation analysis of a sale of Dairy assets with the assumptions is attached as Exhibit "4."

In performing a liquidation analysis, Debtors assume that they would immediately cease operations and liquidate their assets at whatever value could be received in the short term. In other words, the Debtors assume a worst case scenario that their assets would be liquidated in a "fire sale," with no production base, and that the sale would generate liquidation values rather than going concern values. The Debtors admit that this analysis is somewhat imprecise in that it is impossible to know with certainty what the value of these assets would be in a liquidation scenario, other than to say that the value of the Debtors' assets as a going concern, would be substantially higher than if the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code. Again, this is not a liquidation plan, but this information is given to allow creditors to see all options in this matter.

As described above, the Debtors' obligations to Farm Credit are collateralized by a significant amount of land owned by the Debtors. As the first step of the liquidation analysis, the Debtors have assumed that Farm Credit

DISCLOSURE STATEMENT -87

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

liquidates the collateral owned by the Debtors and applies the amounts received against the Debtors' obligations. The Debtors have assumed a 25% decrease in the value of the Dairy property if the dairy operation is no longer a going concern on some categorizes in the first column. Once the shipping rights are lost, the analysis assumes a 75% decrease in value on assets. As can be seen on Exhibit "4" the liquidation of the Dairy assets owned by Debtors would result in a deficit in the amount needed to pay creditors. Farm Credit would be paid in whole based on their security interests. Any remaining funds received would be pro-rated to unsecureds after secured creditors were paid.

Debtors' liquidation analysis starts with the assets described on the Debtors' schedules and discounts those assets based upon the Debtors' assumptions (described in the liquidation analysis) of what could be realized in a liquidation. The total liquidation value of the Debtors' assets is approximately as follows:

Sale of Dairy Operation before
Loss of Production Base:          Total:  $35,644,122.00


Sale of Dairy Operation after
Loss of Production Base:          Total:  $20,304,782.00

DISCLOSURE STATEMENT  -88

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

If the Dairy is sold as going concern, Exhibit "4" shows unsecured creditors may receive $1,155,116 to apply against total unsecured debt of $6,624,953.68 after payment of sale costs, federal income tax and secured debt.

If the Dairy is sold after loss of its production base, i.e. not as a going concern, unsecured creditors would receive nothing.

Under Debtors' proposed Plan unsecured creditors will receive 100% of the principal of their claims, with interest, over time. As a result, all creditors will receive more under the Plan than if the case was converted to a chapter 7.

### D.    Risk Factors Under the Plan.

A variety of factors may impact the Debtors' ability to perform under the Plan. A non-exhaustive list of these factors is as follows:

1.    The Budgets make projections as to the price of milk based upon Darigold projections as well as historical averages, however, there are always fluctuations in the price outside of the Debtors' control. The Debtors have attempted to hedge against this risk by using conservative numbers and historical averages. Further, the Debtors have attempted to give themselves some flexibility by providing for

DISCLOSURE STATEMENT -89

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

the reduction in payments to creditors in certain Classes in the event of a market failure, as well as retaining operating capital on assets that get disbursed.

2.      The Debtors Budgets rely upon the majority of the prices for farm inputs and labor remaining fairly consistent.  The Budgets also assume the availability of sufficient farm land and labor to allow the Debtors to perform in accordance with the Budgets and produce adequate feed to supply to the Dairy.  In past years both land and labor have been generally available.  While costs for both land, inputs and labor have changed over time the Debtors believe that the numbers utilized in the Budget are realistic given current information.  Substantial increases in input costs or the inability of the Debtors to procure sufficient labor could have a negative impact on the Debtors' ability to perform under the Plan.

3.      Due to milk price fluctuations, the Dairy may elect to participate in Livestock Gross Margin-Dairy, often called LGM-Dairy or Milk Insurance. This is an insurance product developed to protect against unexpected negative swings in either Chicago Board price of milk or price of corn or soybean meal. This type of insurance is flexible enough to fit most dairy farmers' needs. Due to the volume of

DISCLOSURE STATEMENT  -90

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

milk produced, it may be cost prohibitive to participate in this type of a program, but such a program will be evaluated to see if it fits with the operations of this Dairy. It specifically grants protection against the loss of gross margin, which is determined as the market value of Class III milk minus the cost of feed as per the Chicago Board. Qualification for this program is simple; only requiring that you be a milk producer in the lower 48 states.

4. Currently the Dairy has extensive insurance policies, including environmental and employee policies to protect against legal action in these two areas. The Dairy has been sued in Yakima County Superior Court under a class action alleging that employees had not been given meal breaks nor rest breaks, nor paid for pre-shift and post-shift work. The insurance policy in place prior to the suit is handling the representation of the Dairy in this matter.

5. The Debtors' Plan depends upon the continuing management of Art and Trijntje a/k/a Theresa Mensonides. The Debtors have attempted to set in place a succession plan for management in the event of the death or disability of Art Mensonides.

DISCLOSURE STATEMENT -91

**Steven H. Sackmann**
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

Dated this 26th day of November, 2018.

Mensonides Dairy, LLC

By:   ART MENSONIDES
Title: Member

Art and Trijntje a/k/a Theresa Mensonides

ART MENSONIDES

TRIJNTJE a/k/a THERESA MENSONIDES

PLAN DISCLOSURES -

Steven H. Sackmann
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636

18-01681-WLH11   Doc 265   Filed 11/26/18   Entered 11/26/18 20:39:20   Pg 92 of 93

Dated this 26th day of November, 2018.

Respectfully submitted,

/s/ Steven H. Sackmann

STEVEN H. SACKMANN, #00618
Attorney for Debtor
PO Box 409 - 455 E. Hemlock, #A
Othello, Washington 99344
(509) 488-5636


/s/ Toni Meacham
_____
TONI MEACHAM, WSBA #35068
Attorney for Debtor
1420 Scooteney Road
Connell, Washington 99326
(509) 488-3289


/s/ Roger W. Bailey
_____
ROGER W. BAILEY, WSBA #26121
Attorney for Debtors
411 North 2nd Street
Yakima, Washington  98901
(509) 248-4282

Steven H. Sackmann
Attorney at Law
PO Box 409
Othello, WA 99344
509-488-5636