Jeffrey C. Misley, WSBA #33397
jmisley@sussmanshank.com
Garrett S. Eggen (Admitted pro hac vice)
geggen@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130

*Attorneys for Matthew McKinlay,
  Plan Agent*

Honorable Whitman L. Holt
Chapter 11
Hearing Date: January 18, 2023
Hearing Time: 11:00 a.m.
Location: Telephonic

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>MENSONIDES DAIRY, LLC, and<br>ART & THERESA MENSONIDES,<br><br>Debtors. | CHAPTER 11<br><br>No. 18-01681-WLH11 LEAD CASE<br><br>No. 18-01683-WLH11<br><br>MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS BY AUCTION ON A ROLLING BASIS |

**MOTION**

Matthew McKinlay ("McKinlay"), as Plan Agent of the Debtors' First Amended Joint Chapter 11 Plan of Reorganization [Docket No. 479] (the "Plan"), hereby moves (the "Motion") this court for entry of an order, pursuant to his authority under the Plan and Order Appointing Plan Agent [Docket No. 959] (the "Plan Agent Order"), to sell the Dairy's remaining (a) heifers ("Heifers") by auction and on a rolling basis and (b) milk cows ("Milk Cows" and, together with the Heifers, the "Livestock")[1] as they

---

[1] As of December 31, 2022, the Dairy has approximately 9,300 Livestock remaining,

MOTION TO SELL DAIRY'S REMAINING
HEIFERS AND MILK COWS - PAGE 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 1 of 17

go dry by auction on a weekly basis.[2] McKinlay intends to file additional motions to sell the remaining Dairy Assets shortly hereafter. Consecutively filed herewith in support of this Motion is the Declaration of Matthew R. McKinlay (the "McKinlay Dec."). In support of the Motion, McKinlay states as follows:

## BACKGROUND

**A.  Confirmation of Plan and Rights Under the Plan and Plan Agent Order.**

On August 16, 2019, the court entered an Order Confirming the Plan [Docket No. 499]. The Plan included the classification, treatment, and impairment or non-impairment of the Debtors' creditors' claims and interests, including Northwest Farm Credit Services, PCA and FLCA (collectively, "Northwest")[3]. *See* Plan, at Art. 2. In particular, the Plan provided that Northwest's loans made to the Debtors are secured by "substantially all of the assets of the Debtors" including, among other things, the Debtors' cattle. *See id.*, at Art. 2.4(b).

The Plan also provided that "in the event the Debtors fail to cure any default during any Cure Period, Northwest shall be entitled to immediate appointment of a Plan Agent." *See id.*, at Art. 2.6(m). Upon default and the subsequent appointment of a plan agent, the Plan Agent "shall have the discretion to adjust operations as necessary to maintain positive cash flow during the marketing period" and that "[a]ny and all collateral sales proceeds (except milk proceeds) received by the Plan Agent

---

consisting of 4,750 milk cows and 4,550 heifers. The heifer count includes the 2,500 heifers that were approved to be sold at auction under Docket No. 1060. Net of those sales, scheduled to take place on January 5, 6, 12 and 13, 2023, the Dairy will have approximately 2,050 heifers remaining.

[2] McKinlay estimates that approximately 200 Milk Cows will be sold on a weekly basis as they go dry.

[3] Effective January 1, 2023, Northwest changed its name to AgWest Farm Credit, FLCA ("AgWest"). This Motion refers to both Northwest and AgWest interchangeably.

MOTION TO SELL DAIRY'S REMAINING
HEIFERS AND MILK COWS - PAGE 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 2 of 17

shall be paid to [Northwest] in order of lien priority[.]" *See id.* Further, the Plan requires the Plan Agent to "publicly list and make best efforts to sell the assets of the Debtors to pay [Northwest] and other creditors[.]" *Id.* Finally, upon appointment, the Plan Agent is authorized to "engage in any sale process he deems appropriate, and he may accept any offer he determines is in the best interests of the Estate during the Marketing Period[4], subject to Bankruptcy Court approval of any sale." *Id.* Failure to sell the Debtors' assets during this period entitles Northwest to *in rem* relief to enforce its rights in its collateral. *Id.*

Further, the Plan provides that the court retains jurisdiction "to determine all controversies, suits, and disputes that may arise in connection with interpretation, enforcement, and consummation of the Plan" and "such other matters as may be set forth in the Confirmation Order or which arise in connection with the Plan or the Confirmation Order, or may be necessary to effectuate or carry out the purposes and provisions of this Plan." *Id.* at Art. 9.1(g), (j).

**B. Debtors' Default Under the Plan and Resulting Appointment of McKinlay as Plan Agent**

On January 31, 2022, Northwest filed a motion [Docket No. 896] for entry of an order confirming that, among other things, the Debtors have defaulted under the Plan and accordingly that Northwest was entitled to the appointment of a Plan Agent ("Motion for Default").

On March 17, 2022, this court entered an order [Docket No. 921] ("Order Confirming Default") granting the Motion for Default and confirming that the Debtors defaulted under Article 2.6(j) of the Plan and failed to cure the default.

On May 13, 2022, in accordance with the Order Confirming Default, Northwest

---

[4] The Plan defines the "Marketing Period" as, after the Plan Agent is appointed, the "period of at least twelve (12) months or until the Dairy is sold, whichever is less."

MOTION TO SELL DAIRY'S REMAINING
HEIFERS AND MILK COWS - PAGE 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 3 of 17

filed a Motion for the Appointment of a Plan Agent [Docket No. 927] (the "Plan Agent Motion") seeking to appoint McKinlay as Plan Agent.

On July 12, 2022, the court entered the Plan Agent Order appointing McKinlay as Plan Agent. The Plan Agent Order grants McKinlay "exclusive possession and control over all of the Debtors' estates' and property" and authorizes the implementation of a marketing and sale plan for the Dairy as a going-concern. *See* Plan Agent Order, at Art. 5, 8. In addition, the Plan Agent Order provides McKinlay with authority to "[t]o do all things which the Debtors might do in the ordinary course of the operation and business as a going-concern[.]" *Id.* at Art. 5(d) (emphasis added). The Plan Agent Order also provides that McKinlay's "sale of any or all Dairy Assets, whether assets are . . . sold separately and not as a going-concern, shall be made pursuant to the Plan." *Id.* at Art. 8(c). Further, any "sale of the Dairy Assets outside the ordinary course of Plan Agent's business shall be subject to the approval of the court, on notice to parties-in-interest and a hearing." *Id.*

C.  **McKinlay's Tenure as Plan Agent**

   a. **The Mensonides Family's Bad Acts Require McKinlay to Seek Court Intervention**

Upon appointment as Plan Agent pursuant to the Plan Agent Order, McKinlay immediately turned his attention to preserving and maintaining the Debtors' business operations and assets in preparation for the ultimate sale of the Dairy and Dairy Assets. *See* McKinlay Decl., at ¶ 2. However, upon taking control of the Debtors, McKinlay discovered that the Dairy's available cash was seriously deficient to fund operations or meet the Dairy's ongoing financial obligations. *See id.* This required the Plan Agent to request and receive additional financial support from Northwest in order to stabilize operations and fund ongoing expenses. *See id.*

McKinlay also determined that the Mensonides family had taken substantial

MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS - PAGE 4

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 4 of 17

actions to disrupt the Dairy's operations. These actions included, among other things[5]:

a) removing critical assets and equipment from the Dairy with the help of third parties such as Narom and Sharon Berg (the "Bergs"), Pioneer Commodities LLC ("Pioneer") and others;

b) withdrawing substantial funds belonging to the Dairy for unauthorized purposes;

c) leaving almost no feed on site to care for the livestock;

d) notifying employees that the Dairy was "shutting down" and paying out all accrued paid time-off (PTO); and

e) Removing and shredding critical business records, including vehicle titles, employee files, the Nutrient Management Plan, and so forth.

*See* McKinlay Decl., at ¶ 3.

In addition, McKinlay discovered that the Dairy was missing several critical pieces of equipment that collectively held an appraised value of $467,200.00 (the "Missing Equipment").[6] *See* McKinlay Decl., at ¶ 4.

As a result of the aforementioned actions going unaddressed by the Mensonides, on August, 5, 2022, McKinlay filed an Emergency Motion to Enforce the Plan Agent Order Against the Mensonides [Docket No. 964] (the "Enforcement Motion"). The Enforcement Motion identified the problematic actions taken by the Mensonides and sought entry of an order holding the Mensonides in contempt for their failure to comply with the Plan Agent Order.

---

[5] A more detailed list of the actions that the Mensonides family members had taken immediately prior to McKinlay's appointment can be found in the Motion to Enforce the Plan Agent Order [Docket No. 964] and McKinlay's Declaration attached thereto as Exhibit 1.

[6] A list of the Missing Equipment can be found in the Motion to Enforce the Plan Agent Order [Docket No. 964] and McKinlay's Declaration attached thereto as Exhibit 1.

MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS - PAGE 5

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 5 of 17

On August 10, 2022, the court held a hearing on the Enforcement Motion. At the hearing, the court referred the parties to Judge Corbit to attempt to settle their disputes. Unfortunately, mediation with Judge Corbit yielded no tangible results. *See* McKinlay Decl., at ¶ 5.

    **b. McKinlay's Problems Operating the Dairy Continue due to the Mensonides and Other Parties' Actions[7]**

While McKinlay was ultimately able to stabilize the Dairy's milk production and milking herd and cleansed the livestock herd of bacillus cereus[8], McKinlay's problems with the Mensonides and other parties in interest continued. *See* McKinlay Decl., at ¶ 6. In particular, McKinlay began to discover that much of the Missing Equipment had been relocated through one or more of the Mensonides family members' efforts throughout the greater Mabton, Washington area. *See id.* As a result, McKinlay sought to retrieve the Missing Equipment and other property belonging to the Dairy. *See id.*

In addition to retrieving Missing Equipment and reviving the Dairy's operations, McKinlay also recognized that removal of the Mensonides' family members from the Dairy would be necessary to implement the sale of the Dairy. *See* McKinlay Decl., at

---

[7] A more detailed description of the actions taken by McKinlay to retrieve the Missing Equipment and handle the problems caused by the Bergs, Pioneer and the Mensonides family can be found in McKinlay's Status Conference Reports [Docket Nos. 983, 989, 999 and 1004] and McKinlay's Reply in Support of the Motion to Sell Certain Dairy Cattle [Docket No. 1039].

[8] Bacillus cereus is a spoilage microorganism that has been present in the Dairy's herd for several years. This prevalence of this contaminant exceeded thresholds set by the Northwest Dairy Association ("NDA"), which limited how the Dairy's milk could be produced. In November 2022, NDA notified the Plan Agent and his staff that the contaminant had been reduced significantly over the past four months, and that NDA is now able to expand the number of products that the Dairy's milk can be used for. This also opens the Dairy to new processing facilities (including the one ~10 miles away from the Dairy in Sunnyside, WA) the Dairy's milk can be sent to.

MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS - PAGE 6

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 6 of 17

¶ 7. To begin this process, McKinlay offered a solution that would result in Art and Teresa Mensonides as well as Auke and Joreen Bruinsma (the "Bruinsmas") consensually vacating the Dairy premises in a reasonable time and manner. *See id.* Unfortunately, the Mensonides and Bruinsma's rejected this offer, prompting McKinlay to obtain a court order confirming his ability to terminate the possessory interests of and initiate eviction proceedings against the Mensonides and Bruinsmas [Docket No. 1027]. *See id.*

### c. McKinlay's Decision to Sell the Dairy Assets by Auction

In addition to the above referenced issues, the Dairy also began experiencing several unrelated problems that were also beyond McKinlay's control. As a result of the worldwide supply chain and inflationary issues, lower than projected 2022 Dairy-grown and harvested feed volume, price gouging and other factors, the Dairy's feed costs exceeded initial projections by roughly 30%. *See* McKinlay Decl., at ¶ 8. This, in addition with unbudgeted manure management freight costs, seriously impacted the Dairy's cash flow. *Id.* Further, milk prices have dropped by roughly 20% over the last several months which has resulted in significantly reduced revenues to the Dairy. *See id.*

Given the Dairy's liquidity issues resulting from the foregoing problems, McKinlay determined it was necessary to sell up to 2,500 head of the Dairy's replacement heifer cattle (the "Listed Dairy Cattle") by auction to reduce operating expenses and generate much needed cash to continue operating the Dairy and work towards a sale of the Dairy and its assets. *See id.* at ¶ 9. Therefore, on December 14, 2022, McKinlay filed the Motion to Sell Certain Dairy Cattle by Auction Free and Clear of any Liens or Interests [Docket No. 1030] (the "Motion to Sell Cattle").

Shortly thereafter, on December 20, 2022, Pioneer filed an objection to the Motion to Sell Cattle. *See* Docket No. 1034 (the "Pioneer Cattle Sale Objection").

MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS - PAGE 7

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 7 of 17

The Pioneer Cattle Sale Objection primarily objected to the sale of the Listed Dairy Cattle being free and clear of all liens, claims and interests. *See id.* While the court ultimately authorized the sale of the Listed Dairy Cattle, the court deferred ruling on whether or not such sale would be free and clear of all liens, claims and interests to a future date to be determined. *See* Docket No. 1060.

While the sale of the Listed Dairy Cattle will generate much needed cash for the Dairy, operating and administrative costs have continued to strain the Dairy's liquidity. *See* McKinlay Decl., at ¶ 10. Specifically, the rising feed and administrative costs combined with lower revenues have made it difficult to maintain the Dairy's herd. *Id.* McKinlay believes that these problems will only be exacerbated throughout the coming winter months. *Id.* In addition to the foregoing, McKinlay has determined that the sale of substantially all of the Dairy Assets to a prospective purchaser as a going concern under acceptable terms is becoming less likely. *Id.* As a result, McKinlay believes it is necessary to sell the Dairy's remaining Livestock to generate cash to pay the Dairy's vendors and other operating expenses while also sharply reducing such expenses going forward, while McKinlay prepares to auction the remaining Dairy Assets. *Id.*

### d. McKinlay's Selection of Toppenish to Sell the Livestock at Auction

McKinlay has selected Toppenish Livestock ("Toppenish") as the auctioneer responsible for selling the Livestock. *See* McKinlay Decl., at ¶ 11. McKinlay proposes to sell the Heifers at various auctions held by Toppenish during the period from January 20, 2023 through January 31, 2023 and the Milk Cows at various auctions held by Toppenish during the period from February 21, 2023 through March 14, 2023. *See id.* The above provided periods are merely estimates, and McKinlay intends to exercise his reasonable business discretion in determining when to sell the Livestock and how many Livestock to sell at any given time in order to

MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS - PAGE 8

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 8 of 17

ensure the Dairy maintains enough capital to continue operating the Dairy.

Toppenish has agreed to a compensation structure whereby it will be paid a 5% commission rate from the auction proceeds at each auction held and certain other expenses incurred in auctioning the Livestock. *Id.* at ¶ 12. McKinlay believes that Toppenish's extensive experience auctioning cattle in the Eastern Washington area will result in the highest and best offers for the Livestock. *See id.*

To the extent the Dairy's existing funds are insufficient to do so, McKinlay shall set aside up to $2.25 million in sale proceeds derived from the various sales of Livestock to be used to pay the Dairy's vendors in the ordinary course of business and pursuant to the payment terms now existing between the Dairy and such vendors. *See id.* at ¶ 13. AgWest has agreed to the proposed reserve of $2.25 million which McKinlay has estimated as the amount necessary to pay the Dairy's vendors to satisfy their outstanding claims upon the conclusion of this case. *See id.* McKinlay intends to set aside this amount out of an abundance of caution and to avoid any potential harm to the Dairy's operations resulting from the failure to pay the Dairy's vendors in the ordinary course of business and pursuant to the payment terms now existing between the Dairy and such vendors. *See id.*

## **RELIEF REQUESTED**

By this Motion, McKinlay requests that this court enter an order authorizing McKinlay exercise his reasonable business discretion and without the need to obtain further orders from the court to sell the Dairy's remaining (a) Heifers by auction and on a rolling basis and (b) Milk Cows as they go dry by auction on a weekly basis. McKinlay requests that such sales be conducted by various auctions held by Toppenish and beginning on January 20, 2023. McKinlay continues to explore options for the sale of the Dairy as a going concern while preparing to sell the Dairy Assets by auction (including the Dairy's real property). As such, McKinlay reserves the right to include

MOTION TO SELL DAIRY'S REMAINING
HEIFERS AND MILK COWS - PAGE 9

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 9 of 17

any remaining Livestock in any such court-approved sale.

## NOTICE OF HEARING

The court will conduct a telephone hearing on the **18th day of January, 2023, at 11:00 a.m. (Pacific Standard Time)** to determine and rule on the Motion, and any timely filed objection thereto. Any objections must be filed in writing with the U.S. Bankruptcy Court, 904 W. Riverside Avenue, Suite 304, Spokane, Washington 99201 and served upon the Plan Agent, Matt McKinlay, 13601 West McMillan Road, Suite 102, PMB 320, Boise, Idaho 83713, and a copy to Jeffrey C. Misley, attorney for the Plan Administrator, Sussman Shank LLP, 1000 S.W. Broadway, Suite 1400, Portland, Oregon 97205 **at or before the hearing on January 18, 2023**. You may also attend the scheduled telephone hearing. Parties shall call into the number below at least ten (10) minutes prior to the start of the hearing. The courtroom deputy will take roll, after which your phone should be placed on mute until your case is called. Once you are finished with your case(s), you may hang up.

Conference Number: 1-877-402-9757

Access Code: 7036041#

If no objection is timely filed and received, McKinlay will ask the court to enter an order approving the Motion, and granting the additional relief requested herein. In the event any party timely objects to the relief requested in this Motion, McKinlay requests that the court consider the objection at the scheduled court hearing noted in this Motion.

## POINTS AND AUTHORITIES

Pursuant to the Plan and the Plan Agent Order, McKinlay was specifically retained to sell the Dairy Assets, including the Dairy's Livestock. *See* Plan at Art. 2.6(m); Plan Agent Order at Art. 8. Indeed, once McKinlay determines that a sale of any of the Dairy Assets is "in the best interests of the Estate," he need only obtain court

MOTION TO SELL DAIRY'S REMAINING
HEIFERS AND MILK COWS - PAGE 10

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 10 of 17

approval to consummate the sale. *See* Plan, at Art. 2.6(m). For the reasons set forth below, selling the Livestock on a rolling basis and by auction is clearly in the best interests of the Debtors' estate and a valid exercise of McKinlay's business judgment.

As an initial matter, the Dairy's cash flow problems have limited the options available to McKinlay to sell the Dairy Assets. *See* McKinlay Decl., at ¶ 14. These cash flow problems are due to a variety of unforeseen circumstances, including significant operating and administrative costs, reduced revenues, and the actions taken by the Mensonides and others to frustrate McKinlay's ability to operate the Dairy. *See id.* While McKinlay has taken substantial steps towards mitigating these problems, these efforts have come at a great administrative cost and will likely continue until McKinlay can consummate the sale of the Dairy Assets. *See id.* In addition, McKinlay continues to incur considerable expenses caring for the Livestock in light of the harsh winter conditions that will likely only worsen over time. *See id.* McKinlay has determined that the sale of the Livestock as effectively and efficiently as possible under the circumstances is necessary. *See id.*

McKinlay also believes that Toppenish's experience auctioning farming cattle in the Eastern Washington area will help maximize the value of the Livestock to the benefit of the Debtors' creditors. *See id.* at ¶ 15. The collective value of the Livestock to be sold by auction is expected to net a substantial recovery for the Debtors' estate. *See id.* McKinlay believes that this recovery would likely be unattainable if any other sale procedure was used to sell the Livestock. *See id.*

Toppenish's experience auctioning cattle will streamline the process for selling the Livestock without incurring substantial administrative expenses. *See id.* at ¶ 16. In addition, selling the Livestock on a rolling basis and authorizing McKinlay to use such sale proceeds to pay the Dairy's vendors will ensure that the Dairy has the sufficient cash, feed and other commodities to continue operating until McKinlay

MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS - PAGE 11

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 11 of 17

succeeds in selling the Dairy Assets. *See id.* Finally, McKinlay has determined it is best to initiate a phased approach to the sale of assets, beginning with Livestock and moving on to equipment and the real property, which will be the subject of motions to be filed shortly hereafter. *See id.* Given the cash position of the Dairy, McKinlay has determined that the sale by an experienced auctioneer on a short timeframe will likely yield the greatest recoveries for the Livestock and allow the Dairy to continue operating until the conclusion of this case. *See id.*

## **CONCLUSION**

Accordingly, and for the reasons set forth herein, McKinlay requests that this court enter an order granting the relief requested herein. A proposed form of order is attached hereto and marked as Exhibit A.

Dated this 6th day of January, 2023.

SUSSMAN SHANK LLP

By  */s/ Jeffrey C. Misley*
Jeffrey C. Misley, WSBA 33397
Garrett S. Eggen (Admitted pro hac vice)
Attorneys for Matt McKinlay
in his capacity as Plan Agent

MOTION TO SELL DAIRY'S REMAINING
HEIFERS AND MILK COWS - PAGE 12

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 12 of 17

| | |
|---|---|
| **1** | |
| **2** | |
| **3** | |
| **4** | |
| **5** | |
| **6** | |
| **7** | |

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | CHAPTER 11 |
| MENSONIDES DAIRY, LLC, and ART & THERESA MENSONIDES, | No. 18-01681-WLH11 LEAD CASE |
| | No. 18-01683-WLH11 |
| Debtors. | **[PROPOSED]** ORDER GRANTING MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS BY AUCTION ON A ROLLING BASIS |

This matter having come before the court on the Motion (the "Motion")[1] of Matthew McKinlay ("McKinlay"), as Plan Agent of the Debtors' First Amended Joint Chapter 11 Plan of Reorganization [Docket No. 479] (the "Plan"), for entry of an order authorizing McKinlay to sell the Dairy's remaining (a) heifers ("Heifers") by auction and on a rolling basis and (b) milk cows ("Milk Cows" and, together with the Heifers,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Plan Agent Order, as applicable.

ORDER GRANTING MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS BY AUCTION ON A ROLLING BASIS - PAGE 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1 the "Livestock") as they go dry by auction on a weekly basis, pursuant to the Order
2 Appointing Plan Agent [Docket No. 959] (the "Plan Agent Order"), and the court
3 having reviewed the Motion and the supporting Declaration of Matthew McKinlay,
4 and the court's files herein; and this court having jurisdiction and authority over this
5 matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and the Confirmation Order
6 [Docket No. 499] and the Plan Agent Order; and the court finding cause exists to grant
7 certain relief requested in the Motion. Now, therefore, it is hereby

8 ORDERED:

9 1. The Motion is GRANTED as set forth herein;

10 2. McKinlay is authorized to retain Toppenish Livestock ("Toppenish") to sell (a) Heifers by auction and on a rolling basis and (b) Milk Cows as they go dry by auction on a weekly basis;

13 3. McKinlay is authorized to sell the Livestock per above at various auctions held by Toppenish and pursuant to the terms set forth in the Auction Agreement beginning on January 19, 2023;

16 4. Toppenish shall be paid a 5% commission rate from the auction proceeds and certain other expenses incurred in auctioning the Livestock;

18 5. McKinlay retains the right to include any remaining Livestock in a sale of the Dairy as a going concern or of the Dairy Assets (including the Dairy's real property) upon entry of a subsequent court order approving such a sale; and

21 //
22 //
23 //
24 //
25 //
26

ORDER GRANTING MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS BY AUCTION ON A ROLLING BASIS - PAGE 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Exhibit A
Page 2 of 3
18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 14 of 17

1.       6.     McKinlay is authorized to execute such documents and take such further actions as may be necessary or appropriate to accomplish the terms of this order.

// END OF ORDER //

PRESENTED BY:

SUSSMAN SHANK LLP

By   */s/ Jeffrey C. Misley*
      Jeffrey C. Misley, WSBA #33397
      *Attorneys for Matthew McKinlay, Plan Agent*

*24172-012\PROPOSED ORDER RE MOTION TO SELL LIVESTOCK BY AUCTION (1.6.23) (04156065);1*

ORDER GRANTING MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS BY AUCTION ON A ROLLING BASIS - PAGE 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

# CERTIFICATE OF SERVICE

I, Janine E. Hume declare as follows:

I am employed in the County of Multnomah, state of Oregon; I am over the age of eighteen years and am not a party to this action; my business address is 1000 S.W. Broadway, Suite 1400, Portland, Oregon 97205-3089, in said county and state.

I certify that on January 6, 2023, I served, **via first class mail**, a full and correct copy of the foregoing **MOTION TO SELL DAIRY'S REMAINING HEIFERS AND MILK COWS BY AUCTION ON A ROLLING BASIS**, to the parties of record, addressed as follows:

James L. Carman
1116 11th Street
Benton City, WA 99320

Jennifer A. Carman
1116 11th Street
Benton City, WA 99320

Danny R. Hicks
4441 Becker Rd.
Toppenish, WA 98948

Angie Lee
Office of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104

I also certify that on January 6, 2023, I served the above-referenced document(s) on all ECF participants as indicated on the Court's Cm/ECF system.

//
//
//
//
//

CERTIFICATE OF SERVICE - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 16 of 17

1     I swear under penalty of perjury that the foregoing is true and correct to the
2 best of my knowledge, information, and belief.
3     Dated: January 6, 2023.

                */s/ Janine E. Hume*
                Janine E. Hume, Legal Assistant

CERTIFICATE OF SERVICE - Page 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1067    Filed 01/06/23    Entered 01/06/23 16:36:40    Pg 17 of 17