Jeffrey C. Misley, WSBA #33397
jmisley@sussmanshank.com
Garrett S. Eggen (Admitted pro hac vice)
geggen@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130

*Attorneys for Matthew McKinlay,*
  *Plan Agent*

Honorable Whitman L. Holt
Chapter 11
Hearing Date: January 18, 2023
Hearing Time: 11:00 a.m.
Location: Telephonic

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>MENSONIDES DAIRY, LLC, and<br>ART & THERESA MENSONIDES,<br><br>         Debtors. | CHAPTER 11<br><br>No. 18-01681-WLH11 LEAD CASE<br><br>No. 18-01683-WLH11<br><br>MOTION TO SELL DAIRY'S REAL PROPERTY BY AUCTION AND CERTAIN RELATED RELIEF |

## **MOTION**

Matthew McKinlay ("McKinlay"), as Plan Agent of the Debtors' First Amended Joint Chapter 11 Plan of Reorganization [Docket No. 479] (the "Plan"), hereby moves (the "Motion") this court for entry of an order, pursuant to his authority under the Plan and Order Appointing Plan Agent [Docket No. 959] (the "Plan Agent Order"), to sell the feedlot (the "Feedlot") and main dairy ("Main Dairy" and, together with the Feedlot, the "Real Property")[1] owned by Art and Teresa Mensonides by auction and

---

[1] A more detailed description of the Real Property is attached hereto as Exhibit A.

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

certain related relief.  Consequently filed herewith in support of this Motion is the Declaration of Matthew R. McKinlay (the "McKinlay Dec.").  In support of the Motion, McKinlay states as follows:

## BACKGROUND

A. **Confirmation of Plan and Rights Under the Plan and Plan Agent Order.**

On August 16, 2019, the court entered an Order Confirming the Plan [Docket No. 499].  The Plan included the classification, treatment, and impairment or non-impairment of the Debtors' creditors' claims and interests, including AgWest Farm Credit Services, PCA and FLCA (formerly known as Northwest Farm Credit Services, PCA and FLCA, referred to interchangeable herein as, collectively, "Northwest" or "AgWest"). *See* Plan, at Art. 2.  In particular, the Plan provided that Northwest's loans made to the Debtors are secured by "substantially all of the assets of the Debtors" including, among other things, the Debtors' cattle. *See id.*, at Art. 2.4(b).

The Plan also provided that "in the event the Debtors fail to cure any default during any Cure Period, Northwest shall be entitled to immediate appointment of a Plan Agent." *See id.*, at Art. 2.6(m).  Upon default and the subsequent appointment of a plan agent, the Plan Agent "shall have the discretion to adjust operations as necessary to maintain positive cash flow during the marketing period" and that "[a]ny and all collateral sales proceeds (except milk proceeds) received by the Plan Agent shall be paid to [Northwest] in order of lien priority[.]" *See id.*  Further, the Plan requires the Plan Agent to "publicly list and make best efforts to sell the assets of the Debtors to pay [Northwest] and other creditors[.]" *Id.*  Finally, upon appointment, the Plan Agent is authorized to "engage in any sale process he deems appropriate, and he may accept any offer he determines is in the best interests of the Estate during the Marketing Period[2], subject to Bankruptcy Court approval of any sale." *Id.*  Failure to

---

[2] The Plan defines the "Marketing Period" as, after the Plan Agent is appointed, the

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1 sell the Debtors' assets during this period entitles Northwest to *in rem* relief to enforce

2 its rights in its collateral. *Id.*

3 Further, the Plan provides that the court retains jurisdiction "to determine all

4 controversies, suits, and disputes that may arise in connection with interpretation,

5 enforcement, and consummation of the Plan" and "such other matters as may be set

6 forth in the Confirmation Order or which arise in connection with the Plan or the

7 Confirmation Order, or may be necessary to effectuate or carry out the purposes and

8 provisions of this Plan." *Id.* at Art. 9.1(g), (j).

9
10 **B.     Debtors' Default Under the Plan and Resulting Appointment of McKinlay as Plan Agent**

11 On January 31, 2022, Northwest filed a motion [Docket No. 896] for entry of

12 an order confirming that, among other things, the Debtors have defaulted under the

13 Plan and accordingly that Northwest was entitled to the appointment of a Plan Agent

14 ("Motion for Default").

15 On March 17, 2022, this court entered an order [Docket No. 921] ("Order

16 Confirming Default") granting the Motion for Default and confirming that the Debtors

17 defaulted under Article 2.6(j) of the Plan and failed to cure the default.

18 On May 13, 2022, in accordance with the Order Confirming Default, Northwest

19 filed a Motion for the Appointment of a Plan Agent [Docket No. 927] (the "Plan Agent

20 Motion") seeking to appoint McKinlay as Plan Agent.

21 On July 12, 2022, the court entered the Plan Agent Order appointing McKinlay

22 as Plan Agent. The Plan Agent Order grants McKinlay "exclusive possession and

23 control over all of the Debtors' estates' and property" and authorizes the

24 implementation of a marketing and sale plan for the Dairy as a going-concern. *See*

25 Plan Agent Order, at Art. 5, 8.  In addition, the Plan Agent Order provides McKinlay

26 _____

"period of at least twelve (12) months or until the Dairy is sold, whichever is less."

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

with authority to "[t]o do all things which the Debtors might do in the ordinary course of the operation and business as a going-concern[.]" *Id.* at Art. 5(d) (emphasis added). The Plan Agent Order also provides that McKinlay's "sale of any or all Dairy Assets, whether assets are . . . sold separately and not as a going-concern, shall be made pursuant to the Plan." *Id.* at Art. 8(c). Finally, the Plan Agent Order provides that:

> In the event [that] one or more Triggering Events occur . . . the Plan Agent shall have the discretion as to when, what and how to market and sell the Dairy Assets, ***including the selling or auctioning any and/or all Dairy Assets in separate lots*** and ***not as*** a ***going-concern***, pursuant to the terms of the Plan, this Order and further orders of this court.

Plan Agent Order, at § 8(b) (emphasis added).

## C. McKinlay's Tenure as Plan Agent

### a. The Mensonides Family's Bad Acts Require McKinlay to Seek Court Intervention

Upon appointment as Plan Agent pursuant to the Plan Agent Order, McKinlay immediately turned his attention to preserving and maintaining the Debtors' business operations and assets in preparation for the ultimate sale of the Dairy and Dairy Assets. *See* McKinlay Decl., at ¶ 2. However, immediately upon taking control of the Debtors and after certain of the Mensonides family members had rejected his offer to continue working for the Dairy in management roles, McKinlay discovered that the Dairy's available cash was seriously deficient to fund operations or meet the Dairy's ongoing financial obligations. *See id.* This required the Plan Agent to expend considerable resources and request and receive additional financial support from Northwest in order to stabilize operations and fund ongoing expenses. *See id.*

McKinlay also determined that the Mensonides family had taken substantial actions to disrupt the Dairy's operations. These actions included, among other things[3]:

---

[3] A more detailed list of the actions that the Mensonides family members had taken immediately prior to McKinlay's appointment can be found in the Motion to Enforce the Plan Agent Order

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 4

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    a) removing critical assets and equipment from the Dairy with the help of third
2       parties such as Narom Berg, Pioneer and others;
3    b) withdrawing substantial funds belonging to the Dairy for unauthorized
4       purposes;
5    c) leaving almost no feed on site to care for the livestock;
6    d) notifying employees that the Dairy was "shutting down" and paying out all
7       accrued paid time-off (PTO); and
8    e) Removing and shredding critical business records, including vehicle titles,
9       employee files, the Nutrient Management Plan, and so forth.

10    *See* McKinlay Decl., at ¶ 3.

11       In addition, McKinlay discovered that the Dairy was missing several critical

12    pieces of equipment that collectively held an appraised value of $467,200.00 (the

13    "Missing Equipment").[4]  *See* McKinlay Decl., at ¶ 4.

14       As a result of the aforementioned actions going unaddressed by the Mensonides,

15    on August, 5, 2022, McKinlay filed an Emergency Motion to Enforce the Plan Agent

16    Order Against the Mensonides [Docket No. 964] (the "Enforcement Motion").  The

17    Enforcement Motion identified the problematic actions taken by the Mensonides and

18    sought entry of an order holding the Mensonides in contempt for their failure to comply

19    with the Plan Agent Order.

20       On August 10, 2022, the court held a hearing on the Enforcement Motion.  At

21    the hearing, the court referred the parties to Judge Corbit to attempt to settle their

22    disputes.  Unfortunately, mediation with Judge Corbit yielded no tangible results.  *See*

23    McKinlay Decl., at ¶ 5.

24    ───────────────

25    [Docket No. 964] and McKinlay's Declaration attached thereto as Exhibit 1.

26    [4] A list of the Missing Equipment can be found in the Motion to Enforce the Plan Agent Order
     [Docket No. 964] and McKinlay's Declaration attached thereto as Exhibit 1.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

### b. McKinlay's Problems Operating the Dairy Continue due to the Mensonides and Other Parties' Actions[5]

While McKinlay was ultimately able to stabilize the Dairy's milk production and milking herd and cleansed the livestock herd of bacillus cereus[6], McKinlay's problems with the Mensonides and other parties in interest continued. *See* McKinlay Decl., at ¶ 6. In particular, McKinlay began to discover that much of the Missing Equipment had been relocated through one or more of the Mensonides family members' efforts throughout the greater Mabton, Washington area. *See id.* As a result, McKinlay sought to retrieve the Missing Equipment and other property belonging to the Dairy. *See id.*

In addition to retrieving Missing Equipment and reviving the Dairy's operations, McKinlay also recognized that removal of the Mensonides' family members from the Dairy would be necessary to implement the sale of the Dairy. *See* McKinlay Decl., at ¶ 7. To begin this process, McKinlay offered a solution that would result in the Art and Teresa Mensonides as well as Auke and Joreen Bruinsma (the "Bruinsmas") consensually vacating the Dairy premises in a reasonable time and manner. *See id.* Unfortunately, the Mensonides and Bruinsma's rejected this offer, prompting McKinlay to obtain a court order confirming his ability to terminate the possessory interests of and initiate eviction proceedings against the Mensonides and Bruinsmas

---

[5] A more detailed description of the actions taken by McKinlay to retrieve the Missing Equipment and handle the problems caused by Narom and Sharon Berg (the "Bergs"), Pioneer Commodities, LLC ("Pioneer") and the Mensonides family can be found in McKinlay's Status Conference Reports [Docket Nos. 983, 989, 999 and 1004] and McKinlay's Reply in Support of the Motion to Sell Certain Dairy Cattle [Docket No. 1039].

[6] Bacillus cereus is a spoilage microorganism that has been present in the Dairy's herd for several years. This prevalence of this contaminant exceeded thresholds set by the Northwest Dairy Association ("NDA"), which limited how the Dairy's milk could be produced. In November 2022, NDA notified the Plan Agent and his staff that the contaminant had been reduced significantly over the past four months, and that NDA is now able to expand the number of products that the Dairy's milk can be used for. This also opens the Dairy to new processing facilities (including the one ~10 miles away from the Dairy in Sunnyside, WA) the Dairy's milk can be sent to.

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 6

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1 [Docket No. 1027].  *See id.*

2 **c. McKinlay's Decision to Sell the Dairy Assets by Auction**

3 In addition to the above referenced issues, the Dairy also began experiencing

4 several unrelated problems that were also beyond McKinlay's control.  As a result of

5 the worldwide supply chain and inflationary issues, lower than projected 2022 Dairy-

6 grown and harvested feed volume, price gouging and other factors, the Dairy's feed

7 costs exceeded initial projections by roughly 30%.  *See* McKinlay Decl., at ¶ 8.  This,

8 in addition to unbudgeted manure management freight costs, seriously impacted the

9 Dairy's cash flow.  *Id.*  Further, milk prices have dropped by roughly 20% over the

10 last several months which has resulted in significantly reduced revenues to the Dairy.

11 *See id.*

12 Given the Dairy's liquidity issues resulting from the foregoing problems,

13 McKinlay determined it was necessary to sell up to 2,500 head of the Dairy's

14 replacement heifer cattle (the "Listed Dairy Cattle") by auction to reduce operating

15 expenses and generate much needed cash to continue operating the Dairy and work

16 towards a sale of the Dairy and its assets.  *See id.* at ¶ 9.  Therefore, on December 14,

17 2022, McKinlay filed the Motion to Sell Certain Dairy Cattle by Auction Free and

18 Clear of any Liens or Interests [Docket No. 1030] (the "Motion to Sell Cattle").

19 Shortly thereafter, on December 20, 2022, Pioneer filed an objection to the

20 Motion to Sell Cattle.  *See* Docket No. 1034 (the "Pioneer Cattle Sale Objection").

21 The Pioneer Cattle Sale Objection primarily objected to the sale of the Listed Dairy

22 Cattle being free and clear of all liens, claims and interests.  *See id.*  While the court

23 ultimately authorized the sale of the Listed Dairy Cattle, the court deferred ruling on

24 whether or not such sale would be free and clear of all liens, claims and interests to a

25 future date to be determined.  *See* Docket No. 1060 (the "Cattle Sale Order").

26 While the sale of the Listed Dairy Cattle will generate much needed cash for the

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 7

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1070    Filed 01/10/23    Entered 01/10/23 21:22:52    Pg 7 of 37

Dairy, operating and administrative costs have continued to strain the Dairy's liquidity. *See* McKinlay Decl., at ¶ 10. Specifically, the rising feed and administrative costs combined with lower revenues have made it difficult to maintain the Dairy's herd. *Id.* McKinlay believes that these problems will only be exacerbated throughout the coming winter months. *Id.* In addition to the foregoing, McKinlay determined that the sale of substantially all of the Dairy Assets to a prospective purchaser as a going concern under acceptable terms is becoming less likely. *Id.* As a result, McKinlay decided that the sale of the Dairy's remaining Livestock as part of a broader plan to sell the Dairy's remaining assets, including the Real Property, was in the best interests of the Debtors' estate for the following reasons.

As an initial matter, the Dairy's limited cash has constrained McKinlay's ability to both operate the Dairy and pursue a drawn-out sale process. *Id.* at ¶ 11. Thus, McKinlay does not believe that the Dairy can fund the administrative expenses associated with negotiating the terms of an asset purchase agreement and providing a lengthy due diligence period to a potential purchaser for the Dairy Assets. *See id.* Further, any purchaser would likely demand that the sale be free and clear of any liens, interests and claims and McKinlay is unable to guarantee that such a sale would be approved. *Id.* Given these contingencies, McKinlay believes that the sale of the Dairy Assets by auction is in the best interests of the Debtors' estate.

Moreover, several "Triggering Events" contemplated by the Plan Agent Order have occurred, thereby activating McKinlay's authority to sell the Dairy Assets by auction, in separate lots and not as a going-concern. *See* Plan Agent Order, at § 8(b). These include:

1. Defaults in the covenants set forth in Exhibit C – Operational Covenants:

   a. The Dairy has failed to maintain the total minimum herd size of 11,000 head.

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 8

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

b. McKinlay has been unable to provide AgWest with the original vehicle titles of all Dairy titled vehicles which are AgWest's collateral due to the fact that the Mensonides family has removed many of these vehicle titles.

c. The Dairy has suffered from two consecutive months of negative net income under the CPA compiled financial reports in the months of July and August 2022. As detailed more fully above, the July and August 2022 months net income problems are largely due to the state in which the Mensonides family left the Dairy.

2. The Dairy has failed to maintain at least cash flow neutral as measured by the Plan Agent Weekly and Monthly Cash Flow Budget and Variance Reports. *See e.g.*, Docket No. 1004, at p. 4. This is largely due to the increased operating and administrative expenses combined with lower revenues described more fully above.

3. The Dairy has lost its normal manure handling and processing capabilities due to the party responsible for handling the Dairy's liquid manure terminating its agreement with the Dairy prior to McKinlay's appointment as Plan Agent. *See* Docket No. 1004, at p. 4.

*See* Plan Agent Order, at § 8(b), Exs. C and D; McKinlay Decl., at ¶ 12.

McKinlay intends to sell the Dairy's Real Property, livestock, feed, equipment and titled vehicles at auction as outlined in <u>Exhibit C</u>. This Motion addresses the proposed auction of the Real Property and feed, and separate motions for orders authorizing the auction sales of the Dairy's, equipment and titled vehicles are filed contemporaneously herewith.[7]

---

[7] McKinlay filed the motion to sell the Dairy's remaining livestock by auction on January 6, 2023. *See* Docket No. 1067 (the "Motion to Sell Remaining Livestock").

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

### d. McKinlay's Selection of Skye Root to Sell the Real Property at Auction and by Utilizing the Bidding Procedures

The Plan Agent Order authorizes McKinlay to employ Skye Root on behalf of Root Realty, LLC ("Skye Root") as the Listing Agent to sell the Dairy as a going-concern. *See* Plan Agent Order, at Art. 8(a). Accordingly, shortly after his appointment, McKinlay retained Skye Root to market, list and sell the Dairy. *See* McKinlay Decl., at ¶ 16. Since then, Skye Root has gathered requisite information from the Dairy and solicited interest from potential purchasers in the hopes of consummating a sale of the Dairy as a going-concern. *See id.*

While Skye Root was working towards the sale of the Dairy as a going-concern, McKinlay has recognized (as noted above) that there are several potential barriers to selling the Dairy under a private sale with acceptable terms. *See id.* at ¶ 17. As a result, McKinlay has determined that the sale of the Real Property with Skye Root as the broker who will conduct the auction of the Real Property is in the best interests of the Debtors' estate. *See id.*

McKinlay believes that Skye Root's extensive experience facilitating farmland sales throughout the Western United States will result in the highest and best offer for the Real Property. *See id.* at ¶ 18. McKinlay further believes that Skye Root's familiarity with the Real Property through its initial retention and its working relationship with parties who have already expressed interest in purchasing the Dairy will also help yield the highest and best offer for the Real Property. *See id.*

Skye Root has agreed to a compensation structure whereby it will be paid a 2% commission for a sales transaction without a cooperating broker, and a 3% commission rate (split 50/50) for a sales transaction with a cooperating broker[8] from the auction

---

[8] Root Realty LLC has been marketing the property as a going concern for several months and has a log of all contacted parties. No cooperative commission will be shared with brokers representing buyers that are included in this log.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  proceeds and certain other expenses incurred in auctioning the Dairy. *Id.* at ¶ 19. As

2  set forth more fully below, McKinlay, through Skye Root, will also provide potential

3  purchasers with the opportunity to purchase the Dairy's livestock, feed, equipment and

4  titled vehicles in connection with the sale of the Real Property.  Therefore, Skye Root's

5  commission rate will be inclusive of the aggregate purchase price received for the total

6  amount of property sold. *Id.*

7         The auction will also be conducted by utilizing the following procedures (the

8  "Bidding Procedures"):[9]

9         i.    Skye Root will qualify all potential buyers by the end of business on or

10               about February 10, 2023.  Qualified Buyers[10] must agree to a minimum

11               bid amount for the Feedlot, Main Dairy or the Real Property as a whole,

12               and fund an earnest money deposit in accordance with the terms specified

13               in Exhibit B ("Qualified Buyers").  Qualified Buyers must also provide

14               an expression of interest in purchasing (a) all of the equipment and

15               vehicles, and/or (b) all of the remaining livestock and feed for a price that

16               is no less than the minimum bid set by Skye Root and McKinlay (subject

17               to the motions to sell such items filed contemporaneously herewith). If

18               any Qualified Buyer wishes to also purchase any or all of the foregoing

19               assets in addition to the Feedlot, Main Dairy or the Real Property as a

20

21  ───────────────

22  [9] As set forth more fully in the Bidding Procedures, parties may submit bids for the Feedlot, Main
    Dairy or the Real Property as a whole.  Parties may also bid on the Dairy's equipment and vehicles

23  and/or all of the Dairy's remaining livestock and feed.  Given this bidding structure, McKinlay
    anticipates receiving bid packages that encompass a variety of the assets and property to be sold

24  pursuant to this Motion.  Accordingly, the Bidding Procedures' and Additional Auction Terms' (as
    defined herein) use of the singular when referring to bids, bidders, holders of bids and the like

25  includes the plural use of such terms where appropriate.

    [10] AgWest is deemed a Qualified Buyer and may credit bid for the assets being sold pursuant to all
26  applicable laws and pursuant to the Plan Agent's determination that allowing such credit bidding is
    appropriate, so long as AgWest's credit bidding is limited to AgWest's collateral.

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 11

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1070    Filed 01/10/23    Entered 01/10/23 21:22:52    Pg 11 of 37

whole, then such Qualified Buyer must also fund an earnest money deposit[11] in accordance with the terms specified in <u>Exhibit B</u> for each asset they wish to bid on.[12]

    ii.    The auction shall be held on or about February 20, 2023 at 1:00 PM PT at the Holiday Inn Express at 680 Wine Country Road, Prosser, WA 99350 and also by Zoom. To the extent that bids are not received so as to auction off all of the Real Property on a consolidated basis, separate auctions for both the Feedlot and the Main Dairy will occur on this date. A Zoom invitation will be provided to Qualified Buyers on or about February 13, 2023. Qualified Buyers wishing to participate in the auction must appear in person or by Zoom. Qualified Buyers may appear personally, or through a duly authorized representative at the auction.

    iii.    In order to be eligible to participate as a bidder at the auction, each Qualified Buyer must submit an earnest money deposit equal to the amounts listed in <u>Exhibit B</u> in cash or other readily available funds to Chicago Title commensurately with the submission of their bid by the end of business on February 10, 2023, or the date by which bids are due as otherwise advertised. Each Qualified Buyer's earnest money deposit will be placed in an escrow account with Chicago Title.

    iv.    Bidding will be conducted in rounds by submission of higher or otherwise better bids. Skye Root shall determine the order of bidding any particular round.

---

[11] AgWest shall not be required to fund an earnest money deposit to the extent it submits a credit bid for any of its collateral.

[12] As set forth in the aforementioned Motion to Sell Remaining Livestock, McKinlay has requested authority to sell the Dairy's livestock on a rolling basis. Accordingly, the Qualified Buyers' expressions of interest will apply only to the purchase of the Dairy's livestock remaining on the Dairy on February 13, 2023.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1      v.    All bids submitted in subsequent rounds must exceed the previous

2        round's highest and otherwise best bid by no less than $100,000 in the

3        aggregate. Skye Root will announce all bids submitted during a particular

4        round as and when they are submitted.

5      vi.    A bidder may pass in any round.

6      vii.    At the end of each round, Skye Root, in consultation with McKinlay, will

7        announce on the record, the highest and otherwise best bid submitted in

8        that round.

9      viii.    The bidding will continue until no additional bids are submitted in a

10        particular round at which time Skye Root will announce that the auction

11        is concluded.

12      ix.    Notwithstanding the foregoing, Skye Root, in consultation with

13        McKinlay, shall have the right to declare the auction concluded at any

14        time.

15      x.    Skye Root, after consultation with McKinlay, shall announce at the

16        conclusion of the auction which bid it has determined to be the highest

17        or otherwise best bid for the Real Property.

18     The following terms shall also govern the auction of the Dairy (the "Additional

19 Auction Terms"):

20      i.    McKinlay reserves the right to select the winning bid among the bids

21        submitted at the auction, even if such bid is not the highest bid provided

22        that McKinlay otherwise determines it to be the best bid for the Real

23        Property based on other factors and in the best interests of the Debtors'

24        estate.   McKinlay also reserves the right to designate the second highest

25        or otherwise best bid at the auction to be a back-up bid and, if so

26        designated, Skye Root will announce at the conclusion of the auction

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

| | |
|---|---|
| 1 | which bid was been determined to be the back-up bid. McKinlay also |
| 2 | reserves the right to select multiple winning bids and back-up bids to |
| 3 | account for the variety of bid packages that may be submitted for the |
| 4 | Feedlot, Main Dairy or Real Property as a whole.[13] |
| 5 | ii. McKinlay shall file a notice identifying the winning bidder(s) and back- |
| 6 | up bidder(s) on the court's docket within three business days after the |
| 7 | conclusion of the auction. |
| 8 | iii. McKinlay intends to file a notice of Real Estate Purchase and Sale |
| 9 | Agreement (the "Purchase Agreement") shortly hereafter which shall |
| 10 | contain the terms and conditions that will apply to the sale transaction and |
| 11 | which will include a form of Quit Claim Deed to be used for the |
| 12 | conveyance of the Real Property. The party submitting the winning bid |
| 13 | will be required, promptly after the conclusion of the auction, to sign the |
| 14 | Purchase Agreement in substantially the same form as submitted in the |
| 15 | notice, together with any other agreements or documents for the sale of |
| 16 | the Real Property and any other assets to be sold as set forth in such |
| 17 | party's winning bid, in each case in the form presented by the |
| 18 | McKinlay.[14] |
| 19 | iv. In the event McKinlay designated a second highest or otherwise best bid |
| 20 | as a back-up bid, the holder of the back-up bid shall be obligated to close |

---

[13] To demonstrate, and for illustrative purposes only, McKinlay may determine that the winning bid is a bid to purchase the Real Property as a whole, but that the second highest or otherwise best bids are separate bids for the Feedlot and the Dairy. Accordingly, McKinlay reserves the right to select any combination of bids to be the winning bid(s) and back-up bid(s) to the extent that such bids are the determined to be the highest and otherwise best bid(s) and second highest or otherwise best bid(s).

[14] To the extent AgWest's credit bid is selected as the winning bid, the Purchase and Sale Agreement that is filed pursuant to the aforementioned notice may need to be further revised to address the unique nature of AgWest's credit bid that will likely contain materially different terms than the bids received from parties who do not have liens on all of the property to be sold.

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 14

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    the transaction pursuant to the Purchase Agreement if the holder of the
2    winning bid for any reason fails or breaches its obligation to do so.  Other
3    than the earnest money deposits of the holders of the winning bid and the
4    back-up bid which shall be retained until the closing of the purchase and
5    sale of the Real Property, the earnest money deposits of other bidders
6    shall be returned within two business days after the conclusion of the
7    auction.  The earnest money deposit submitted by the winning bidder or
8    back-up bidder, as applicable, who closes the purchase and sale shall be
9    applied as a credit to the purchase price of the Real Property upon closing.

10   v.    If for any reason the winning bidder fails to consummate a sale of the
11         Real Property, the holder of the back-up bid will automatically be deemed
12         to have submitted the highest or otherwise best bid and McKinlay is
13         authorized to effect the sale of the Real Property to such bidder as soon
14         as is commercially reasonable without further order of the court.  If a
15         failure by either the winning bidder or back-up bidder, as applicable, to
16         consummate the purchase and sale is the result of a breach by such bidder,
17         that bidder's earnest money deposit shall be forfeited to McKinlay and
18         McKinlay specifically reserves the right to seek all available damages
19         from such defaulting bidder.  Otherwise, the earnest money deposit of the
20         bidder that does not consummate the purchase and sale will be returned
21         within two business days after such closing.

22   vi.   The date by which the winning bidder or the back-up bidder, as
23         applicable, must close on the sale of the Real Estate shall be no later than
24         March 14, 2023.

25         To the extent the Dairy's existing funds are insufficient to do so and to the extent
26   that any livestock or feed are sold pursuant to this Motion and not the Motion to Sell

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1 Remaining Livestock (which also requests this specific relief), McKinlay shall set

2 aside up to $2.25 million in sale proceeds derived from the various sales of livestock

3 to be used to pay the Dairy's vendors in the ordinary course of business and pursuant

4 to the payment terms now existing between the Dairy and such vendors. *See* McKinlay

5 Decl., at ¶ 20. AgWest has agreed to the proposed reserve of $2.25 million which

6 McKinlay has estimated as the amount necessary to pay the Dairy's vendors to satisfy

7 their outstanding claims upon the conclusion of this case. *See id.* McKinlay intends

8 to set aside this amount out of an abundance of caution and to avoid any potential harm

9 to the Dairy's operations resulting from the failure to pay the Dairy's vendors in the

10 ordinary course of business and pursuant to the payment terms now existing between

11 the Dairy and such vendors. *See id.*

12 Once the Dairy's remaining livestock have been sold, whether pursuant to this

13 Motion or the Motion to Sell Remaining Livestock, McKinlay will sell the Dairy's

14 remaining feed, livestock medicine and supplies (the "Feed Inventory") on the open

15 market by soliciting interest from potential purchasers in the greater Eastern

16 Washington area. *See id.* at ¶ 21.

17 **RELIEF REQUESTED**

18 By this Motion, McKinlay requests that this court enter an order authorizing the

19 sale of the Real Property, whether collectively or separately as to the Feedlot and Main

20 Dairy, and the (a) equipment and titled vehicles, and/or (b) livestock and feed to the

21 extent any of such assets are also purchased by the winning bidder for the Real

22 Property, by auction held by Skye Root pursuant to the terms set forth in the Bidding

23 Procedures and the Additional Auction Terms on an "as is where is" basis without

24 representations or warranties of any kind other than as set forth in the Purchase

25 Agreement.

26 McKinlay further requests that this court allow McKinlay to holdback a portion

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1     of the sale proceeds[15] of the Real Property for 60 days post-closing while McKinlay

2     continues working towards evicting and/or terminating the possessory interests of the

3     Mensonides and the Bruinsmas, and other Dairy staff that are currently residing on the

4     Real Property. McKinlay further requests that the amount to be held back from the

5     sale proceeds reflect the expenses McKinlay may incur in the course of effecting the

6     eviction and termination of possessory interests as well as the reasonable amount of

7     damages expected to be asserted or incurred by the bidder that has purchased the Real

8     Estate in connection with the delay in such bidder being able to take possession of the

9     Real Estate.

10     Finally, McKinlay requests that this court authorize the sale of the Feed

11     Inventory upon conclusion of the sale of the Dairy's remaining livestock, whether

12     pursuant to this Motion or the Motion to Sell Remaining Livestock.

13     **<u>NOTICE OF HEARING</u>**

14     The court will conduct a telephone hearing on the **18th day of January, 2023,**

15     **at 11:00 a.m. (Pacific Standard Time)** to determine and rule on the Motion, and any

16     timely filed objection thereto. Any objections must be filed in writing with the U.S.

17     Bankruptcy Court, 904 W. Riverside Avenue, Suite 304, Spokane, Washington 99201

18     and served upon the Plan Agent, Matt McKinlay, 13601 West McMillan Road,

19     Suite 102, PMB 320, Boise, Idaho 83713, and a copy to Jeffrey C. Misley, attorney for

20     the Plan Administrator, Sussman Shank LLP, 1000 S.W. Broadway, Suite 1400,

21     Portland, Oregon 97205 **at or before the hearing on January 18, 2023**. You may

22     also attend the scheduled telephone hearing. Parties shall call into the number below

23     at least ten (10) minutes prior to the start of the hearing. The courtroom deputy will

24     take roll, after which your phone should be placed on mute until your case is called.

25

26     [15] This amount shall be agreed to between Northwest Farm Credit and McKinlay and shall be presented at the hearing scheduled to be held on this Motion.

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 17

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   Once you are finished with your case(s), you may hang up.

2   Conference Number: 1-877-402-9757

3   Access Code: 7036041#

4   If no objection is timely filed and received, McKinlay will ask the court to enter

5   an order approving the Motion, and granting the additional relief requested herein.  In

6   the event any party timely objects to the relief requested in this Motion, McKinlay

7   requests that the court consider the objection at the scheduled court hearing noted in

8   this Motion.

9                           **POINTS AND AUTHORITIES**

10  Pursuant to the Plan and the Plan Agent Order, McKinlay was specifically

11  retained to sell the Dairy and all of its assets.  *See* Plan at Art. 2.6(m); Plan Agent

12  Order at Art. 8.  Indeed, once McKinlay determines that a sale of the Dairy is "in the

13  best interests of the Estate," he need only obtain court approval to consummate the

14  sale.  *See* Plan, at Art. 2.6(m).  Moreover, McKinlay's ability to sell the Dairy Assets

15  by auction, in separate lots and not as a going-concern is activated upon the occurrence

16  of any "Triggering Events".  *See* Plan Agent Order, at § 8(b).  For the reasons set forth

17  below, selling the Real Property and other Dairy Assets by auction is clearly in the

18  best interests of the Debtors' estate and a valid exercise of McKinlay's business

19  judgment.

20  As an initial matter, the Dairy's cash flow problems have limited the options

21  available to McKinlay to sell the Dairy Assets.  These cash flow problems are due to

22  a variety of unforeseen circumstances, including significant operating and

23  administrative costs, reduced revenues, and the actions taken by the Mensonides and

24  others to frustrate McKinlay's ability to operate the Dairy on a cash-flow positive

25  basis.  *See* McKinlay Decl., at ¶ 22.  While McKinlay has taken substantial steps

26  towards mitigating these problems, these efforts have come at a great administrative

MOTION TO SELL DAIRY'S REAL PROPERTY BY
AUCTION - PAGE 18

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

cost and will likely continue until McKinlay can consummate the sale of the Dairy Assets. *See id.* As a result, McKinlay has determined that the sale of the Dairy Assets as effectively and efficiently as possible under the circumstances is necessary and believes that the sale of the Real Property by auction held by Skye Root and pursuant to the Bidding Procedures and Additional Auction Terms will help achieve this result. *See id.* Further, McKinlay's ability to conduct such a sale has been activated by the occurrence of the several "Triggering Events" outlined above. *See* Plan Agent Order, at § 8(b); McKinlay Decl., at ¶ 22.

Moreover, McKinlay believes that Skye Root's experience facilitating farmland sales throughout the Western United States will result in the highest and best offer for the Real Property. *See id.* at ¶ 23. The sale of the Real Property by auction is expected to net a substantial net recovery for the Debtors' estate. *See id.* McKinlay believes that this recovery would likely be unattainable if any other sale procedure was used to sell the Real Property. *See id.* In particular, Skye Root has already gained familiarity with the Real Property through its initial retention to sell the Dairy as a going-concern. *See id.* As part of that process, Skye Root began soliciting interest from potential purchasers for the Dairy. *Id.* These parties, who now have a solid understanding of the Dairy due to Skye Root's efforts, may now submit bids at the auction which will likely result in a competitive process and raise the ultimate purchase price for the Real Property. *See id.*

In addition, implementing the sale of the Real Property pursuant to the Bidding Procedures and Additional Auction Terms presents prospective purchasers with the opportunity to purchase the Real Property and substantially all of the Dairy Assets on a consolidated basis which could even further reduce administrative expenses and potentially yield a greater sale price. *Id.* at ¶ 24. By contrast, continuing to seek a purchaser for the Real Property or the Dairy as a going concern outside of the auction

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    process would require McKinlay to incur much greater administrative expenses and

2    involves several contingencies that may jeopardize the sale altogether. *See id.* Given

3    the Dairy's cash position, McKinlay has determined that the sale by an experienced

4    listing agent on a short timeframe will likely yield the greatest recoveries for the Real

5    Property. *See id.*

6         Finally, postponing the sale of the Feed Inventory until all of the Dairy's

7    livestock have been sold is necessary for the health and welfare of the Dairy's

8    livestock. *See id.* at ¶ 25. Moreover, McKinlay cannot yet quantify the amount of

9    Feed Inventory to be sold given that the Dairy's livestock will be sold on a rolling

10    and/or consolidated basis pending the outcome of the bidding process set forth in this

11    Motion. *Id.* As such, McKinlay believes that the most cost-effective means of selling

12    the Feed Inventory will be to solicit interest from potential purchasers in the Eastern

13    Washington area once the amount to be sold is readily ascertainable. *Id.*

14                               **<u>CONCLUSION</u>**

15         Accordingly, and for the reasons set forth herein, McKinlay requests that this

16    court enter an order granting the relief requested herein. A proposed form of order is

17    attached hereto and marked as <u>Exhibit D</u>.

18         Dated this 10th day of January, 2023.

19                  SUSSMAN SHANK LLP

20                    */s/ Jeffrey C. Misley*

                  By _____

21                       Jeffrey C. Misley, WSBA 33397

22                       Garrett S. Eggen (Admitted pro hac vice)

                      Attorneys for Matt McKinlay

23                       in his capacity as Plan Agent

24

25

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Commitment No.: 205267

# Exhibit A

## PARCEL 1

That part of the North ½ of the Northwest ¼ of Section 29, Township 9 North, Range 22, E.W.M., lying Southerly of the right-of-way of Primary State Highway No. 22.

Situated in Yakima County, State of Washington.

## PARCEL 2

The Southwest ¼ of the Northwest ¼ of Section 29, Township 9 North, Range 22, E.W.M., records of Yakima County, Washington.

Situated in Yakima County, State of Washington.

## PARCEL 3

The Northwest ¼ of the Southwest ¼ of Section 29, Township 9 North, Range 22, E.W.M., records of Yakima County, Washington.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Exhibit A
Page 9 of 11

File Number:                                    Policy Number:  **7230747 211790679**

## PARCEL 4

That part of the Northeast ¼ of the Northeast ¼ of Section 30, Township 9 North, Range 22, E.W.M., described as follows:

Beginning at the intersection of the East line of said subdivision and the South right of way line of SR-22;
thence South 0°20'51" West along the East line of said subdivision 246.76 feet;
thence North 64°23'36" West 431.37 feet;
thence North 21°04'39" West, 382.44 feet to the Southerly margin of SR-22;
thence South 60°52'33" East, along said margin of SR-22, a distance of 609.39 feet to the point of beginning.

Situated in Yakima County, State of Washington.

## PARCEL 5

That part of the Northeast ¼ of the Northeast ¼ of Section 30, Township 9 North, Range 22, E.W.M.;

AND of the Southeast ¼ of the Southeast ¼ of Section 19, Township 9 North, Range 22, E.W.M., lying South of the right of way for SR-22;

EXCEPT beginning at the intersection of the East line of said Northeast ¼ of the Northeast ¼ of said Section 30 and the South right of way line of SR-22;
thence South along the East line of said subdivision 246.76 feet;
thence North 64°23'36" West, 431.37 feet;
thence North 21°04'39" West, 382.44 feet to the Southerly margin of SR-22;
thence South 60°52'33" East, along said margin of SR-22, a distance of 609.39 feet to the point of beginning.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Exhibit A
Page 2 of 11

File Number:                                      Policy Number:  **7230747 211790679**

### PARCEL 6

The Northeast ¼ of the Southeast ¼ of Section 30, Township 9 North, Range 22, E.W.M.;

EXCEPT beginning at the East ¼ corner of said Section 30;
thence South 89°27'33" West along the North line of said Northeast ¼ of the Southeast ¼, 584.79 feet to the true point of beginning;
thence South 01°17'47" West 795.71 feet;
thence North 85°43'32" West 50.42 feet to a point 14 feet, more or less, Easterly from the centerline of the existing dirt gravel access road;
thence Southerly and Southeasterly paralleling said road a distance of 14 feet from the centerline of said road, to a point which intersects the South line of said Northeast ¼ of the Southeast ¼, said point being South 89°43'48" West a distance of 387.59 feet from the Southeast corner of said subdivision;
thence South 89°43'48" West, along the South line of said Northeast ¼ of the Southeast ¼, 948.02 feet to the Southwest corner of said subdivision;
thence North 00°56'21" East along the West line of said subdivision, 500.0 feet, more or less, to the intersection with the centerline of the Satus #2 Pump Canal;
thence following the centerline of said canal Northerly to the North line of said subdivision;
thence North 89°27'33" East 493.28 feet to the true point of beginning;

AND

The Southeast ¼ of the Northeast ¼ of Section 30, Township 9 North, Range 22, E.W.M.;

EXCEPT that portion described as follows:
Beginning at the East ¼ corner of said Section 30;
thence South 89°27'33" West along the South line of said Southeast ¼ of the Northeast ¼, 584.79 feet to the point of beginning;
thence North 01°17'47" East, 364.32 feet;
thence South 77°51'32" West, 330.72 feet to the centerline of the Satus #2 Pump Canal;
thence following the centerline of said canal Westerly and Southwesterly to the South line of said subdivision;
thence North 89°27'33" East, 493.28 feet to the point of beginning.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Exhibit A

## PARCEL 7

That portion of the following described land lying South of State Route 22:

That portion of the Southeast ¼ of Section 5, Township 8 North, Range 23, E.W.M., described as follows:
Beginning at the Southeast corner of said section;
thence West along its South line 2669.3 feet, more or less, to the South ¼ corner of said section;
thence Northerly along the West line of said Southeast ¼ 1569.8 feet, more or less, to the South line of the tract of land conveyed to Minnie B. Fletcher by deed recorded November 17, 1917, in Volume 175 of Deeds, Page 247, under Auditor's File Number 119551, records of Yakima County, Washington;
thence Easterly parallel with the North line of said ¼ 2681.1 feet, more or less to the East line of said section;
thence South to the point of beginning;

EXCEPT right of way of the Northern Pacific Railway Company 400 feet in width across said premises;

AND EXCEPT the East 30 feet thereof, conveyed to Yakima County for a road by deed recorded in Volume 123 of Deeds, under Auditor's File Number 20749, records of Yakima County, Washington.


Situated in Yakima County, State of Washington.


## PARCEL 8

The Northeast ¼ of Section 8, Township 8 North, Range 23, E.W.M.;

EXCEPT that portion lying North of State Highway;

AND EXCEPT right-of-way for said State Highway;

AND EXCEPT right-of-way for county roads along the West, East, and South sides thereof as disclosed by deed to Yakima County, Washington, recorded September 27, 1961, under Auditor's File Number 1879870.


Situated in Yakima County, State of Washington.


*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

File Number:                                            Policy Number:  **7230747 211790679**

## PARCEL 9

The Northwest ¼ of Section 9, Township 8 North, Range 23, E.W.M.;

EXCEPT the Southwest ¼ of the Southwest ¼ of the Northwest ¼ of said Section 9;

AND EXCEPT that portion of the Northwest ¼ of Section 9 lying North of the State Highway;

AND EXCEPT right-of-way for said State Highway;

AND EXCEPT right-of-way for county roads along the West, East, and South sides thereof as disclosed by deed to Yakima County, Washington, recorded September 27, 1961, under Auditor's File Number 1879870, and by instruments recorded under Auditor's File Numbers 7351110, 7251111, 7351112, 7351113, 7351114, 7351115, 7351116, 7351117 and 7351118.

Situated in Yakima County, State of Washington.

## PARCEL 10

The Southwest ¼ of the Southwest ¼ of the Northwest ¼ of Section 9, Township 8 North, Range 23, E.W.M.;

EXCEPT the West 15 feet conveyed to Yakima County for road purposes by Deed recorded under Auditor's File Number 1872113;

AND EXCEPT the North 20 feet and the South 20 feet conveyed to Yakima County for road purposes by Deed recorded under Auditor's File Number 66904.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Exhibit A

File Number:                                      Policy Number: **7230747 211790679**

## PARCEL 11

The Southwest ¼ of Section 9, Township 8 North, Range 23, E.W.M.;

EXCEPT that portion lying Southerly of the Sunnyside Valley Irrigation District Lateral;

EXCEPT beginning at the Northwest corner of said subdivision;
thence South along the West line thereof 385 feet to the true point of beginning;
thence South along said West line 160 feet;
thence East 134 feet;
thence North 160 feet;
thence West 134 feet, more or less, to the true point of beginning;

AND EXCEPT right of way for county roads located along the North and West lines.

Situated in Yakima County, State of Washington.

## PARCEL 12

That part of the North ½ of the Southeast ¼ of Section 9, Township 8 North, Range 23, E.W.M., lying Southerly of the Mabton West Lateral;

AND

The Southwest ¼ of the Southeast ¼ of Section 9, Township 8 North, Range 23, E.W.M.;

EXCEPT beginning at the South ¼ monument in said Section 9;
thence North 0°3'30" West 431.9 feet to the point of beginning;
thence North 0°3'30" West 866 feet;
thence North 89°55'30" East 440 feet to right-of-way of Mabton Lateral;
thence South 18°41'56" West 137.24 feet;
thence South 28°52'2" East 267.20 feet;
thence South 4°26'51" West 108.54 feet;
thence South 33°34'54" East 146.44 feet;
thence South 62°1'58" West 383.82 feet;
thence South 85°28'48" West 253.79 feet to the point of beginning.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Exhibit A
Page 6 of 11



File Number:                                          Policy Number: **7230747 211790679**

**PARCEL 13**

Beginning at the South quarter monument in Section 9, Township 8 North, Range 23, E.W.M.;
thence North 00°03'30" West 431.9 feet to the point of beginning;
thence North 00°03'30" West 866 feet;
thence North 89°55'30" East 440 feet to right of way of Mabton Lateral;
thence South 18°41'56" West 137.24 feet;
thence South 28°52'02" East 267.20 feet;
thence South 04°26'51" West 108.54 feet;
thence South 33°34'54" East 146.44 feet;
thence South 62°01'58" West 383.82 feet;
thence South 85°28'48" West 253.79 feet to the point of beginning.

Situated in Yakima County, State of Washington.

**PARCEL 14**

The West 233 feet of the East 651 feet of the North 500 feet of the Southeast ¼ of the Southeast ¼ of Section 9, Township 8 North, Range 23, E.W.M.

Situated in Yakima County, State of Washington.

**PARCEL 15**

The Southeast ¼ of the Southeast ¼ of Section 9, Township 8 North, Range 23, E.W.M.;

EXCEPT the West 233 feet of the East 651 feet of the North 500 feet thereof;

AND

The Northeast ¼ of the Northeast ¼ of Section 16, Township 8 North, Range 23, E.W.M.;

AND

The Northwest ¼ of the Northwest ¼ of Section 15, Township 8 North, Range 23, E.W.M.;

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



File Number:                                                    Policy Number:  **7230747 211790679**

AND

The Southwest ¼ of the Southwest ¼ of Section 10, Township 8 North, Range 23, E.W.M.;

EXCEPT right-of-way for the Mabton West Lateral.

Situated in Yakima County, State of Washington.

## PARCEL 16

The Southeast ¼ of the Southwest ¼; and the Southwest ¼ of the Southeast ¼ of Section 10, Township 8 North, Range 23, E.W.M.;

EXCEPT that portion of the Southeast ¼ of the Southwest ¼ lying North of the Mabton West Lateral;

AND EXCEPT right of way for Mabton West Lateral.

Situated in Yakima County, State of Washington.

## PARCEL 17

The Southwest ¼ of the Northwest ¼;
The West ½ of the Southwest ¼;
The West 247.5 feet of the East ½ of the Northwest ¼;
AND
The West 247.5 feet of the East ½ of the Southwest ¼;

EXCEPT right-of-way for road along the South section line;

ALL in Section 15, Township 8 North, Range 23, E.W.M.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by <u>Fidelity Title Company</u>]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

Exhibit A

File Number:                                   Policy Number: **7230747 211790679**

### PARCEL 18

The Southeast 1/4 of the Southeast 1/4 of Section 16, Township 8 North, Range 23, E.W.M., records of Yakima County, Washington.

Situated in Yakima County, State of Washington.

### PARCEL 19

The North 1/2 of the Northeast 1/4, the Southeast 1/4 of the Northeast 1/4, the East 1/2 of the Southeast 1/4, and the Southwest 1/4 of the Southeast 1/4 of Section 17, Township 8 North, Range 23, E.W.M., records of Yakima County, Washington.

Situated in Yakima County, State of Washington.

### PARCEL 20

The North 1/2 of the Northeast 1/4 and the South 1/2 of the Northeast 1/4.

All in Section 20, Township 8 North, Range 23, E.W.M., records of Yakima County, Washington.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

Exhibit A
Page 6 of 11

File Number:                                Policy Number: **7230747 211790679**

### PARCEL 21

**That portion of the Northeast ¼ of the Northeast ¼ of Section 1, Township 9 North, Range 22, E.W.M., lying Easterly of the right of way for Drainage Improvement District NO. 3 (Sub 4) drain;**

**EXCEPT the East 30 feet thereof for county road;**

**EXCEPT that portion of said subdivision conveyed to Yakima County, Washington, for road right of way by deed recorded under Auditor's File Number 1833778, records of Yakima County, Washington;**

**AND EXCEPT that portion of said subdivision conveyed to State of Washington, for road right of way by deed recorded under Auditor's File Number 2545430, records of Yakima County, Washington.**

**Situated in Yakima County, State of Washington.**

### PARCEL 22

**That portion of the Northeast ¼ of the Northeast ¼ (Government Lot 1) of Section 1, Township 9 North, Range 22, E.W.M., lying Westerly of the right of way for Drainage Improvement District No. 3 (Sub 4) drain;**

**EXCEPT that portion of said subdivision conveyed to Yakima County, Washington, for road right of way by deed recorded under Auditor's File Number 1833778, records of Yakima County, Washington;**

**AND EXCEPT that portion of said subdivision conveyed to State of Washington for road right of way by deed recorded under Auditor's File Number 2545430, records of Yakima County, Washington.**

**Situated in Yakima County, State of Washington.**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by Fidelity Title Company]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Exhibit A

File Number: <span style="color:red">Policy Number: **7230747 211790679**</span>

### PARCEL 23

The East ½ of the Northwest ¼ (Government Lot 2) of the Northeast ¼ of said section;

EXCEPT that portion of said subdivision conveyed to Yakima County, Washington, for road right of way by deed recorded under Auditor's File Number 1833778, records of Yakima County, Washington;

AND EXCEPT that portion of said subdivision conveyed to State of Washington for road right of way by deed recorded under Auditor's File Number 2545430, records of Yakima County, Washington.

Situated in Yakima County, State of Washington.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance [issued by <u>Fidelity Title Company</u>]. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form].*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Exhibit A

# Mensonides Dairy, LLC

Exhibit B - Qualified Bid Requirements*

| Asset Description | Minimum Qualifying Bid | Earnest Money Requirement | Comments |
|---|---|---|---|
| Main Dairy (real property) | $ 12,500,000 | $ 100,000 | Includes right to apply for the NDA milk base, subject to all terms and conditions. |
| Feedlot (real property) | 2,000,000 | 50,000 | |
| Feed Inventory | 1,000,000 | 25,000 | To be adjusted based on feed inventory and market price |
| Milk Cow Inventory | 4,500,000 | 50,000 | To be adjusted based on feed inventory and market price |
| Equipment & Titled Vehicles | 1,250,000 | 25,000 | |
| **TOTAL** | **$ 21,250,000** | **$ 250,000** | |

*Qualifying Bids may be accepted on assets in whole or in part, as represented above.

18-01681-WLH11     Doc 1070     Filed 01/10/23     Entered 01/10/23 21:22:52     Pg 32 of 37

**Mensonides Dairy, LLC**
Asset Auction Strategy
January 3, 2023

| Asset | Broker | Auction Date | Closing / Delivery Date | Comments |
|---|---|---|---|---|
| Real Property | Skye Root | 2/10/23 (Qualifying Deadline 2/20/23 (Auction Date) | 3/14/2023 | The Calf Ranch and the Main Dairy may be sold together or separately. |
| Milk Base | N/A | | | Buyer of real property (main dairy) will have rights to apply for the Dairy's milk Base with Northwest Dairy Association. |
| Feed Inventory | Skye Root | 2/20/2023 | 3/14/2023 | Buyer of real property will be given the option to purchase feed inventory at market value. Otherwise, will be sold separately. |
| Equipment | Booker Auctions | 3/7/2023 | 3/14/2023 | Qualified Buyers may submit interest to purchase all equipment by 3/1/23. Otherwise lots to be auctioned by 3/7/23. |
| Livestock - Heifers | Toppenish | Various - 1/19 - 1/31/23 | | Auctioned weekly |
| Livestock - Milk Cows | Toppenish | | 2/21/23 through 3/14/23 | Buyer of real property will be given the option to purchase Milk Cow inventory at market value. Otherwise, will be sold by Toppenish Livestock. |
| NDA Coop Shares | NO AUCTION | | | Non-transferrable. Will remain with the Plan Agent. |

Exhibit C
Page 1 of 1

1

2

3

4

5

6

7

8          IN THE UNITED STATES BANKRUPTCY COURT

9             EASTERN DISTRICT OF WASHINGTON

10   In re:                              CHAPTER 11

11   MENSONIDES DAIRY, LLC, and          No. 18-01681-WLH11 LEAD CASE
12   ART & THERESA MENSONIDES,

13              Debtors.                 No. 18-01683-WLH11

14                                       ORDER GRANTING MOTION TO
15                                       SELL DAIRY'S REAL PROPERTY
                                         BY AUCTION
16

17

18       This matter having come before the court on the Motion (the "Motion")[1] of

19   Matthew McKinlay ("McKinlay"), as Plan Agent of the Debtors' First Amended Joint

20   Chapter 11 Plan of Reorganization [Docket No. 479] (the "Plan"), for entry of an order

21   authorizing McKinlay to sell the to sell the feedlot (the "Feedlot") and main dairy

22   ("Main Dairy" and, together with the Feedlot, the "Real Property") owned by Art and

23   Teresa Mensonides by auction, pursuant to the Order Appointing Plan Agent [Docket

24   No. 959] (the "Plan Agent Order"), and the court having reviewed the Motion and the

25   _____

26   [1] Capitalized terms used but not otherwise defined herein shall have the meaning
     ascribed to such terms in the Motion or the Plan Agent Order, as applicable.

ORDER GRANTING MOTION TO SELL DAIRY'S
REAL PROPERTY BY AUCTION - PAGE 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    supporting Declaration of Matthew McKinlay, and the court's files herein; and this

2    court having jurisdiction and authority over this matter pursuant to 28 U.S.C.

3    §§ 1334(b) and 157(b)(2)(A) and the Confirmation Order [Docket No. 499] and the

4    Plan Agent Order; and the court finding cause exists to grant certain relief requested

5    in the Motion.  Now, therefore, it is hereby

6       ORDERED:

7       1.    The Motion is GRANTED as set forth herein;

8       2.    McKinlay is authorized to sell the Real Property, whether collectively or

9    separately as to the Feedlot and Main Dairy, and the (a) equipment and titled vehicles,

10    and/or (b) livestock and feed to the extent any of such assets are also purchased by the

11    winning bidder for the Real Property, by auction held by Skye Root pursuant to the

12    Bidding Procedures and the Additional Auction Terms on an "as is where is" basis

13    without representations or warranties of any kind other than as set forth in the Purchase

14    Agreement;

15       3.    The auction shall be held on February 21, 2023 at 1:00 p.m. PT located

16    at the Holiday Inn Express at 680 Wine Country Road, Prosser, Washington 99350

17    and also by Zoom;

18       4.     McKinlay shall file a notice identifying the winning bidder(s) and back-

19    up bidder(s) on the court's docket within three business days after the conclusion of

20    the auction;

21       5.    McKinlay is authorized to holdback a portion of the sale proceeds of the

22    Real Property for 60 days post-closing while McKinlay continues working towards

23    evicting and/or terminating the possessory interests of the Mensonides and the

24    Bruinsmas, and other Dairy staff that are currently residing on the Real Property.  The

25    amount to be held back from the sale proceeds shall reflect a reasonable estimate of

26

ORDER GRANTING MOTION TO SELL DAIRY'S
REAL PROPERTY BY AUCTION - PAGE 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    the expenses McKinlay may incur in the course of effecting the eviction and

2    termination of possessory interests as well as the reasonable amount of damages

3    expected to be asserted or incurred by the bidder that has purchased the Real Estate in

4    connection with the delay in such bidder being able to take possession of the Real

5    Estate;

6             6.      McKinlay is further authorized to sell the Feed upon conclusion of the

7    sale of the Dairy's remaining livestock, whether pursuant to this Motion or the Motion

8    to Sell Remaining Livestock, by any means he believes to be a valid exercise of his

9    business judgment to yield the greatest recoveries under whatever circumstances exist

10    at the time of such sale(s); and

11           7.      McKinlay is authorized to execute such documents and take such further

12    actions as may be necessary or appropriate to accomplish the terms of this order.

13

14                        // END OF ORDER //

15    PRESENTED BY:

16    SUSSMAN SHANK LLP

17       */s/ Jeffrey C. Misley*

18    By _____

          Jeffrey C. Misley, WSBA #33397

19       *Attorneys for Matthew McKinlay, Plan Agent*_

20    *24172-012\PROPOSED ORDER RE MOTION TO SELL REAL PROPERTY (04155052);2

21

22

23

24

25

26

ORDER GRANTING MOTION TO SELL DAIRY'S
REAL PROPERTY BY AUCTION - PAGE 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

## CERTIFICATE OF SERVICE

I, Janine E. Hume declare as follows:

I am employed in the County of Multnomah, state of Oregon; I am over the age of eighteen years and am not a party to this action; my business address is 1000 S.W. Broadway, Suite 1400, Portland, Oregon 97205-3089, in said county and state.

I certify that on January 10, 2023, I served the **MOTION TO SELL DAIRY'S REAL PROPERTY BY AUCTION AND CERTAIN RELATED RELIEF** on all ECF participants as indicated on the Court's Cm/ECF system.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 10, 2023.


*/s/ Janine E. Hume*
Janine E. Hume, Legal Assistant

CERTIFICATE OF SERVICE - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130