Jeffrey C. Misley, WSBA #33397
jmisley@sussmanshank.com
Garrett S. Eggen (Admitted pro hac vice)
geggen@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130

*Attorneys for Matthew McKinlay,*
  *Plan Agent*

Honorable Whitman L. Holt
Chapter 11
Hearing Date: January 18, 2023
Hearing Time: 11:00 p.m.
Location: Telephonic

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>MENSONIDES DAIRY, LLC, and<br>ART & THERESA MENSONIDES,<br><br>Debtors. | CHAPTER 11<br><br>No. 18-01681-WLH11 LEAD CASE<br><br>No. 18-01683-WLH11<br><br>MOTION TO SELL DAIRY EQUIPMENT AND VEHICLES BY AUCTION |

## **MOTION**

Matthew McKinlay ("McKinlay"), as Plan Agent of the Debtors' First Amended Joint Chapter 11 Plan of Reorganization [Docket No. 479] (the "Plan"), hereby moves (the "Motion") this court for entry of an order, pursuant to his authority under the Plan and Order Appointing Plan Agent [Docket No. 959] (the "Plan Agent Order"), to sell certain of the Dairy's farming equipment (the "Equipment") and titled vehicles (the "Titled Vehicles")[1] by auction. Consecutively filed herewith in support of this Motion

---

[1] A complete list of the Equipment and Titled Vehicles that McKinlay intends to sell by auction pursuant to this Motion is attached hereto as Exhibit B. To the extent that any Missing Equipment (as defined herein) is returned to the Dairy and this Motion is granted, McKinlay reserves the right

MOTION TO SELL DAIRY EQUIPMENT AND VEHICLES
BY AUCTION - PAGE 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

is the Declaration of Matthew R. McKinlay (the "McKinlay Dec."). In support of the Motion, McKinlay states as follows:

**BACKGROUND**

**A.     Confirmation of Plan and Rights Under the Plan and Plan Agent Order.**

On August 16, 2019, the court entered an Order Confirming the Plan [Docket No. 499]. The Plan included the classification, treatment, and impairment or non-impairment of the Debtors' creditors' claims and interests, including AgWest Farm Credit Services, PCA and FLCA (formerly known as Northwest Farm Credit Services, PCA and FLCA, referred to interchangeable herein as, collectively, "Northwest" or "AgWest"). *See* Plan, at Art. 2. In particular, the Plan provided that Northwest's loans made to the Debtors are secured by "substantially all of the assets of the Debtors" including, among other things, the Debtors' cattle. *See id.*, at Art. 2.4(b).

The Plan also provided that "in the event the Debtors fail to cure any default during any Cure Period, Northwest shall be entitled to immediate appointment of a Plan Agent." *See id.*, at Art. 2.6(m). Upon default and the subsequent appointment of a plan agent, the Plan Agent "shall have the discretion to adjust operations as necessary to maintain positive cash flow during the marketing period" and that "[a]ny and all collateral sales proceeds (except milk proceeds) received by the Plan Agent shall be paid to [Northwest] in order of lien priority[.]" *See id.* Further, the Plan requires the Plan Agent to "publicly list and make best efforts to sell the assets of the Debtors to pay [Northwest] and other creditors[.]" *Id.* Finally, upon appointment, the Plan Agent is authorized to "engage in any sale process he deems appropriate, and he may accept any offer he determines is in the best interests of the Estate during the Marketing Period[2], subject to Bankruptcy Court approval of any sale." *Id.* Failure to

---

to file a supplemental notice revising Exhibit B hereto which identifies the returned Missing Equipment to be sold pursuant to the terms set forth herein.
[2] The Plan defines the "Marketing Period" as, after the Plan Agent is appointed, the "period of at least twelve (12) months or until the Dairy is sold, whichever is less."

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

sell the Debtors' assets during this period entitles Northwest to *in rem* relief to enforce its rights in its collateral.  *Id.*

Further, the Plan provides that the court retains jurisdiction "to determine all controversies, suits, and disputes that may arise in connection with interpretation, enforcement, and consummation of the Plan" and "such other matters as may be set forth in the Confirmation Order or which arise in connection with the Plan or the Confirmation Order, or may be necessary to effectuate or carry out the purposes and provisions of this Plan."  *Id.* at Art. 9.1(g), (j).

## B. Debtors' Default Under the Plan and Resulting Appointment of McKinlay as Plan Agent

On January 31, 2022, Northwest filed a motion [Docket No. 896] for entry of an order confirming that, among other things, the Debtors have defaulted under the Plan and accordingly that Northwest was entitled to the appointment of a Plan Agent ("Motion for Default").

On March 17, 2022, this court entered an order [Docket No. 921] ("Order Confirming Default") granting the Motion for Default and confirming that the Debtors defaulted under Article 2.6(j) of the Plan and failed to cure the default.

On May 13, 2022, in accordance with the Order Confirming Default, Northwest filed a Motion for the Appointment of a Plan Agent [Docket No. 927] (the "Plan Agent Motion") seeking to appoint McKinlay as Plan Agent.

On July 12, 2022, the court entered the Plan Agent Order appointing McKinlay as Plan Agent. The Plan Agent Order grants McKinlay "exclusive possession and control over all of the Debtors' estates' and property" and authorizes the implementation of a marketing and sale plan for the Dairy as a going-concern.  *See* Plan Agent Order, at Art. 5, 8.  In addition, the Plan Agent Order provides McKinlay with authority to "[t]o do all things which the Debtors might do in the ordinary course

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

of the operation and business as a going-concern[.]" *Id.* at Art. 5(d) (emphasis added). The Plan Agent Order also provides that McKinlay's "sale of any or all Dairy Assets, whether assets are . . . sold separately and not as a going-concern, shall be made pursuant to the Plan." *Id.* at Art. 8(c). Finally, the Plan Agent Order provides that:

> In the event [that] one or more Triggering Events occur . . . the Plan Agent shall have the discretion as to when, what and how to market and sell the Dairy Assets, ***including the selling or auctioning any and/or all Dairy Assets in separate lots and not as a going-concern***, pursuant to the terms of the Plan, this Order and further orders of this court.

Plan Agent Order, at § 8(b) (emphasis added).

## C.  McKinlay's Tenure as Plan Agent

### a.  The Mensonides Family's Bad Acts Require McKinlay to Seek Court Intervention

Upon appointment as Plan Agent pursuant to the Plan Agent Order, McKinlay immediately turned his attention to preserving and maintaining the Debtors' business operations and assets in preparation for the ultimate sale of the Dairy and Dairy Assets. *See* McKinlay Decl., at ¶ 2. However, immediately upon taking control of the Debtors and after certain of the Mensonides family members had rejected his offer to continue working for the Dairy in management roles, McKinlay discovered that the Dairy's available cash was seriously deficient to fund operations or meet the Dairy's ongoing financial obligations. *See id.* This required the Plan Agent to expend considerable resources and request and receive additional financial support from Northwest in order to stabilize operations and fund ongoing expenses. *See id.*

McKinlay also determined that the Mensonides family had taken substantial actions to disrupt the Dairy's operations. These actions included, among other things[3]:

---

[3] A more detailed list of the actions that the Mensonides family members had taken immediately prior to McKinlay's appointment can be found in the Motion to Enforce the Plan Agent Order [Docket No. 964] and McKinlay's Declaration attached thereto as Exhibit 1.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1      a) removing critical assets and equipment from the Dairy with the help of third
2        parties such as Narom Berg, Pioneer and others;

3      b) withdrawing substantial funds belonging to the Dairy for unauthorized
4        purposes;

5      c) leaving almost no feed on site to care for the livestock;

6      d) notifying employees that the Dairy was "shutting down" and paying out all
7        accrued paid time-off (PTO); and

8      e) Removing and shredding critical business records, including vehicle titles,
9        employee files, the Nutrient Management Plan, and so forth.

10 *See* McKinlay Decl., at ¶ 3.

11      In addition, McKinlay discovered that the Dairy was missing several critical
12 pieces of equipment that collectively held an appraised value of $467,200.00 (the
13 "Missing Equipment").[4] *See* McKinlay Decl., at ¶ 4.

14      As a result of the aforementioned actions going unaddressed by the Mensonides,
15 on August, 5, 2022, McKinlay filed an Emergency Motion to Enforce the Plan Agent
16 Order Against the Mensonides [Docket No. 964] (the "Enforcement Motion"). The
17 Enforcement Motion identified the problematic actions taken by the Mensonides and
18 sought entry of an order holding the Mensonides in contempt for their failure to comply
19 with the Plan Agent Order.

20      On August 10, 2022, the court held a hearing on the Enforcement Motion. At
21 the hearing, the court referred the parties to Judge Corbit to attempt to settle their
22 disputes. Unfortunately, mediation with Judge Corbit yielded no tangible results. *See*
23 McKinlay Decl., at ¶ 5.

24          **b. McKinlay's Problems Operating the Dairy Continue due to the**
25               **Mensonides and Other Parties' Actions[5]**

26

---

[4] A list of the Missing Equipment can be found in the Motion to Enforce the Plan Agent Order
[Docket No. 964] and McKinlay's Declaration attached thereto as Exhibit 1.
[5] A more detailed description of the actions taken by McKinlay to retrieve the Missing Equipment

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

While McKinlay was ultimately able to stabilize the Dairy's milk production and milking herd and cleansed the livestock herd of bacillus cereus[6], McKinlay's problems with the Mensonides and other parties in interest continued. *See* McKinlay Decl., at ¶ 6. In particular, McKinlay began to discover that much of the Missing Equipment had been relocated through one or more of the Mensonides family members' efforts throughout the greater Mabton, Washington area. *See id.* As a result, McKinlay sought to retrieve the Missing Equipment and other property belonging to the Dairy. *See id.*

In addition to retrieving Missing Equipment and reviving the Dairy's operations, McKinlay also recognized that removal of the Mensonides' family members from the Dairy would be necessary to implement the sale of the Dairy. *See* McKinlay Decl., at ¶ 7. To begin this process, McKinlay offered a solution that would result in the Art and Teresa Mensonides as well as Auke and Joreen Bruinsma (the "Bruinsmas") consensually vacating the Dairy premises in a reasonable time and manner. *See id.* Unfortunately, the Mensonides and Bruinsma's rejected this offer, prompting McKinlay to obtain a court order confirming his ability to terminate the possessory interests of and initiate eviction proceedings against the Mensonides and Bruinsmas [Docket No. 1027]. *See id.*

### c. McKinlay's Decision to Sell the Dairy Assets by Auction

In addition to the above referenced issues, the Dairy also began experiencing

---

and handle the problems caused by Narom and Sharon Berg (the "Bergs"), Pioneer Commodities, LLC ("Pioneer") and the Mensonides family can be found in McKinlay's Status Conference Reports [Docket Nos. 983, 989, 999 and 1004] and McKinlay's Reply in Support of the Motion to Sell Certain Dairy Cattle [Docket No. 1039].

[6] Bacillus cereus is a spoilage microorganism that has been present in the Dairy's herd for several years. This prevalence of this contaminant exceeded thresholds set by the Northwest Dairy Association ("NDA"), which limited how the Dairy's milk could be produced. In November 2022, NDA notified the Plan Agent and his staff that the contaminant had been reduced significantly over the past four months, and that NDA is now able to expand the number of products that the Dairy's milk can be used for. This also opens the Dairy to new processing facilities (including the one ~10 miles away from the Dairy in Sunnyside, WA) the Dairy's milk can be sent to.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  several unrelated problems that were also beyond McKinlay's control.  As a result of

2  the worldwide supply chain and inflationary issues, lower than projected 2022 Dairy-

3  grown and harvested feed volume, price gouging and other factors, the Dairy's feed

4  costs exceeded initial projections by roughly 30%.  *See* McKinlay Decl., at ¶ 8.  This,

5  in addition to unbudgeted manure management freight costs, seriously impacted the

6  Dairy's cash flow.  *Id.*  Further, milk prices have dropped by roughly 20% over the

7  last several months which has resulted in significantly reduced revenues to the Dairy.

8  *See id.*

9         Given the Dairy's liquidity issues resulting from the foregoing problems,

10  McKinlay determined it was necessary to sell up to 2,500 head of the Dairy's

11  replacement heifer cattle (the "Listed Dairy Cattle") by auction to reduce operating

12  expenses and generate much needed cash to continue operating the Dairy and work

13  towards a sale of the Dairy and its assets.  *See id.* at ¶ 9. Therefore, on December 14,

14  2022, McKinlay filed the Motion to Sell Certain Dairy Cattle by Auction Free and

15  Clear of any Liens or Interests [Docket No. 1030] (the "Motion to Sell Cattle").

16         Shortly thereafter, on December 20, 2022, Pioneer filed an objection to the

17  Motion to Sell Cattle.  *See* Docket No. 1034 (the "Pioneer Cattle Sale Objection").

18  The Pioneer Cattle Sale Objection primarily objected to the sale of the Listed Dairy

19  Cattle being free and clear of all liens, claims and interests.  *See id.*  While the court

20  ultimately authorized the sale of the Listed Dairy Cattle, the court deferred ruling on

21  whether or not such sale would be free and clear of all liens, claims and interests to a

22  future date to be determined.  *See* Docket No. 1060 (the "Cattle Sale Order")

23         While the sale of the Listed Dairy Cattle will generate much needed cash for the

24  Dairy, operating and administrative costs have continued to strain the Dairy's liquidity.

25  *See* McKinlay Decl., at ¶ 10.  Specifically, the rising feed and administrative costs

26  combined with lower revenues have made it difficult to maintain the Dairy's herd.  *Id.*

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1      McKinlay believes that these problems will only be exacerbated throughout the
2 coming winter months. *Id.* In addition to the foregoing, McKinlay determined that
3 the sale of substantially all of the Dairy Assets to a prospective purchaser under a
4 private sale acceptable terms is becoming less likely. *Id.* As a result, McKinlay
5 decided that the sale of the Dairy's remaining Livestock as part of a broader plan to
6 sell the Dairy's remaining assets, including the Equipment and Titled Vehicles, was in
7 the best interests of the Debtors' estate for the following reasons.

8      As an initial matter, the Dairy's limited cash has constrained McKinlay's ability
9 to both operate the Dairy and pursue a drawn-out sale process. *Id.* at ¶ 11. Thus,
10 McKinlay does not believe that the Dairy can fund the administrative expenses
11 associated with negotiating the terms of an asset purchase agreement and providing a
12 lengthy due diligence period to a potential purchaser for the Dairy Assets. *See id.*
13 Further, any purchaser would likely demand that the sale be free and clear of any liens,
14 interests and claims and McKinlay is unable to guarantee that such a sale would be
15 approved. *Id.* Given these contingencies, McKinlay believes that the sale of the Dairy
16 Assets by auction is in the best interests of the Debtors' estate.

17      Moreover, several "Triggering Events" contemplated by the Plan Agent Order
18 have occurred, thereby activating McKinlay's authority to sell the Dairy Assets by
19 auction, in separate lots and not as a going-concern. *See* Plan Agent Order, at § 8(b).
20 These include:

21      1. Defaults in the covenants set forth in Exhibit C – Operational Covenants:
22         a. The Dairy has failed to maintain the total minimum herd size of
23           11,000 head.
24         b. McKinlay has been unable to provide AgWest with the original
25           vehicle titles of all Dairy titled vehicles which are AgWest's
26           collateral due to the fact that the Mensonides family has removed

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

many of these vehicle titles.

    c. The Dairy has suffered from two consecutive months of negative net income under the CPA compiled financial reports in the months of July and August 2022. As detailed more fully above, the July and August 2022 months net income problems are largely due to the state in which the Mensonides family left the Dairy.

  2. The Dairy has failed to maintain at least cash flow neutral as measured by the Plan Agent Weekly and Monthly Cash Flow Budget and Variance Reports. *See e.g.*, Docket No. 1004, at p. 4. This is largely due to the increased operating and administrative expenses combined with lower revenues described more fully above.

  3. The Dairy has lost its normal manure handling and processing capabilities due to the party responsible for handling the Dairy's liquid manure terminating its agreement with the Dairy prior to McKinlay's appointment as Plan Agent. *See* Docket No. 1004, at p. 4.

*See* Plan Agent Order, at § 8(b), Exs. C and D; McKinlay Decl., at ¶ 12.

    McKinlay intends to sell the real property, livestock, feed, Equipment and Titled Vehicles at auction as outlined in <u>Exhibit C</u>. This Motion addresses the proposed auction of the Equipment and Titled Vehicles, and separate motions for orders authorizing the auction sales of the Dairy's feed and real property are filed contemporaneously herewith.[7]

//

---

[7] McKinlay filed the motion to sell the Dairy's remaining livestock by auction on January 6, 2023. *See* Docket No. 1067 (the "Motion to Sell Remaining Livestock").

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

### d. McKinlay's Selection of Booker Auctions Co. to Sell the Equipment at Auction

Upon determining that the sale of the Dairy Assets by auction was necessary, McKinlay selected Booker Auctions Co. ("Booker") as the auctioneer responsible for selling the Equipment and Titled Vehicles. *See* McKinlay Decl., at ¶ 13. Booker has agreed to a compensation structure whereby it will be paid a 10% commission rate from the auction proceeds, a 5% buyer's premium and certain other expenses incurred in auctioning the Equipment and Titled Vehicles. *Id.* McKinlay believes that Booker's extensive experience auctioning farming equipment and vehicles in the Eastern Washington area will result in the highest and best offers for the Equipment and Titled Vehicles. *See id.*

Under the proposed terms of sale for the Real Property, Qualified Buyers (each as defined in the motion to sell real property filed consecutively herewith) will be required to determine whether they are willing to also submit a minimum bid for the entirety of the Dairy's Equipment and Titled Vehicles, as a condition to purchasing the real property. If the buyer of the Real Estate does not purchase the Equipment and Titled Vehicles, Booker will auction off the Equipment and Titled Vehicles on or about March 7, 2023.[8]

### **RELIEF REQUESTED**

By this Motion, McKinlay requests that this court enter an order authorizing the sale of the Equipment and Titled Vehicles by auction held by Booker. McKinlay further requests that the order authorize him, without the need for further court approval, to sell any Missing Equipment that is returned to the Dairy by auction held

---

[8] As with the Real Property Sale, AgWest is deemed a Qualified Buyer and may credit bid for the assets being sold pursuant to all applicable laws and pursuant to the Plan Agent's determination that allowing such credit bidding is appropriate, so long as AgWest's credit bidding is limited to AgWest's collateral. Further, AgWest shall not be required to fund an earnest money deposit to the extent it submits a credit bid for the Dairy's Equipment, Titled Vehicles, or any other asset that is AgWest collateral.

MOTION TO SELL DAIRY EQUIPMENT AND VEHICLES
BY AUCTION - PAGE 10

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   by Booker. To the extent McKinlay sells any returned Missing Equipment that is not

2   identified in <u>Exhibit B</u> hereto, McKinlay shall submit a supplemental notice revising

3   <u>Exhibit B</u> identifying the returned Missing Equipment to be sold pursuant to the terms

4   set forth herein.

5         McKinlay further requests that any party that McKinlay has determined holds a

6   valid lien superior to Northwest in any particular piece of Equipment or Titled Vehicle

7   be permitted to either (a) retrieve the particular piece of Equipment or Titled Vehicle

8   in satisfaction of such lien, or (b) receive the amount owed to such lienholder or the

9   resulting proceeds from the sale that particular piece of Equipment or Titled Vehicle,

10   whichever amount is less. McKinlay shall provide notice to any party that he can

11   ascertain after a reasonable search holds a lien in any piece of Equipment or Titled

12   Vehicle and present to such lienholder their options on how their security interest may

13   be treated per above.

14                     **<u>NOTICE OF HEARING</u>**

15         The court will conduct a telephone hearing on the **18th day of January, 2023,**

16   **at 11:00 a.m. (Pacific Standard Time)** to determine and rule on the Motion, and any

17   timely filed objection thereto. Any objections must be filed in writing with the U.S.

18   Bankruptcy Court, 904 W. Riverside Avenue, Suite 304, Spokane, Washington 99201

19   and served upon the Plan Agent, Matt McKinlay, 13601 West McMillan Road,

20   Suite 102, PMB 320, Boise, Idaho 83713, and a copy to Jeffrey C. Misley, attorney for

21   the Plan Administrator, Sussman Shank LLP, 1000 S.W. Broadway, Suite 1400,

22   Portland, Oregon 97205 **at or before the hearing on January 18, 2023**. You may

23   also attend the scheduled telephone hearing. Parties shall call into the number below

24   at least ten (10) minutes prior to the start of the hearing. The courtroom deputy will

25   take roll, after which your phone should be placed on mute until your case is called.

26   Once you are finished with your case(s), you may hang up.

MOTION TO SELL DAIRY EQUIPMENT AND VEHICLES
BY AUCTION - PAGE 11

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11   Doc 1071   Filed 01/10/23   Entered 01/10/23 21:25:44   Pg 11 of 25

1          Conference Number: 1-877-402-9757

2          Access Code: 7036041#

3          If no objection is timely filed and received, McKinlay will ask the court to enter

4 an order approving the Motion, and granting the additional relief requested herein.  In

5 the event any party timely objects to the relief requested in this Motion, McKinlay

6 requests that the court consider the objection at the scheduled court hearing noted in

7 this Motion.

8                     **<u>POINTS AND AUTHORITIES</u>**

9          Pursuant to the Plan and the Plan Agent Order, McKinlay was specifically

10 retained to sell the Dairy Assets, including the Dairy's Equipment and Titled Vehicles.

11 *See* Plan at Art. 2.6(m); Plan Agent Order at Art. 8.  Indeed, once McKinlay determines

12 that a sale of any of the Dairy Assets is "in the best interests of the Estate," he need

13 only obtain court approval to consummate the sale.  *See* Plan, at Art. 2.6(m).

14 Moreover, McKinlay's ability to sell the Dairy Assets by auction, in separate lots and

15 not as a going-concern is activated upon the occurrence of any "Triggering Events".

16 *See* Plan Agent Order, at § 8(b).  For the reasons set forth below, selling the Equipment

17 and Titled Vehicles by auction is clearly in the best interests of the Debtors' estate and

18 a valid exercise of McKinlay's business judgment.

19          As an initial matter, the Dairy's cash flow problems have limited the options

20 available to McKinlay to sell the Dairy Assets.  These cash flow problems are due to

21 a variety of unforeseen circumstances, including significant operating and

22 administrative costs, reduced revenues, and the actions taken by the Mensonides and

23 others to frustrate McKinlay's ability to operate the Dairy on a cash positive basis.  *See*

24 McKinlay Decl., at ¶ 14.  While McKinlay has taken substantial steps towards

25 mitigating these problems, these efforts have come at a great administrative cost and

26 will likely continue until McKinlay can consummate the sale of the Dairy Assets.  *See*

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  *id.* at ¶ 14.   As a result, McKinlay has determined that the sale of the Dairy Assets as

2  effectively and efficiently as possible under the circumstances is necessary and

3  believes that the sale of the Equipment and Titled Vehicles by auction held by Booker

4  will help achieve this result.  *See id.*  Further, McKinlay's ability to conduct such a

5  sale has been activated by the occurrence of the several "Triggering Events" outlined

6  above.  *See* Plan Agent Order, at § 8(b); McKinlay Decl., at ¶ 12.

7         Moreover, McKinlay believes that Booker's experience auctioning farming

8  equipment and vehicles in the Eastern Washington area will help maximize the value

9  of the Equipment and Titled Vehicles to the benefit of the Debtors' creditors.  *See id.*

10  at ¶ 15.  The collective value of the Equipment and Titled Vehicles to be sold by

11  auction is expected to net a substantial recovery for the Debtors' estate.  *See id.*

12  McKinlay believes that this recovery would likely be unattainable if any other sale

13  procedure was used to sell the Equipment and Title Vehicles.  In particular, Booker's

14  experience auctioning assets similar to the Equipment and Titled Vehicles will

15  streamline the process for selling such assets without incurring substantial

16  administrative expenses.  *See id.*   By contrast, the sale of all of the Dairy's property

17  on a consolidated basis would require McKinlay to incur much greater administrative

18  expenses and involves several contingencies that may jeopardize the sale altogether.

19  *See id.*  Given the Dairy's cash position, McKinlay has determined that the sale by an

20  experienced auctioneer on a short timeframe will likely yield the greatest recoveries

21  for the Equipment and Titled Vehicles.  *See id.*

22  //

23  //

24  //

25  //

26  //

MOTION TO SELL DAIRY EQUIPMENT AND VEHICLES
BY AUCTION - PAGE 13

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

| | |
|---|---|
| 1 | <u>**CONCLUSION**</u> |
| 2 | Accordingly, and for the reasons set forth herein, McKinlay requests that this |
| 3 | court enter an order granting the relief requested herein.  A proposed form of order is |
| 4 | attached hereto and marked as <u>Exhibit A</u>. |
| 5 | Dated this 10th day of January, 2023. |
| 6 | SUSSMAN SHANK LLP |
| 7 | */s/ Jeffrey C. Misley* |
| 8 | By _____ |
| | Jeffrey C. Misley, WSBA 33397 |
| 9 | Garrett S. Eggen (Admitted pro hac vice) |
| | Attorneys for Matt McKinlay |
| 10 | in his capacity as Plan Agent |

MOTION TO SELL DAIRY EQUIPMENT AND VEHICLES
BY AUCTION - PAGE 14

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

2

3

4

5

6

7

8          IN THE UNITED STATES BANKRUPTCY COURT

9              EASTERN DISTRICT OF WASHINGTON

10  In re:                                    CHAPTER 11

11  MENSONIDES DAIRY, LLC, and                No. 18-01681-WLH11 LEAD CASE
12  ART & THERESA MENSONIDES,

13              Debtors.                       No. 18-01683-WLH11

14                                            ORDER GRANTING MOTION TO
15                                            SELL DAIRY EQUIPMENT AND
                                             VEHICLES BY AUCTION
16

17

18          This matter having come before the court on the Motion (the "Motion")[1] of

19  Matthew McKinlay ("McKinlay"), as Plan Agent of the Debtors' First Amended Joint

20  Chapter 11 Plan of Reorganization [Docket No. 479] (the "Plan"), for entry of an order

21  authorizing McKinlay to sell certain of the Dairy's farming equipment (the

22  "Equipment") and titled vehicles (the "Titled Vehicles") by auction, pursuant to the

23  Order Appointing Plan Agent [Docket No. 959] (the "Plan Agent Order"), and the

24  court having reviewed the Motion and the supporting Declaration of Matthew

25  _____

26  [1] Capitalized terms used but not otherwise defined herein shall have the meaning
    ascribed to such terms in the Motion or the Plan Agent Order, as applicable.

ORDER GRANTING MOTION TO SELL DAIRY
EQUIPMENT AND VEHICLES BY AUCTION -
PAGE 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  McKinlay, and the court's files herein; and this court having jurisdiction and authority

2  over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and the

3  Confirmation Order [Docket No. 499] and the Plan Agent Order; and the court finding

4  cause exists to grant certain relief requested in the Motion.  Now, therefore, it is hereby

5      ORDERED:

6      1.      The Motion is GRANTED as set forth herein;

7      2.      McKinlay is authorized to retain Booker Auctions Co. ("Booker") to sell

8  the the Equipment and Titled Vehicles by auction held by Booker;

9      3.      McKinlay is further authorized, without the need for further court

10  approval, to sell any Missing Equipment that is returned to the Dairy by auction held

11  by Booker.  McKinlay shall submit a supplemental notice revising Exhibit B to the

12  Motion which shall identify the returned Missing Equipment to be sold pursuant to the

13  terms set forth herein;

14      4.      Booker shall be paid a 10% commission rate from the auction proceeds,

15  a 5% buyer's premium and certain other expenses incurred in auctioning the

16  Equipment and Titled Vehicles;

17      5.      Any party that McKinlay has determined holds a valid lien superior to

18  Northwest Farm Credit in any particular piece of Equipment or Titled Vehicle shall be

19  permitted to either (a) retrieve the particular piece of Equipment or Titled Vehicle in

20  satisfaction of such lien, or (b) receive the amount owed to such lienholder or the

21  resulting proceeds from the sale that particular piece of Equipment or Titled Vehicle,

22  whichever amount is less.  McKinlay shall provide notice to any party that he can

23  ascertain after a reasonable search holds a lien in any piece of Equipment or Titled

24  Vehicle and present to such lienholder their options on how their security interest may

25  be treated per above; and

26

ORDER GRANTING MOTION TO SELL DAIRY
EQUIPMENT AND VEHICLES BY AUCTION -
PAGE 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    6.      McKinlay is authorized to execute such documents and take such further

2    actions as may be necessary or appropriate to accomplish the terms of this order.

3

4                              // END OF ORDER //

5    PRESENTED BY:

6    SUSSMAN SHANK LLP

7          */s/ Jeffrey C. Misley*

     By _____
8          Jeffrey C. Misley, WSBA #33397
          *Attorneys for Matthew McKinlay, Plan Agent_*
9

10   *24172-012\PROPOSED ORDER RE MOTION TO SELL EQUIPMENT AND VEHICLES BY AUCTION (04153979);2*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION TO SELL DAIRY
EQUIPMENT AND VEHICLES BY AUCTION -
PAGE 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

# Mensonides Dairy, LLC

Fixed Asset List

As of November 30, 2022

| Asset ID | Purchase Date | Status | Description | Model | Manufacturer | Serial # |
|---|---|---|---|---|---|---|
| I-1 | 7/1/2006 | ACTIVE | TUBGRINDER (LOEWEN 1585) MIXER | V1585S0 | LOEWEN | 51876 |
| I-2 | 7/1/2006 | ACTIVE | TUBGRINDER (LOEWEN 1585) MIXER | V1585S0 | LOEWEN | 51875 |
| T-10 | 12/1/2009 | ACTIVE | TRACTOR | 9630 | JOHN DEERE | 1RW9630ET9P016113 |
| L-12 | 9/29/2017 (active asset 10/1) | ACTIVE | 724K LOADER | 724K | JOHN DEERE | 1DW724KZCHF682408 |
| W-1 | 12/15/2015 | ACTIVE | 1978 KW PORTA DRILL TKT-1 | | KENWORTH | 163599S |
| L-10 | 4/14/2010 | ACTIVE | 724K LOADER | 724K | JOHN DEERE | 1DW724KXHA0628765 |
| L-8 | 4/14/2010 | ACTIVE | 724K LOADER | 724K | JOHN DEERE | 1DW724KXEA0628833 |
| L-9 | 4/14/2010 | ACTIVE | 724K LOADER | 724K | JOHN DEERE | 1DW724KXJA0628693 |
| T-20 | 10/16/2014 | ACTIVE | TRACTOR (2015) | 8270R | JOHN DEERE | 1RW8270RHED097090 |
| T-22 | 10/9/2014 | ACTIVE | TRACTOR (2015) | 8270R | JOHN DEERE | 1RW8270RAED096745 |
| L-1 | 9/15/2008 | ACTIVE | 624K LOADER | 624K | JOHN DEERE | DW624KZ622186 |
| CHILLER01 | 3/11/2014 | ACTIVE | CHILLER WITH HEAT TRANSFER | PB250F28R4550-A-VD | PRO REFRIGERATION, INC | 2002610314 |
| CHILLER02 | 3/11/2014 | ACTIVE | CHILLER | PB250F28R4CL-A-VD | PRO REFRIGERATION, INC | 2002620314 |
| H-4 | 2/28/2012 | ACTIVE | EXCAVATOR | 240LC | HITACHI | FF01V1Q021519 |
| L-2 | 8/25/2005 | ACTIVE | 624J LOADER | 624J | JOHN DEERE | DW624JZ599925 |
| O-1 | 2/9/2009 | ACTIVE | DOZER | D8L | CAT | 53Y03516 |
| L-3 | 2/27/2012 | ACTIVE | 644J LOADER | 644J | JOHN DEERE | DW644JX605129 |
| L-11 | 7/26/2010 | ACTIVE | 544K LOADER | 544K | JOHN DEERE | 1DW544KZHA0630809 |
| I-29 | 5/23/2013 | ACTIVE | PEECON MIXER | VME400 | PEECON | 0951-3585 |
| T-9 | 10/29/2008 | ACTIVE | TRACTOR | 9430 | JOHN DEERE | RW9430P004793 |
| T-24 | 12/17/2014 | ACTIVE | MF 9770 SWATHER W/HEAD 9196 (20014) | 9770 SWATHER | MASSEY FERGUSON | EHS13322 |
| T-25 | 2/10/2016 | ACTIVE | JOHN DEERE 8235R | 8235R | JOHN DEERE | 1RW8235RCED084618 |

| Asset ID | Purchase Date | Status | Description | Model | Manufacturer | Serial # |
|---|---|---|---|---|---|---|
| TR-11 | 3/1/2005 | ACTIVE | 36FT COMMERCIAL DELIVERY FEED TRAILER | | | SBXF-3909-103-0406 |
| TR-9 | 3/1/2005 | ACTIVE | 36FT COMMERCIAL DELIVERY FEED TRAILER | | | SBXF-3903-102-0406 |
| I-10 | 12/1/2010 | ACTIVE | 2009 LOEWEN HONEY VAC | 5000 H.V | LOEWEN | 60595 |
| GEN-3 | 12/14/2015 | ACTIVE | 800KW GENERATOR (COMMODITY)2008 | APS800 | CAT | DWB00637 |
| I-92 | 1/1/2016 | ACTIVE | 2270 BIG BALER (2014) | 2270 BIG BALER | MASSEY FERGUSON | EHB04262 |
| H-6 | 11/30/2002 | ACTIVE | TELEHANDLER | 541-70 | JCB | 1513029 |
| W-3 | 12/15/2015 | ACTIVE | KTA 280 MUD PUMP | KTA/280 | NATIONAL | |
| W-8 | 1/11/2016 | ACTIVE | JOY AIR BOOSTER | | | |
| P-22 | 8/9/2011 | ACTIVE | SUBURBAN | SUBURBAN | CHEVY | 1GNSKKE33BR291116 |
| H-3 | 4/12/2012 | ACTIVE | DYNAPAC ROLLER | DYCA362P | CASE | 72520702 |
| H-10 | 1/14/2016 | ACTIVE | CALF FEEDER (BULK MILK) | RD-11M | RANDELL EQUIPMENT MFG | 11023 |
| I-81 | 4/16/2008 | ACTIVE | PORTABLE END GUN | 8400120 | BAUER | ? |
| I-3 | 3/18/2005 | ACTIVE | JOHN DEERE GRAIN DRILL | 1590 | JOHN DEERE | N01590X710592 |
| I-33 | 5/23/2013 | ACTIVE | HAY BUSTER | H-1100E | HAY BUSTER | 22-2-29-0044 |
| GEN-2 | 2/8/2010 | ACTIVE | GENERATOR AT SEPERATOR | SR4B 455KW | CAT | 3PG01154 |
| MB-12 | 8/12/2015 | ACTIVE | ROGERS MG SERIES AIR COMPRESSOR (MILKBARN) | MG-V-30-125 | ROGERS MACHINERY | 6519962-1506519962 |
| H-9 | 5/12/2015 | ACTIVE | FORKLIFT (DOOSAN) 2015 | D25S-7 | DOOSAN | FDA0Q-1930-00609 |
| W-10 | 1/11/2016 | ACTIVE | 750/350 AIR COMPRESSORS | | | |
| W-9 | 1/11/2016 | ACTIVE | 750/350 AIR COMPRESSOR | | | |

| Asset ID | Purchase Date | Status | Description | Model | Manufacturer | Serial # |
|---|---|---|---|---|---|---|
| I-93 | 1/1/2016 | ACTIVE | ALLEN 8803 HAY RAKE (2014) | 8803 RAKE | ALLEN | 14001 |
| T-5 | 12/15/2006 | ACTIVE | TRACTOR | 5225 | JOHN DEERE | LV5225R323027 |
| EZFEED | 3/31/2015 | ACTIVE | EZFEED SYSTEM | EZFEED | DHI COMPUTING SERVICE | |
| F-4 | 12/19/2011 | ACTIVE | FEED TRUCK | 2574 | INTERNATIONAL | 1HTGEAHR2SH677924 |
| H-5 | 5/25/2004 | ACTIVE | SKID STEER | 1845C | CASE | JAF0324355 |
| T-1 | 6/1/2007 | ACTIVE | TRACTOR | 5225 | JOHN DEERE | LV5225R323185 |
| I-32 | 7/1/2006 | ACTIVE | CALF TRAILER | | | |
| T-12 | 5/20/2013 | ACTIVE | TRACTOR | 5225 | JOHN DEERE | LV5225R423361 |
| T-3 | 1/3/2008 | ACTIVE | TRACTOR | 5225 | JOHN DEERE | LV5225R423425 |
| GEN-1 | 9/30/1997 | ACTIVE | GENERATOR AT MILKBARN | | CAT | 6FA05514 |
| MB-14 | 1/13/2016 | ACTIVE | WATER SOFTENER (KINETICO CP 213 OD) | KINETICO CP 213 OD | KINETICO | |
| I-11 | 4/19/2001 | ACTIVE | BRILLION XL PULVERIZER 6J-999 | XL-144 | BRILLION | 180786 |
| T-19 | 10/9/2014 | ACTIVE | TRACTOR (2013) | 5055D | JOHN DEERE | 1PY5055DLCB005415 |
| M-1 | 10/17/1996 | ACTIVE | MANURE TRUCK | KW900 | KENWORTH | 5543984 |
| I-18 | 6/29/2007 | ACTIVE | DISC | 501DH | CASE | JAG0169066 |
| W-7 | 1/11/2016 | ACTIVE | FORD 8TON 1987 | F900 | FORD | 1FDYT90AXHVA59266 |
| LM-26 | 8/1/2016 | ACTIVE | HOTSY HOT WATER PRESSURE WASHER | 1290SSG | HOTSY | 11105390-162799 CODE 3116 |
| I-12 | 8/29/2011 | ACTIVE | DEGELMAN 6900 BLADE | 16-1HA | DEGELMAN | 16-1HA |
| I-28 | 8/29/2011 | ACTIVE | BLADE 6900 DEGELMAN | 16-1HA | DEGELMAN | 26784 |
| SP-1 | 11/21/2014 | ACTIVE | WASTE OIL HEATER (REZRA5002 3065X) | REZRA50023065X 500,000 BTU | REZNOR | BNJRA50023065X |
| I-80 | 9/4/2008 | ACTIVE | BLADE (D8L) | | CAT | |
| E-1 | 5/11/2016 | ACTIVE | CARRYALL 550 UTILITY | CARRYALL CA550 | CLUB CAR | MM1639-680984 |
| H-7 | 1/13/2009 | ACTIVE | DEUTZ / PIONEER PUMP | TCD 914 L 06 | DEUTZ | 8840866 |
| MB-10 | 4/17/2014 | ACTIVE | UNIVAC WASHER/EXT | UWN045T4VXU4001 | UNIMAC | 1403016646 |
| MB-11 | 4/18/2014 | ACTIVE | UNIVAC WASHER/EXT | UWN045T4VXU4001 | UNIMAC | 1403016647 |

| Asset ID | Purchase Date | Status | Description | Model | Manufacturer | Serial # |
|---|---|---|---|---|---|---|
| F-1 | 1/12/2012 | ACTIVE | FEED TRUCK | TRUCK | INTERNATIONAL | 1HSLRUGN1EHA55149 |
| MT-22 | 1/12/2012 | ACTIVE | FLATBED | S2200 | INTERNATIONAL | 1HSZBGTR9KH615212 |
| MT-30 | 3/15/2001 | ACTIVE | GRAVEL TRUCK | 2575 | INTERNATIONAL | 1HSZJJSR1EHA52200 |
| TOOL103 | 4/24/2012 | ACTIVE | HOSE CRIMP MACHINE | | | |
| TR-13 | 12/18/2015 | ACTIVE | CONTAINER TRAILER | CONTAINER | CHETA | 5EF2GC3098B772455 |
| W-15 | 10/5/2016 | ACTIVE | CHEVY BOXED TRUCK W/LIFT GATE | KODIAK | CHEVY | 1GBL7H1M0PJ101010 |
| EZWEIGHTS | 6/2/2015 | ACTIVE | EZWEIGHTS SYSTEM | EZWEIGHTS | DHI COMPUTING SERVICE | |
| MB-16 | 12/6/2016 | ACTIVE | BOILER NEXT TO TANK | | RAYPAK | 1611433740 |
| F-11 | 1/22/2010 | ACTIVE | FEED TRUCK | TRUCK | INTERNATIONAL | 1H52B82R5JH534295 |
| F-7 | 1/22/2010 | ACTIVE | FEED TRUCK | 8100 | INTERNATIONAL | 1HSHCAHR1XH218812 |
| F-8 | 1/22/2010 | ACTIVE | FEED TRUCK | TRUCK | INTERNATIONAL | 2HSFBJSR9GCA11159 |
| G-3 | 7/24/2002 | ACTIVE | GATOR | GATOR | JOHN DEERE | W004X2X084819 |
| TR-5 | 5/22/2002 | ACTIVE | 40' HAY TRAILER | | FRUEHAUF | WA7871068 |
| TR-6 | 5/22/2002 | ACTIVE | 24' HAY TRAILER | | FRUEHAUF | FWT093506 |
| PS-10 | 11/30/2015 | ACTIVE | 4" AGI PUMP FOR 12'PIT W/16" PROP | | | |
| I-91 | 10/20/2015 | ACTIVE | STRAW SPREADER (4 BALE) | | BEDMASTER | BF0629 |
| G-1 | 8/9/2007 | ACTIVE | GATOR | GATOR | JOHN DEERE | W04X2XD014970 |
| I-22 | 7/1/2004 | ACTIVE | LANDPLANE GRADER | | LANDPLANE | |
| ATV-2 | 8/14/2014 | ACTIVE | JOHN DEERE BUCK | | JOHN DEERE | MOFGTA5010621 |
| F-10 | 10/1/2007 | ACTIVE | FEED TRUCK | T-800 | KENWORTH | 18944323 |
| I-20 | 11/30/2012 | ACTIVE | SILAGE RAKE 24 (CUSTOM) | | | N/A |
| I-21 | 11/30/2012 | ACTIVE | SILAGE RAKE (CUSTOM) | | | N/A |
| W-16 | 11/18/2016 | ACTIVE | DROP DOWN TRAILER 41FT | | WHITLOG | GL200WH1TL0G86665 |
| C-1 | 11/21/2016 | ACTIVE | 1995 INTERNAITON TRUCK | 4700 | INTERNATIONAL | 1HTSCABM5SH654067 |
| LM-25 | 4/21/2015 | ACTIVE | ELECTRIC PALLET JACK | 7HBW23 | TOYOTA | 7HBW23-56434 |

| Asset ID | Purchase Date | Status | Description | Model | Manufacturer | Serial # |
|---|---|---|---|---|---|---|
| TOOL70 | 1/31/2014 | ACTIVE | AC/DC WELDER - 11,000 WATT GEN | BOBCAT 250 W/SUBARU ENGINE | MILLER | MD341026R |
| TR-7 | 3/12/2012 | ACTIVE | FLATBED 40' | | FRUEHAUF | |
| TR-8 | 3/13/2012 | ACTIVE | FLATBED 20' | | | |
| LM-28 | 10/10/2016 | ACTIVE | RANGER 225 WELDER | 225 RANGER | LINCOLN | U1160503310 |
| MB-13 | 8/7/2015 | ACTIVE | ZEKS HEATSINK AIR DRYER (MILK BARN) | 125-HSH-A100 | ZEKS G SERIES | WCH1002379 |
| TOOL106 | 5/14/2015 | ACTIVE | LINCOLN 225 RANGER WELDER | 225 RANGER | LINCOLN | U1150208334 |
| I-7 | 4/30/2004 | ACTIVE | JOHN DEERE RIPPER | 915 | JOHN DEERE | N00915X005621 |
| TANK-1 | 3/3/2014 | ACTIVE | MOLASSES TANK | | | |
| TANK-2 | 3/3/2014 | ACTIVE | MOLASSES TANK | | | |
| FREEZER3 | 10/28/2015 | ACTIVE | ATOSA FREEZER (HOSPITAL) | MBF8503 | ATOSA | MBF8503150408C4001 |
| LM-24 | 1/2/2015 | ACTIVE | PLATE COMPACTOR (WACKER) | WP1550AW | WACKER | 30071964 |
| LM-21 | 12/8/2014 | ACTIVE | AIR COMPRESSOR ROLAIR 11HP | 11GR30HK30 | ROLAIR SYSTEMS | 14110003 |
| M-39 | 2/15/2013 | ACTIVE | MANURE TRUCK | 9370 | INTERNATIONAL | 2HSFBJSRXGCA11154 |
| PS-9 | 3/3/2014 | ACTIVE | 2" GEAR PUMP MOLASSES | | | |
| LM-23 | 12/9/2014 | ACTIVE | HONDA GENERATOR | EG5000CL | HONDA | EBEC-1005761 |
| W-11 | 5/11/2016 | ACTIVE | LIGHT TOWER | 04000AL2-S-4MH | AMIDA TEREX | AL407-000572 |
| W-12 | 5/11/2016 | ACTIVE | LIGHT TOWER | AL406D1-S-4MH | AMIDA TEREX | GTF-23788 |
| LM-22 | 12/8/2014 | ACTIVE | 2.0HP AIR COMPRESSURE ELE | 6820K17-0003 | ROLAIR SYSTEMS | 14030457 |
| TOOL99 | 11/17/2014 | ACTIVE | LINCOLN 180 DUAL POWER MIG WELDER | 180C | LINCOLN | M3140808527 |
| TOOL104 | 4/24/2015 | ACTIVE | 3/4 IMPACT GUN | | | |
| I-31 | 12/31/2007 | ACTIVE | CALF TRAILER RED FRAME | | | N/A |
| I-87 | 12/31/2007 | ACTIVE | BLACK FRAME CALF TRAILER | | UNKNOWN | N/A |

| Asset ID | Purchase Date | Status | Description | Model | Manufacturer | Serial # |
|---|---|---|---|---|---|---|
| TOOL105 | 4/20/2015 | ACTIVE | 12"SLIDING COMPOUND MITER SAW (DEWALT) | DWS782 | DEWAULT | ? |
| LM-18 | 4/5/2007 | ACTIVE | HONDA EDGER | HHE31CA EDGER | HONDA | MADA-1004211 |
| TOOL110 | 10/2/2015 | ACTIVE | 1/4 IMPACT GUN | | DEWAULT | 794157 |
| TOOL109 | 10/2/2015 | ACTIVE | 3/8 IMPACT GUN 20 VOLT | DCF883 | DEWAULT | 964969 |
| Misc | Misc | | Miscellaneous other dairy equipment,vehicles, implements, shop tools, supplies, and so forth | | | |

**Mensonides Dairy, LLC**
Asset Auction Strategy
January 3, 2023

| Asset | Broker | Auction Date | Closing / Delivery Date | Comments |
|---|---|---|---|---|
| Real Property | Skye Root | 2/10/23 (Qualifying Deadline 2/20/23 (Auction Date) | 3/14/2023 | The Calf Ranch and the Main Dairy may be sold together or separately. |
| Milk Base | N/A | | | Buyer of real property (main dairy) will have rights to apply for the Dairy's milk Base with Northwest Dairy Association. |
| Feed Inventory | Skye Root | 2/20/2023 | 3/14/2023 | Buyer of real property will be given the option to purchase feed inventory at market value. Otherwise, will be sold separately. |
| Equipment | Booker Auctions | 3/7/2023 | 3/14/2023 | Qualified Buyers may submit interest to purchase all equipment by 3/1/23. Otherwise lots to be auctioned by 3/7/23. |
| Livestock - Heifers | Toppenish | Various - 1/19 - 1/31/23 | | Auctioned weekly |
| Livestock - Milk Cows | Toppenish | | 2/21/23 through 3/14/23 | Buyer of real property will be given the option to purchase Milk Cow inventory at market value. Otherwise, will be sold by Toppenish Livestock. |
| NDA Coop Shares | NO AUCTION | | | Non-transferrable. Will remain with the Plan Agent. |

Exhibit C
Page 1 of 1

1    <u>CERTIFICATE OF SERVICE</u>

2    I, Janine E. Hume declare as follows:

3    I am employed in the County of Multnomah, state of Oregon; I am over the

4    age of eighteen years and am not a party to this action; my business address is 1000

5    S.W. Broadway, Suite 1400, Portland, Oregon 97205-3089, in said county and state.

6    I certify that on January 10, 2023, I served the **MOTION TO SELL DAIRY**

7    **EQUIPMENT AND VEHICLES BY AUCTION** on all ECF participants as

8    indicated on the Court's Cm/ECF system.

9    I swear under penalty of perjury that the foregoing is true and correct to the

10   best of my knowledge, information, and belief.

11   Dated: January 10, 2023.

12

13   */s/ Janine E. Hume*
14   Janine E. Hume, Legal Assistant

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130