| | |
|---|---|
| Jeffrey C. Misley, WSBA #33397<br>jmisley@sussmanshank.com<br>Garrett S. Eggen (Admitted Pro Hac Vice)<br>geggen@sussmanshank.com<br>SUSSMAN SHANK LLP<br>1000 SW Broadway, Suite 1400<br>Portland, OR 97205-3089<br>Telephone: (503) 227-1111<br>Facsimile: (503) 248-0130 | Honorable Whitman L. Holt<br>Chapter 11 |

*Attorneys for Matthew McKinlay, Plan Agent*

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>MENSONIDES DAIRY, LLC, and<br>ART & THERESA MENSONIDES,<br><br>Debtors. | CHAPTER 11<br><br>No. 18-01681-WLH11 LEAD CASE<br><br>No. 18-01683-WLH11<br><br>DECLARATION OF MATTHEW MCKINLAY IN SUPPORT OF (A) MOTION TO SELL DAIRY'S REAL PROPERTY BY AUCTION AND CERTAIN RELATED RELIEF AND (B) MOTION TO SELL DAIRY EQUIPMENT AND VEHICLES BY AUCTION |

I, Matthew McKinlay, declare:

1. I was appointed as Plan Agent (the "Plan Agent") of the Debtors' First Amended Joint Chapter 11 Plan of Reorganization [Docket No. 479] (the "Plan")

DECLARATION OF MATTHEW MCKINLAY - PAGE 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 1 of 11

pursuant to the Order Appointing Plan Agent [Docket No. 959] (the "Plan Agent Order"). I have personal knowledge of the facts set forth herein. I submit this Declaration in support of the (a) Motion to sell the Dairy's Real Property by Auction (the "Real Property Motion") and (b) Motion to Sell Dairy Equipment and Vehicles by Auction (together with the Real Property Motion, collectively, the "Motions")[1].

2. Upon my appointment as Plan Agent pursuant to the Plan Agent Order, I immediately turned my attention to preserving and maintaining the Debtors' business operations and assets in preparation for the ultimate sale of the Dairy and Dairy Assets. However, upon taking control of the Debtors and after certain of the Mensonides family members had rejected my offer to continue working for the Dairy in management roles, I discovered that the Dairy's available cash was seriously deficient to fund operations or meet the Dairy's ongoing financial obligations. This required me to request and receive additional financial support from Northwest in order to stabilize operations and fund ongoing expenses.

3. I also determined that the Mensonides family had taken substantial actions to disrupt the Dairy's operations. These actions included, among other things:

a) removing critical assets and equipment from the Dairy with the help of third parties such as Narom and Sharon Berg, Pioneer Commodities LLC and others;

b) withdrawing substantial funds belonging to the Dairy for unauthorized purposes;

c) leaving almost no feed on site to care for the livestock;

d) notifying employees that the Dairy was "shutting down" and paying out all accrued paid time-off (PTO); and

e) Removing and shredding critical business records, including vehicle titles,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motions.

DECLARATION OF MATTHEW MCKINLAY - PAGE 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 2 of 11

employee files, the Nutrient Management Plan, and so forth.

4. I also discovered that the Dairy was missing several critical pieces of equipment that collectively held an appraised value of $467,200.00 (the "Missing Equipment").

5. On August 10, 2022, the court held a hearing on the Enforcement Motion [Docket No. 964]. At the hearing, the court referred the parties to Judge Corbit to attempt to settle their disputes. Unfortunately, mediation with Judge Corbit yielded no tangible results.

6. While I was ultimately able to stabilize the Dairy's milk production and milking herd and cleansed the livestock herd of bacillus cereus[2], my problems with the Mensonides and other parties in interest continued. In particular, I began to discover that much of the Missing Equipment had been relocated through one or more of the Mensonides family members' efforts throughout the greater Mabton, Washington area. As a result, I sought to retrieve the Missing Equipment and other property belonging to the Dairy.

7. In addition to retrieving Missing Equipment and reviving the Dairy's operations, I also recognized that removal of the Mensonides' family members from the Dairy would be necessary to implement the sale of the Dairy. To begin this process, I offered a solution that would result in Art and Teresa Mensonides as well as Auke and Joreen Bruinsma (the "Bruinsmas") consensually vacating the Dairy premises in a reasonable time and manner. Unfortunately, the Mensonides and Bruinsmas rejected this offer, prompting me to obtain a court order confirming his

---

[2] Bacillus cereus is a spoilage microorganism that has been present in the Dairy's herd for several years. This prevalence of this contaminant exceeded thresholds set by the Northwest Dairy Association ("NDA"), which limited how the Dairy's milk could be produced. In November 2022, NDA notified the Plan Agent and his staff that the contaminant had been reduced significantly over the past four months, and that NDA is now able to expand the number of products that the Dairy's milk can be used for. This also opens the Dairy to new processing facilities (including the one ~10 miles away from the Dairy in Sunnyside, WA) the Dairy's milk can be sent to.

DECLARATION OF MATTHEW MCKINLAY - PAGE 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

ability to terminate the possessory interests of and initiate eviction proceedings against the Mensonides and Bruinsmas.

8. In addition to the above referenced issues, the Dairy also began experiencing several unrelated problems that were also beyond my control. As a result of the worldwide supply chain and inflationary issues, lower than projected 2022 Dairy-grown and harvested feed volume, price gouging and other factors, the Dairy's feed costs exceeded initial projections by roughly 30%. This, in addition with unbudgeted manure management freight costs, seriously impacted the Dairy's cash flow. Further, milk prices have dropped by roughly 20% over the last several months which has resulted in significantly reduced revenues to the Dairy.

9. Given the Dairy's liquidity issues resulting from the foregoing problems, I determined it was necessary to sell up to 2,500 head of the Dairy's replacement heifer cattle (the "Listed Dairy Cattle") by auction to reduce operating expenses and generate much needed cash to continue operating the Dairy and work towards a sale of the Dairy and its assets.

10. While the sale of the Listed Dairy Cattle will generate much needed cash for the Dairy, operating and administrative costs have continued to strain the Dairy's liquidity. Specifically, the rising feed and administrative costs combined with lower revenues have made it difficult to maintain the Dairy's herd. I believe that these problems will only be exacerbated throughout the coming winter months. In addition to the foregoing, I have determined that the sale of substantially all of the Dairy Assets to a prospective purchaser as a going concern under acceptable terms is becoming less likely. As a result, I decided that the sale of the Dairy's remaining Livestock as part of a broader plan to sell the Dairy's remaining assets, including the Equipment and Titled Vehicles, was in the best interests of the Debtors' estate for the following

DECLARATION OF MATTHEW MCKINLAY - PAGE 4

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 4 of 11

reasons.

11. As an initial matter, the Dairy's limited cash has constrained my ability to both operate the Dairy and pursue a drawn-out sale process. Thus, I do not believe that the Dairy can fund the administrative expenses associated with negotiating the terms of an asset purchase agreement and providing a lengthy due diligence period to a potential purchaser for the Dairy Assets. *See id.* Further, any purchaser would likely demand that the sale be free and clear of any liens, interests and claims and I am unable to guarantee that such a sale would be approved. Given these contingencies, I believe that the sale of the Dairy Assets by auction is in the best interests of the Debtors' estate.

12. Moreover, several "Triggering Events" contemplated by the Plan Agent Order have occurred, including:

    i. Defaults in the covenants set forth in Exhibit C – Operational Covenants:

        a. The Dairy has failed to maintain the total minimum herd size of 11,000 head.

        b. I have been unable to provide AgWest with the original vehicle titles of all Dairy titled vehicles which are AgWest's collateral due to the fact that the Mensonides family has removed many of these vehicle titles.

        c. The Dairy has suffered from two consecutive months of negative net income under the CPA compiled financial reports in the months of July and August 2022. As detailed more fully above, the July and August 2022 months net income problems are largely due to the state in which the Mensonides family left the Dairy.

    ii. The Dairy has failed to maintain at least cash flow neutral as measured by the Plan Agent Weekly and Monthly Cash Flow Budget and Variance

DECLARATION OF MATTHEW MCKINLAY - PAGE 5

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 5 of 11

Reports. This is largely due to the increased operating and administrative expenses combined with lower revenues described more fully above.

    iii. The Dairy has lost its normal manure handling and processing capabilities due to the party responsible for handling the Dairy's liquid manure terminating its agreement with the Dairy prior to the appointment of the Plan Agent.

**A. Equipment and Titled Vehicles Motion**

13. I have selected Booker Auctions Co. ("Booker") as the auctioneer responsible for selling the Equipment and Titled Vehicles. Booker has agreed to a compensation structure whereby it will be paid a 10% commission rate from the auction proceeds, a 5% buyer's premium and certain other expenses incurred in auctioning the Equipment and Titled Vehicles. I believe that Booker's extensive experience auctioning farming equipment and vehicles in the Eastern Washington area will result in the highest and best offers for the Equipment and Titled Vehicles.

14. The Dairy's cash flow problems have limited the options available to me to sell the Dairy Assets. These cash flow problems are due to a variety of unforeseen circumstances, including significant operating and administrative costs, reduced revenues, and the actions taken by the Mensonides and others to frustrate my ability to operate the Dairy on a cash-flow positive basis. While I have taken substantial steps towards mitigating these problems, these efforts have come at a great administrative cost and will likely continue until I can consummate the sale of the Dairy Assets. As a result, I have determined that the sale of the Dairy Assets as effectively and efficiently as possible under the circumstances is necessary and believe that the sale of the Equipment and Titled Vehicles by auction held by Booker will help achieve this result.

15. I believe that Booker's experience auctioning farming equipment and

DECLARATION OF MATTHEW MCKINLAY - PAGE 6

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 6 of 11

vehicles in the Eastern Washington area will help maximize the value of the Equipment and Titled Vehicles to the benefit of the Debtors' creditors. The collective value of the Equipment and Titled Vehicles to be sold by auction is expected to net a substantial recovery for the Debtors' estate. I believe that this recovery would likely be unattainable if any other sale procedure was used to sell the Equipment and Title Vehicles. In particular, Booker's experience auctioning assets similar to the Equipment and Titled Vehicles will streamline the process for selling such assets without incurring substantial administrative expenses. By contrast, the sale of all of the Dairy's property on a consolidated basis would require me to incur much greater administrative expenses and involves several contingencies that may jeopardize the sale altogether. Given the Dairy's cash position, I have determined that the sale by an experienced auctioneer on a short timeframe will likely yield the greatest recoveries for the Equipment and Titled Vehicles.

**B.     Real Property Motion**

16.     Shortly after my appointment, I retained Skye Root to market, list and sell the Dairy. Since then, Skye Root has gathered requisite information from the Dairy and solicited interest from potential purchasers in the hopes of consummating a sale of the Dairy as a going-concern.

17.     While Skye Root was working towards the sale of the Dairy as a going-concern, I recognized that there are several potential barriers to selling the Dairy under a private sale with acceptable terms. As a result, I determined that the sale of the Real Property with Skye Root as the broker who will conduct the auction of the Real Property is in the best interests of the Debtors' estate.

18.     I believe that Skye Root's extensive experience facilitating farmland sales throughout the Western United States will result in the highest and best offer for the

DECLARATION OF MATTHEW MCKINLAY - PAGE 7

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 7 of 11

Real Property. I further believe that Skye Root's familiarity with the Real Property through its initial retention and its working relationship with parties who have already expressed interest in purchasing the Dairy will also help yield the highest and best offer for the Real Property.

19. Skye Root has agreed to a compensation structure whereby it will be paid a 2% commission for a sales transaction without a cooperating broker, and a 3% commission rate (split 50/50) for a sales transaction with a cooperating broker from the auction proceeds and certain other expenses incurred in auctioning the Dairy. Skye Root's commission rate will be inclusive of the aggregate purchase price received for the total amount of property sold.

20. To the extent the Dairy's existing funds are insufficient to do so and to the extent that any livestock or feed are sold pursuant to the Real Property Motion and not the Motion to Sell Remaining Livestock [Docket No. 1067] (which also requests this specific relief), I shall set aside up to $2.25 million in sale proceeds derived from the various sales of livestock to be used to pay the Dairy's vendors in the ordinary course of business and pursuant to the payment terms now existing between the Dairy and such vendors. AgWest has agreed to the proposed reserve of $2.25 million which I have estimated as the amount necessary to pay the Dairy's vendors to satisfy their outstanding claims upon the conclusion of this case. I intend to set aside this amount out of an abundance of caution and to avoid any potential harm to the Dairy's operations resulting from the failure to pay the Dairy's vendors in the ordinary course of business and pursuant to the payment terms now existing between the Dairy and such vendors.

21. Once the Dairy's remaining livestock have been sold, whether pursuant to this Motion or the Motion to Sell Remaining Livestock, I will sell the Dairy's

DECLARATION OF MATTHEW MCKINLAY - PAGE 8

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 8 of 11

remaining Feed Inventory on the open market by soliciting interest from potential purchasers in the greater Eastern Washington area.

22. The Dairy's cash flow problems have limited the options available to me to sell the Dairy Assets. These cash flow problems are due to a variety of unforeseen circumstances, including significant operating and administrative costs, reduced revenues, and the actions taken by the Mensonides and others to frustrate my ability to operate the Dairy on a cash-flow positive basis. While I have taken substantial steps towards mitigating these problems, these efforts have come at a great administrative cost and will likely continue until I can consummate the sale of the Dairy Assets. As a result, I have determined that the sale of the Dairy Assets as effectively and efficiently as possible under the circumstances is necessary and believe that the sale of the Real Property by auction held by Skye Root and pursuant to the Bidding Procedures and Additional Auction Terms will help achieve this result.

23. I believe that Skye Root's experience facilitating farmland sales throughout the Western United States will result in the highest and best offer for the Real Property. The sale of the Real Property by auction is expected to net a substantial net recovery for the Debtors' estate. I believe that this recovery would likely be unattainable if any other sale procedure was used to sell the Real Property. In particular, Skye Root has already gained familiarity with the Real Property through its initial retention to sell the Dairy as a going-concern. As part of that process, Skye Root began soliciting interest from potential purchasers for the Dairy. These parties, who now have a solid understanding of the Dairy due to Skye Root's efforts, may now submit bids at the auction which will likely result in a competitive process and raise the ultimate purchase price for the Real Property.

24. Implementing the sale of the Real Property pursuant to the Bidding

DECLARATION OF MATTHEW MCKINLAY - PAGE 9

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 9 of 11

Procedures and Additional Auction Terms presents prospective purchasers with the opportunity to purchase the Real Property and substantially all of the Dairy Assets on a consolidated basis which could even further reduce administrative expenses and potentially yield a greater sale price. By contrast, continuing to seek a purchaser for the Real Property or the Dairy as a going concern outside of the auction process would require me to incur much greater administrative expenses and involves several contingencies that may jeopardize the sale altogether. Given the Dairy's cash position, I have determined that the sale by an experienced listing agent on a short timeframe will likely yield the greatest recoveries for the Real Property.

25. Postponing the sale of the Feed until all of the Dairy's livestock have been sold is necessary for the health and welfare of the Dairy's livestock. Moreover, I cannot yet quantify the amount of Feed to be sold given that the Dairy's livestock will be sold on a rolling and/or consolidated basis pending the outcome of the bidding process set forth in the Real Property Motion. As such, I believe that the most cost-effective means of selling the Feed will be to solicit interest from potential purchasers in the Eastern Washington area once the amount to be sold is readily ascertainable.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 10th day of January, 2023, at Boise, Idaho.

Matthew McKinlay

DECLARATION OF MATTHEW MCKINLAY - PAGE 10

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 10 of 11

# CERTIFICATE OF SERVICE

I, Janine E. Hume declare as follows:

I am employed in the County of Multnomah, state of Oregon; I am over the age of eighteen years and am not a party to this action; my business address is 1000 S.W. Broadway, Suite 1400, Portland, Oregon 97205-3089, in said county and state.

I certify that on January 10, 2023, I served the **DECLARATION OF MATTHEW MCKINLAY** on all ECF participants as indicated on the Court's Cm/ECF system.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 10, 2023.

*/s/ Janine E. Hume*
Janine E. Hume, Legal Assistant

CERTIFICATE OF SERVICE - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

18-01681-WLH11    Doc 1071-1    Filed 01/10/23    Entered 01/10/23 21:25:44    Pg 11 of 11